## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
:
In re                               :    Chapter 11
:
SANTA FE GOLD CORPORATION, *et al.*,    :    Case No. 15-11761 (____)
:
           Debtors.[1]            :    Joint Administration Requested
:
-------------------------------------------------------------x

### DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING THE APPOINTMENT OF AMERICAN LEGAL CLAIM SERVICES, LLC AS CLAIMS AND NOTICING AGENT

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this application (the "Application") for entry of an order authorizing the Debtors to retain and employ American Legal Claim Services, LLC ("ALCS") as claims and noticing agent in these chapter 11 cases. In support of this Application, the Debtors rely upon the *Declaration of Jeffrey L. Pirrung In Support of Debtors' Application for an Order Authorizing the Appointment of American Legal Claim Services, LLC as Claims and Noticing Agent* (the "Pirrung Declaration"), attached hereto as **Exhibit A**, and the *Declaration of Jakes Jordaan in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") filed contemporaneously herewith, and respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding pursuant to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A). The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are 28 U.S.C. § 156(c), Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 158(c)*, instituted by the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk").

### Background

3.      On the date hereof (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are operating their respective businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases and no committees have been appointed or designated.

4.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

### Relief Requested

5.      The Debtors request entry of an order appointing ALCS as the claims and noticing agent for the Debtors and the Chapter 11 Cases, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Chapter 11 Cases.  The Debtors' selection of ALCS to act as claims and noticing

01:17465779.9

agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, as the Debtors have obtained and reviewed engagement proposals from two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that ALCS's rates are competitive and reasonable given ALCS's quality of services and expertise.  The terms of ALCS's retention are set forth in the engagement agreement attached hereto as **<u>Exhibit B</u>** (the "<u>Engagement Agreement</u>"); *provided, however*, that the Debtors are seeking approval solely of the terms and provisions as set forth in this Application and the proposed order attached hereto.

6.      Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be significantly more than 200 parties in interest that will need to be noticed at various times in the Chapter 11 Cases.  Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file [a] motion [to retain a claims and noticing agent] on the first day of the case or within seven (7) days thereafter."  In view of the number of anticipated claimants, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

7.      By separate application, the Debtors will seek authorization to retain and employ ALCS as administrative advisor in the Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code, because the administration of the Chapter 11 Cases will require ALCS to perform duties outside the scope of 28 U.S.C. § 156(c).

## ALCS's Qualifications

8.      ALCS is composed of leading industry professionals with significant experience in the administrative aspects of middle market chapter 11 cases.  ALCS's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. ALCS's professionals previously have acted as debtor's advisor or official claims and noticing agent in many similarly sized bankruptcy cases in this District and in other districts nationwide. *See, e.g., In re MacKeyser Holdings, LLC*, Case No. 14-11550 (CSS) (Bankr. D. Del. 2014); *In re Refco Public Commodity Pool, LP f/k/a S&P Managed Futures Index*, Case No. 14-11216 (BLS) (Bankr. D. Del. 2014); *In re KIT digital, Inc.*, Case No. 13-11298 (REG) (Bankr. S.D.N.Y. 2013); *In re Journal Register Company*, Case No. 12-13774 (SMB) (Bankr. S.D.N.Y. 2012); *In re Raser Technologies, Inc.*, Case No. 11-11315 (KJC) (Bankr. D. Del. 2011); *In re Alabama Aircraft Industries, Inc.*, Case No. 11-10452 (PJW) (Bankr. D. Del. 2011).

9.      By appointing ALCS as the claims and noticing agent in the Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited and the Clerk will be relieved of the administrative burden of processing what could be an overwhelming number of claims.

## Services to be Provided

10.      This Application pertains only to the work to be performed by ALCS under the Clerk's delegation of duties permitted by Bankruptcy Code section 156(c) and Local Rule 2002-1(f).  Any work to be performed by ALCS outside of this scope is not covered by this Application or by any order granting approval hereof.  Specifically, ALCS will perform the following tasks in its role as claims and noticing agent (the "ALCS Services"), as well as all quality control relating thereto:

(a)     prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or the Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

(b)     maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party-in-interest or the Clerk;

(d)     furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     for all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service that includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     maintain the official claims register for each Debtor (the "<u>Claims Registers</u>") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.,* secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)     implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of ALCS, not less than weekly;

(l)     upon completion of the docketing process for all claims received to date for each Chapter 11 Case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(m)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(n)     identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(o)     assist in the dissemination of information to the public and respond to requests for administrative information regarding the Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(p)     monitor the Court's docket in the Chapter 11 Cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

01:17465779.9

(q)     if the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of the notice to ALCS of entry of the order converting the Chapter 11 Cases;

(r)     thirty days prior to the close of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing ALCS and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases;

(s)     within seven days of notice to ALCS of entry of an order closing the Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

(t)     at the close of the Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154, or (ii) any other location requested by the Clerk's Office.

11.     The Claims Registers will be open to the public for examination without charge during regular business hours and on a case-specific website maintained by ALCS.

### Professional Compensation

12.     The Debtors respectfully request that the undisputed fees and expenses incurred by ALCS in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  ALCS agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in

an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

13.     Once the Debtors' debtor-in-possession funding is approved, the Debtors intend to provide ALCS a retainer in the amount of $10,000.  ALCS seeks to hold the retainer under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

14.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless ALCS and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from ALCS's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or the order authorizing their appointment.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in the Chapter 11 Cases.

## Disinterestedness

15.     Although the Debtors do not propose to employ ALCS under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), ALCS has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties-in-interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Pirrung Declaration, ALCS has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.     Moreover, in connection with its retention as claims and noticing agent, ALCS represents in the Pirrung Declaration, among other things, that:

01:17465779.9

(a)     ALCS is not a creditor of the Debtors;

(b)     ALCS will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 Cases;

(c)     by accepting employment in the Chapter 11 Cases, ALCS waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(d)     in its capacity as the claims and noticing agent in the Chapter 11 Cases, ALCS will be an agent of the United States and will act on behalf of the United States, to the extent prescribed by the Bankruptcy Code;

(e)     ALCS will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in the Chapter 11 Cases;

(f)     ALCS is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     in its capacity as claims and noticing agent in the Chapter 11 Cases, ALCS will not intentionally misrepresent any fact to any person;

(h)     ALCS shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(i)     ALCS will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by ALCS as claims and noticing agent in the Chapter 11 Cases shall be at the expense of the Clerk's Office.

17.     ALCS will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims and Noticing Agent Protocol

18.     This Application complies with the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* and substantially conforms to the standard application in use in the Court.  To the extent that there is any inconsistency between this Application, the

01:17465779.9

related proposed order and the Engagement Agreement, the order authorizing ALCS's appointment shall govern.

### Notice

19.     Notice of this Motion shall be provided to:   (i) the United States Trustee; (ii) counsel to Waterton Global Value, L.P., in its capacity as the senior pre-petition lender; (iii) counsel to Sandstorm Gold (Barbados) Ltd., in its capacity as the second lien pre-petition lender; (iv) counsel to Waterton Global Value, L.P., by its investment manager, Altitude Management Limited, in its capacity as the debtor-in-possession lender; and (v) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions.   As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[remainder of page intentionally left blank]*

01:17465779.9

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit C**, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated: August 26, 2015

*/s/ Jakes Jordaan*
Jakes Jordaan
Chief Executive Officer

01:17465779.9

*[Signature Page to Section 156(c) Application]*

**<u>EXHIBIT A</u>**

**Pirrung Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x
                                                    :
In re                                               :    Chapter 11
                                                    :
SANTA FE GOLD CORPORATION, *et al.*,                :    Case No. 15-11761 (____)
                                                    :
          Debtors.[1]                               :    Joint Administration Requested
                                                    :
-------------------------------------------------------------x

**DECLARATION OF JEFFREY L. PIRRUNG IN**
**SUPPORT OF DEBTORS; APPLICATION FOR AN ORDER**
**AUTHORIZING THE APPOINTMENT OF AMERICAN LEGAL CLAIM**
**SERVICES, LLC AS CLAIMS AND NOTICING AGENT**

I, Jeffrey L. Pirrung, under penalty of perjury, declare as follows:

1.      I am the Managing Director of ALCS whose offices are located at 5985 Richard Street, Suite 3, Jacksonville, Florida 32216.   Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration is made in support of the *Debtors' Application for an Order Authorizing the Appointment of ALCS as Claims and Noticing Agent* (the "Application").[2]

3.      ALCS is one of the country's leading chapter 11 administrators.   ALCS's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.   ALCS's professionals have acted as debtor's advisor or official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide.

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A).  The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2]   Capitalized terms not otherwise defined herein have the meanings given to them in the Application.

*See, e.g., In re MacKeyser Holdings, LLC,* Case No. 14-11550 (CSS) (Bankr. D. Del. 2014); *In re Refco Public Commodity Pool, LP f/k/a S&P Managed Futures Index,* Case No. 14-11216 (BLS) (Bankr. D. Del. 2014); *In re KIT digital, Inc.,* Case No. 13-11298 (REG) (Bankr. S.D.N.Y. 2013); *In re Journal Register Company,* Case No. 12-13774 (SMB) (Bankr. S.D.N.Y. 2012); *In re Raser Technologies, Inc.,* Case No. 11-11315 (KJC) (Bankr. D. Del. 2011); *In re Alabama Aircraft Industries, Inc.,* Case No. 11-10452 (PJW) (Bankr. D. Del. 2011).

4.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), ALCS will perform at the request of the Clerk's Office the noticing and claims-related services specified in the Application.  In addition, at the Debtors' request, ALCS will perform such other noticing, claims, technical, administrative, and support services specified in the Application, subject to 28 U.S.C. § 156(c) and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c).*  In performing such services, ALCS will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit B** to the Application.

5.      ALCS represents, among other things, the following:

(a)      ALCS is not a creditor of the Debtors;

(b)      ALCS will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 Cases;

(c)      by accepting employment in the Chapter 11 Cases, ALCS waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(d)      in its capacity as the claims and noticing agent in the Chapter 11 Cases, ALCS will be an agent of the United States and will act on behalf of the United States, to the extent prescribed in the Bankruptcy Code;

(e)      ALCS will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in the Chapter 11 Cases;

01:17465779.9

- 2 -

(f)     ALCS is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     in its capacity as claims and noticing agent in the Chapter 11 Cases, ALCS will not intentionally misrepresent any fact to any person;

(h)     ALCS shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(i)     ALCS will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by ALCS as claims and noticing agent in the Chapter 11 Cases shall be at the expense of the Clerk's Office.

6.      Although the Debtors do not propose to retain ALCS under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties-in-interest (the "Parties-in-Interest") in the Chapter 11 Cases.  The list of Parties-in-Interest was provided by the Debtors and was purported to include, among other things, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, the Debtors' lenders, insurers, professionals, significant equity holders, major suppliers, counterparties to major contracts, and other parties.  The results of the conflict check were compiled and reviewed by me.  At this time, and as set forth in further detail herein, ALCS is not aware of any relationship that would present a disqualifying conflict of interest.  Should ALCS discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, ALCS will use reasonable efforts to file promptly a supplemental declaration.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither ALCS, nor any of its professionals, has

any materially adverse connection to the Debtors, their creditors, or other relevant parties. ALCS may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which ALCS serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

8.     ALCS has and will continue to represent clients in matters unrelated to the Chapter 11 Cases.   In addition, ALCS and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other Parties-in-Interest that may be involved in the Chapter 11 Cases.   ALCS may also provide professional services to entities or persons that may be creditors or Parties-in-Interest in the Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

9.     ALCS and its personnel in their individual capacities regularly utilize the services of law firms, accounting firms, and financial advisors.   Such firms engaged by ALCS or its personnel may appear in chapter 11 cases representing the Debtors or Parties-in-Interest.   All engagements where such firms represent ALCS or its personnel in their individual capacities are unrelated to the Chapter 11 Cases.

10.     From time to time, ALCS partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors' affiliates, often without ALCS's or its personnel's knowledge.   Each ALCS partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy,

sell, or vote any particular security.  The Investment Funds are generally operated as a blind pool, meaning that when the ALCS partners or employees make an investment in any Investment Fund, he, she, or they do not know what securities such blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

11.     From time to time, ALCS partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors' affiliates.  ALCS has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, all ALCS partners and employees are barred from trading in securities with respect to which they possess confidential information.

12.     To the best of my knowledge, neither ALCS, nor any of its partners or employees represents any interest materially adverse to the Debtors' estates with respect to any matter upon which ALCS is to be engaged.  Based on the foregoing, I believe that ALCS is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

01:17465779.9

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:    August 26, 2015

/s/ Jeffrey L. Pirrung
Jeffrey L. Pirrung
Managing Director
American Legal Claim Services, LLC

# **EXHIBIT B**

## **Engagement Agreement**

## SERVICES AGREEMENT

This Services Agreement is entered into this 26th day of August, 2015, (the "Effective Date") between American Legal Claim Services, LLC, a Florida limited liability company, 5985 Richard Street, STE 3, Jacksonville, FL  32216, hereinafter referred to as ("ALCS"), and Santa Fe Gold Corporation, a corporation duly organized under and existing pursuant to the laws of the State of Delaware, hereinafter referred to as ("Client"). ALCS shall mean ALCS, its servants, agents, employees, licensees, subsidiaries, affiliates and subcontractors of ALCS. "Agreement" shall mean this agreement in its entirety.

In consideration of the mutual promises contained in this Agreement, Client and ALCS agree as follows:

## I.    SERVICES

ALCS agrees to provide the services set forth in the "Statement of Work" attached hereto as Exhibit A or any additional services requested by Client. The services to be rendered by ALCS shall commence on the date hereof and continue until either party exercises its rights of suspension or termination as set forth below:

## II. ACCESS TO ALCS DATABASE SYSTEM

### A. Rights of Ownership
The parties understand that the software programs and other materials (including the name "ALCS") furnished by ALCS pursuant to the Agreement and/or developed during the course of this Agreement by ALCS are the sole property of ALCS. The term "programs" shall include, without limitation, data processing programs, check printing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation. Client further agrees that any ideas, concepts, know-how or techniques relating to the claims management software or ALCS's performance of its services developed during the course of this Agreement by ALCS shall not be treated as "work made for hire" and shall be the exclusive property of ALCS.

### B. Non-Exclusive License
Pursuant to the terms and conditions of this Agreement, ALCS grants to Client a personal, non-exclusive, non-transferable license to use the Web Client Access version of ALCS's claims management software for access to the claims database. Client's license to use the ALCS software is limited to employees and/or contractors of Client under Client's authorization and control. Client's use of the ALCS software is limited solely to Client's own internal business use with respect to the current data which is the subject of the engagement.

Each authorized user shall access the ALCS software using a logon identifier and password. Client and each Authorized User shall be responsible for maintaining and protecting the user logon identifier and password. Client shall be solely responsible for informing ALCS in writing that a terminated Authorized User's access to the ALCS software is terminated.

## III. CONFIDENTIALITY

In order for ALCS to effectively provide services to the Client, it is necessary and desirable for the Client to disclose to ALCS confidential information relating to the Client's past, present or future business. Since it is difficult to separate confidential information from that which is not, ALCS agrees to regard all information gained as a result of services hereunder as confidential; provided, however, if any such information is publicly available, was already in ALCS's possession or known to it, or was rightfully acquired by ALCS from a third party, ALCS shall have no liability for any disclosure of such information.

ALCS further agrees to safeguard the Client's confidential information in a prudent business manner. Except as required in the performance of its duties under the Statement of Work attached hereto as Exhibit A, ALCS agrees to keep confidential and not to disclose to any ALCS employee or employees or any third party, without the express written authorization of Client, the confidential information received from Client. ALCS agrees not to use the information received from Client for ALCS's own business or commercial purposes.

However, Client hereby agrees that ALCS shall not be liable beyond the limits provided in Section VII herein for damages or losses of any nature whatsoever arising out of the disclosure or use of any material supplied by Client to ALCS in the performance of this Agreement.

## IV. PRICES, CHARGES AND PAYMENT

ALCS agrees to charge and Client agrees to pay ALCS for its services at the rates or prices as set forth in the "Fee Schedule" attached hereto as Exhibit B. ALCS will bill Client in quarter-hour increments for charges based on hourly rates.

Client agrees, subject to court approval of the retention of ALCS as well as approval of the proposed debtor-in-possession financing, to provide ALCS with an advance deposit retainer of $10,000 which ALCS will hold as security for the payment of fees and expenses incurred in rendering the ALCS Services hereunder.  In the event the Client doesn't comply with the 30 day payment terms outlined herein, ALCS will apply the deposit retainer to invoices that have been submitted to the Client and are outside of the 30 day payment terms.  If the deposit retainer is applied against an invoice then the Client will replenish the retainer so that ALCS holds a deposit sum of $10,000 while this Agreement remains in force.

Client agrees to pay ALCS for any reasonably incurred out-of-pocket expenses for long distance charges, postage, supplies, transportation, lodging, meals and related items.  ALCS may, at its discretion, pre-bill for anticipated out-of-pocket expenses.

ALCS agrees to submit its invoice to Client on a monthly basis. Client agrees that the amounts invoiced are due and payable thirty (30) days after its receipt of the invoice or at such practicable time after proceeds of sale are made available for payment of Chapter 11 administration. If any payment is not made within such thirty (30) day period, interest will accrue, at the rate of 1.5% per month, on such past-due amount, commencing on the thirty-first (31st) day and continuing until the invoice is paid in full.

ALCS reserves the right to reasonably increase its prices, rates and charges annually on January 2nd following the second anniversary of this Agreement; provided, however, that any such increase is limited to 5%.

In addition to all charges for services and materials hereunder, Client shall pay to ALCS all taxes levied, however designated, that are applicable to the Agreement or are measured directly by payments made under it and are required to be collected by ALCS or paid by ALCS to tax authorities. This provision includes, but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

In addition to all other charges for services and materials hereunder, Client shall pay to ALCS any actual charges relating to, arising out of or as a result of any Client error or omission. Such charges shall include, but are not limited to, supplies, re-runs, and any additional administrative, systems development, data processing, clerical, over-time, or other charges billed at the then prevailing ALCS standard rates.   ALCS can pre-bill the Client for anticipated costs in circumstances where fees or expenses are expected to be higher than the deposit.

## V.  WARRANTIES AND LIABILITIES

Accuracy and adequacy of Client's information are the responsibility of Client. ALCS shall have no liability to Client for any act or inaction with respect to Client's written directions or in accordance with the terms of this Agreement, except for ALCS's willful misconduct or gross negligence ("Willful Misconduct-Gross Negligence Cause"). ALCS shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth in this Agreement, a written direction or similar written notice, or order of the court.  ALCS may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein which ALCS shall in good faith believe to be genuine, which is in the form of a written direction, similar written notice or order of the court.

ALCS shall not be liable for non-performance or delay of performance hereunder should such non-performance or delay arise out of causes beyond its reasonable control. Such causes may include, but are not limited to, acts of God or a public enemy, fire, electrical failure, strike, lockout, governmental order or regulation or any other cause, whether similar or dissimilar. For purposes of this Section V, "willful misconduct" shall mean an act by ALCS, done, or omitted to be done, not in good faith and without reasonable belief that its action or inaction was in the best interest of the Client.

## VI. SUSPENSION OF SERVICE AND TERMINATION

This Agreement shall remain in force until such time as ALCS has fulfilled all of its duties under this Agreement, or upon express written notice from the Client, which notice shall be effective on receipt. Client's obligation to pay all charges which shall accrue up to and including said notification date shall survive any termination hereof. Within thirty (30) days after termination of this Agreement, ALCS shall deliver to Client copies of all requested records and reports (other than ALCS's confidential records and reports) concerning this Agreement.

If Client is in default under any term hereof and such default is not cured within thirty (30) days after ALCS notifies Client in writing of such default, then ALCS may terminate this Agreement. Client's obligation to pay all charges which shall accrue up to and including said termination shall survive any termination hereof.

Upon termination of this Agreement for any reason whatsoever, Client data files in the possession of ALCS shall, at the request of the Client, be returned to Client in the form of a diskette or other acceptable magnetic media; provided, however, that all amounts due and payable by Client pursuant to this Agreement shall be paid prior to such return.

ALCS shall store all returned mail, claims, correspondence and other case documents (collectively "Case Documents") until the last day of the month in which the services set forth herein have been completed and billing to the Client is no longer required. Prior to the cessation of services ALCS shall notify Client of the following options:

(1) ALCS shall continue to store Case Documents at a monthly storage fee as set forth in ALCS's then current storage rates, payable in advance on a monthly basis. In the event Client does not pay ALCS the monthly storage fee for more than 2 consecutive months, ALCS shall have the right to destroy Case Documents without further liability.

(2) ALCS shall ship all Case Documents to Client, or its designee, at such address as directed by Client. All shipping costs and expenses incurred are to be paid by Client.

(3) Upon direction by Client, ALCS shall arrange to destroy all Case Documents. All costs and expenses incurred for destruction of documents are to be paid by Client.

## VII. INDEMNIFICATION

With respect to performance of ALCS's duties pursuant to this Agreement, written directions or similar written notice, or order of the Court, Client shall, to the fullest extent permitted by law and to the extent provided herein, indemnify and hold harmless ALCS and each of its officers, directors, employees, attorneys, agents and affiliates (collectively referred to in this Agreement as the "Indemnified Party" or "Indemnified Parties" against any and all claims (whether or not valid), demands, suits, actions, proceedings (including any inquiry or investigation), losses, damages liabilities, costs, and expenses of any kind or nature whatsoever (including, without limitation, reasonable attorneys' fees) incurred by or asserted against any of the Indemnified Parties from and after the date of the Agreement, by any person, whether direct, indirect, or consequential, whether threatened or initiated, as a result of or arising from or in any way relating to the negotiation, preparation, execution, performance or failure of performance of the Agreement or any transactions contemplated herein, whether or not any such Indemnified Party is a party to any such suit, action, or proceeding, or the target of any such inquiry or investigation; provided, however, that the Indemnified Party shall not have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct ("Gross Negligence-Willful Misconduct Clause") of such Indemnified Party. If any such action or claim shall be brought against any Indemnified Party, such Indemnified Party may, in its sole discretion,

retain separate counsel (who may be selected by such Indemnified Party in its sole discretion) in any such action and to participate in the defense thereof. Client shall be liable to pay the reasonable fees and expenses of counsel retained by the Indemnified Party pursuant to the preceding sentence, subject to the foregoing Gross Negligence-Willful Misconduct Clause.  All such fees and expense payable by Client pursuant to the foregoing sentence shall be paid from time to time as incurred, both in advance of and after the final disposition of such claim or action. The obligations of Client under this Section VII shall survive any termination of this Agreement and the resignation or removal of ALCS. For purposes of this <u>Section VII</u>, "willful misconduct" shall mean an act by either Party, done, or omitted to be done, not in good faith and without reasonable belief that its action or inaction was in the best interest of the other Party.

## VIII. BANK ACCOUNTS

At the Client's request, ALCS shall be authorized to establish accounts with financial institutions in the name of and as agent for the Client. To the extent certain financial products are provided to the Client pursuant to ALCS's agreement with certain institutions, ALCS may receive compensation from such financial institution for the services ALCS provides pursuant to such agreement.

## IX. NOTICES

Written notice to a party to this Agreement shall be deemed to have been given on the date of delivery when deposited in U.S. Mail, postage prepaid or sent by overnight courier service and addressed as follows:

| If to ALCS: | If to Client: |
| --- | --- |
| **ATTN: Jeffrey Pirrung** | **Attn:  Jakes Jordaan** |
| **American Legal Claim Services, LLC** | **Santa Fe Gold Corporation** |
| **5985 Richard Street, STE 3** | **1219 Banner Mine Road,** |
| **Jacksonville, FL  32216** | **Lordsburg, New Mexico 88045** |

## X. GOVERNING LAW; VENUE; ATTORNEYS' FEES.

This Agreement shall be construed in accordance with the laws of the State of Florida without respect to its principles of conflicts of laws.  The exclusive venue for any action or proceeding arising under or relating to this Agreement shall be the United States Bankruptcy Court for the District of Delaware while the Client's chapter 11 proceeding is ongoing and, upon the termination of the chapter 11 proceeding, Duval County, Florida. In the event there is any action or proceeding to enforce the terms of this Agreement, the prevailing party, in addition to any other remedy, shall be entitled to recover reasonable attorney's fees and paralegal fees and all other costs associated with any such action or proceeding, at all trial and appellate levels.

## XI. SEVERABILITY

To the extent any provision of this Agreement is prohibited by (or deemed invalid under) applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

## XII. ENTIRE AGREEMENT

This Agreement constitutes the entire Agreement between the parties with respect to the services to be provided hereunder and incorporates all undertakings and representations relied upon in reaching such Agreement.  This Agreement shall not be modified, amended, abridged, or otherwise varied except by written instrument duly executed by an authorized representative of Client and an officer of ALCS.

## XIII. WAIVER

No failure or delay on the part of either party in exercising any right or remedy with respect to a breach of this Agreement by the other party shall operate as a waiver thereof or of any prior or subsequent breach of this Agreement by the breaching party, nor shall the exercise of any such right or remedy preclude any other or future exercise thereof or exercise of any other right or remedy in connection with this Agreement. Any waiver must be in writing and signed by the waiving party.

## XIV. COUNTERPARTS

This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original instrument, but all such counterparts together shall constitute one and the same instrument.

## XV. ASSIGNMENT

Neither party may assign this Agreement or any rights or duties under this Agreement without the prior written consent of the other. Any attempted assignment not in accordance with this Section XV shall be null and void.

## XVI. BINDING EFFECT

This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors, and assigns.

## XVII. CONSTRUCTION

Unless the context of this Agreement otherwise clearly requires, references to the plural include the singular and the singular includes the plural.  Wherever the context so requires, the masculine shall refer to the feminine, the feminine shall refer to the masculine, the masculine or the feminine shall refer to the neuter, and the neuter shall refer to the masculine or the feminine.  The captions of the Agreement are for convenience and ease of reference only and in no way define, describe, extend, or limit the scope or intent of the Agreement or the intent of any of its provisions.  In the event of any conflict between this Agreement and any schedules or exhibits attached to this Agreement, the terms of this Agreement shall control.


**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective as of the day and year first hereinabove written.


American Legal Claim Services, LLC        Santa Fe Gold Corporation

By: Jeffrey L. Pirrung                                  By: Jakes Jordaan


*/s/ Jeffrey L. Pirrung*_____                */s/ Jakes Jordaan*_____
Title: Managing Director                          Title: Chief Executive Officer
Date: August 26, 2015                              Date: August 26, 2015

# EXHIBIT C

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------x
                                                           :
In re                                                      :    Chapter 11
                                                           :
SANTA FE GOLD CORPORATION, et al.,                         :    Case No. 15-11761 (____)
                                                           :
                Debtors.¹                                  :    Jointly Administered
                                                           :
                                                           :    Ref. Docket No. ___
-----------------------------------------------------------x
```

**ORDER AUTHORIZING THE APPOINTMENT OF AMERICAN
LEGAL CLAIM SERVICES, LLC AS CLAIMS AND NOTICING AGENT**

Upon the application (the "Application")[2] of the Debtors for entry of an order authorizing Debtors to retain and appoint ALCS as claims and noticing agent; and upon the consideration of the Pirrung Declaration and the First Day Declaration; and it appearing that this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that venue of the Chapter 11 Cases and the Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having determined that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Application has been given under the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A).  The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

circumstances and no other or further notice is necessary; and after due deliberation thereon, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Application is GRANTED as set forth herein.

2.      Notwithstanding the terms of the Engagement Agreement attached as <u>Exhibit B</u> to the Application, the Application is approved solely as set forth in this Order.

3.      The Debtors are authorized to retain ALCS effective as of the Petition Date under the terms of the Engagement Agreement, and ALCS is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in the Chapter 11 Cases, and all related tasks, as described in the Application as the ALCS Services.

4.      ALCS shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      ALCS is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      ALCS is authorized to take such other action to comply with all duties set forth in the Application.

7.      The Debtors are authorized to compensate ALCS in accordance with the terms of the Engagement Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by ALCS and the rates charged for each, and to reimburse ALCS for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for ALCS to file fee applications or otherwise seek Court

approval for the compensation of its services and reimbursement of its expenses, in accordance with the terms of the operative order approving the Debtors' proposed postpetition lending facility (the "DIP Facility") and the budget (the "DIP Budget")..

8.      ALCS shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.

9.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Engagement Agreement or monthly invoices; *provided, however,* that the parties may seek resolution of the matter from this Court if resolution is not achieved.

10.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the undisputed fees and expenses of ALCS under this Order shall be an administrative expense of the Debtors' estates.

11.     ALCS may hold the retainer under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred in performing the ALCS Services, with any remaining amount to be held as security for the payment of approved fees and expenses incurred in performing other authorized services under the Engagement Agreement.

12.     The Debtors shall indemnify ALCS under the terms of the Engagement Agreement, as modified pursuant to this Order.

13.     ALCS shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the

Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

14.    Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify ALCS or provide contribution or reimbursement to ALCS for any claim or expense that is:  (a) judicially determined (the determination having become final) to have arisen from ALCS's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of ALCS's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under (a) or (b) but determined by this Court, after notice and a hearing, to be a claim or expense for which ALCS should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

15.    If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing the Chapter 11 Cases, ALCS believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, ALCS must file an application therefor in this Court, and the Debtors may not pay any such amounts to ALCS before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time through which this Court shall have jurisdiction over any request for fees and expenses by ALCS for indemnification, contribution, or reimbursement and

does not limit the duration of the Debtors' obligation to indemnify ALCS. All parties-in-interest shall retain the right to object to any demand by ALCS for indemnification, contribution, or reimbursement.

16.     In the event ALCS is unable to provide the services set out in this Order, ALCS will immediately notify the Clerk and Debtors' counsel and have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

17.     The Debtors will submit a separate retention application for ALCS pursuant to sections 327 and 328 of the Bankruptcy Code for services that ALCS intends to perform outside the ambit of those services described in the Application, and nothing in this Order shall operate to limit the approval of such retention application under sections 327 and 328 of the Bankruptcy Code.

18.     The Debtors and ALCS are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order, in accordance with the operative order approving the DIP Facility and the DIP Budget.

19.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

20.     Notwithstanding any term in the Engagement Agreement to the contrary, ALCS shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of this Court.

21.     Debtors' counsel shall notify both the Clerk and ALCS within seven days of the entry of an order of dismissal or conversion of the Chapter 11 Cases.

22.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern.

23.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the operative order approving the DIP Facility and the DIP Budget or any order regarding the use of cash collateral approved by this Court in the Chapter 11 Cases.

Dated: August _____, 2015
        Wilmington, Delaware

_____

UNITED STATES BANKRUPTCY JUDGE