## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------------x
                                           :
In re                                      :   Chapter 11
                                           :
SANTA FE GOLD CORPORATION, et al.,         :   Case No. 15-11761 (____)
                                           :
                Debtors.[1]                :   Joint Administration Requested
                                           :
--------------------------------------------------------------x
```

### DEBTORS' MOTION FOR ENTRY OF
### AN ORDER (I) AUTHORIZING THE DEBTORS TO
### (A) CONTINUE THEIR EXISTING CASH MANAGEMENT
### SYSTEM AND (B) MAINTAIN EXISTING BANK ACCOUNTS AND
### CHECK STOCK, (II) GRANTING AN EXTENSION OF TIME TO COMPLY WITH
### SECTION 345(b) OF THE BANKRUPTCY CODE, AND (III) AUTHORIZING THE
### DEBTORS TO CONTINUE INTERCOMPANY TRANSACTIONS AND GRANTING
### ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY CLAIMS

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order: (i) authorizing the Debtors to (a) continue to use their existing cash management systems and (b) maintain their existing bank accounts and check stock, (ii) granting an extension of time to comply with section 345(b) of the Bankruptcy Code with respect to the Debtors' deposit and investment practices, and (iii) authorizing the Debtors to continue intercompany transactions and granting claims arising from such transactions administrative expense status.  In support of the Motion, the Debtors submit the *Declaration of Jakes Jordaan in Support of Chapter 11 Petitions and First Day Relief*

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A).  The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

(the "<u>First Day Declaration</u>"),[2] filed contemporaneously herewith, and respectfully state as follows:

<u>**Jurisdiction**</u>

1.     The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.   This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.   Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. § 1408 and § 1409.

2.     The statutory bases for the relief requested herein are  sections 105(a), 345(b), 363(c), 364(b), and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), Rule 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Local Rule 2015-2.

<u>**Background**</u>

3.     On the date hereon (the "<u>Petition Date</u>"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>").   The Debtors are operating their respective businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No request for the

---

[2]     Capitalized terms used, but not otherwise defined herein, have the meaning given to them in the First Day Declaration.

01:17466597.10

appointment of a trustee or examiner has been made in the Chapter 11 Cases and no committees have been appointed or designated.

4.     The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

<u>**Background Specific to the Motion**</u>

5.     To manage their affairs efficiently and seamlessly, the Debtors utilize and maintain in the ordinary course of business a centralized cash management system (the "<u>Cash Management System</u>") to collect and transfer funds and to disburse funds to satisfy their financial obligations.  The Cash Management System facilitates the Debtors' cash monitoring, forecasting and reporting, and enables the Debtors to maintain control over the administration of their bank accounts (the "<u>Bank Accounts</u>").

6.     The Bank Accounts are maintained at Wells Fargo Bank, N.A. ("<u>Wells Fargo</u>"), Western Bank, and Bank of America, N.A. ("<u>BofA</u>" and, collectively with Wells Fargo and Western Bank, the "<u>Banks</u>").  Santa Fe Gold Corporation ("<u>Santa Fe</u>") maintains an operating account at Wells Fargo (the "<u>Santa Fe Operating Account</u>") and The Lordsburg Mining Company ("<u>Lordsburg</u>") maintains an operating account at Wells Fargo (the "<u>Lordsburg Operating Account</u>"), an operating account at Western Bank, and a payroll account at Wells Fargo (the "<u>Payroll Account</u>").[3]  Each of the Bank Accounts, except the account with Western Bank, are located at an institution designated as an authorized depository by the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") pursuant to the U.S. Trustee Chapter 11 Guidelines for the District Court of Delaware (the "<u>Guidelines</u>").  Furthermore, Western Bank is insured by the Federal Deposit Insurance Corporation ("<u>FDIC</u>")

---

[3]     The Debtors previously had six additional bank accounts—four with Wells Fargo, one with the Bank of Albuquerque, N.A., and one with Bank of America.  However, these accounts have been closed.

and the balance Lordsburg maintains in that account is significantly less than the insurance limitations set by the FDIC. A listing and description of each of the Bank Accounts can be found in **Exhibit B** attached hereto.

7.     Because the Debtors' Summit Mine and Lordsburg Mill are currently in "care-and-maintenance" status, there is limited activity within the respective Bank Accounts. At this point, the Debtors' cash activity is primarily conducted through the Santa Fe Operating Account and the Lordsburg Operating Account. The Debtors use funds on deposit in the Santa Fe Operating Account to (i) pay their vendors; (ii) fund the Payroll Account for obligations for employee payroll, benefits, and other employee obligations; and (iii) pay taxes, regulatory filings, certain other general corporate obligations, and other costs of maintaining the Debtors' facilities, in particular the Lordsburg Mill and the Summit Mine. The Debtors also use funds on deposit in the Santa Fe Operating Account and Lordsburg Operating Account to make payments to maintain their leasehold interests, unpatented claims, and mining licenses.

8.     In the ordinary course of business, the Debtors engage in routine business relationships with each other (the "Intercompany Transactions") resulting in intercompany receivables and payables (the "Intercompany Claims"). In particular, although the Debtors are not operating the Summit Mine, they are maintaining its unpatented claims and mining and milling permits, and have assets in "care and maintenance." Moreover, the Summit Mine is regularly inspected by numerous federal and state regulators to ensure that, among other things, the mine, mill, and related tailings dam[4] are safe and being properly maintained. Maintenance of the Lordsburg Mill and tailings dam is continuing. In light of these obligations, funds from the Santa Fe Operating Account are regularly transferred to the Lordsburg Operating Account and

---

[4]     A tailings dam is a dammed area where the waterborne refuse material is pumped into a pond to allow the sedimentation of solids from the water.

Lordsburg account at Western Bank.  Accordingly, at any given time, there are Intercompany Claims owing by one Debtor to another Debtor.  The Intercompany Claims are reflected as intercompany receivables and payables, as applicable, in the respective Debtors' accounting systems, and each Debtor maintains separate intercompany accounts with each other Debtor.

9.      The Debtors track all fund transfers in their respective accounting systems and can ascertain, trace, and account for all Intercompany Transactions.  The Debtors have also put in place monitoring systems to be able to track post-petition intercompany transfers.  If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations could be unnecessarily disrupted to the detriment of the Debtors and their creditors and other stakeholders.

## Relief Requested

10.     By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 345(b), and 363(c) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004(h), and Local Rule 2015-2, granting them (i) authorization to (a) continue their existing Cash Management System (including as required under the Debtors' proposed postpetition lending facility (the "DIP Facility") and in accordance with the budget approved in connection therewith (the "DIP Budget")) and (b) maintain existing Bank Accounts and check stock, (ii) an extension of time to comply with section 345(b) of the Bankruptcy Code, and (iii) authorization to continue the Intercompany Transactions and to grant post-petition Intercompany Claims administrative expense status.  Without the requested relief, the Debtors submit that they would be unable to conduct their financial operations effectively and efficiently, which would cause significant harm to the Debtors and their estates.

11.     In addition to the foregoing, the Debtors request that the Court authorize and direct the Banks to continue to maintain, service, and administer the Bank Accounts and to debit the Bank Accounts in the ordinary course of business on account of:  (a) all checks, wires, or Automated Clearing House ("ACH") transfers authorized by order of the Court irrespective of whether such payments relate to pre-petition services; (b) all checks drawn on the Bank Accounts that are cashed at the Banks or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (c) all checks or other items deposited in one of the Bank Accounts prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent that the Debtors were responsible for such items prior to the Petition Date; and (d) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to the Banks as service charges for the maintenance of the Cash Management System.

## Basis for Relief Requested

I.      **Continuing the Cash Management System Is in the Best Interests of the Debtors, their Creditors, and All Parties-in-Interest**

12.     The Debtors seek authorization to continue to operate their Cash Management System, consistent with their pre-petition practices and operations (and as required under the DIP Facility and in accordance with the DIP Budget). [5] Utilization of the Cash Management System is an ordinary course and essential business practice that provides significant benefits to the Debtors, including, among other things, the ability to: (i) control corporate funds; (ii) ensure the maximum availability of funds when and where necessary; (iii) reduce administrative expenses

---

[5]    Notwithstanding anything herein to the contrary, the Debtors reserve their right to close their pre-petition Bank Accounts and open new accounts as may be necessary in the Debtors' business judgment with the consent of Waterton Global Value, L.P. (the "DIP Lender"), as lender under the DIP Facility.  The Debtors will give notice, however, to the U.S. Trustee and any official committee that may be appointed in these Chapter 11 Cases promptly upon the opening or closing a Bank Account.

by facilitating the movement of funds; and (iv) develop more timely and accurate account balance information.  Based on the foregoing, maintenance of the existing Cash Management System is in the best interest of the Debtors and their estates.

13.     Section 363(c)(1) of the Bankruptcy Code authorizes debtors in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unnecessary oversight by its creditors or the court.  *See, e.g., In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("The framework of section 363 is designed to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary."); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007).  Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" integral to a debtor's cash management system.  *See Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) to continue the collection, concentration, and disbursement of cash pursuant to their Cash Management System.

## II.     Maintenance of the Debtors' Existing Bank Accounts and Check Stock Is Warranted

14.     The Guidelines mandate the closure of the Debtors' pre-petition bank accounts, the opening of new accounts, including special accounts for the payment of taxes and segregation of cash collateral.  To comply with the Guidelines, the Debtors would need, among other things, to create a new system for manually issuing checks and paying post-petition obligations.  The delays that would result from opening these accounts and revising cash

management procedures would further disrupt the Debtors' businesses. Moreover, the proposed DIP Facility currently contemplates the transfer of funds into the Bank Accounts. As a result, the amount of time necessary to close the Bank Accounts and open new accounts could unduly delay the funding of the DIP Facility. It is therefore essential that the Debtors be permitted to continue to manage their cash and disburse monies from the Bank Accounts as needed and in amounts necessary to continue the operation of their businesses. If the Debtors are required to close their existing Bank Accounts and create a new cash management system, the Debtors will suffer significant harm from the resultant operational paralysis, and incur costs from closing their existing Bank Accounts, opening of new accounts, and printing new checks.

15.     In addition to mandating the closure of all bank accounts, the Guidelines require the immediate printing of new checks with the legend "Debtor in Possession" and other information related to the Debtors' cases. Similarly, Local Rule 2015-2(a) mandates that the Debtors, upon exhausting their existing check stock, order new checks with the "Debtor in Possession" legend. To minimize expenses, the Debtors request that they be authorized to continue using their existing check stock, substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession, and without adding the other related information required by the Guidelines, provided that the Debtors will obtain new check stock identifying their status as debtor in possession as their existing stock is depleted. The Debtors will use their best reasonable efforts to print "Debtor in Possession" on all check stock that is electronically generated.

16.     Obtaining new check stock and implementing new electronic check forms would create significant expense and logistical difficulties. The Debtors will send a notice of

commencement to all known creditors and given such notice, publication on checks will add little additional notice.

### III.    Cause Exists to Allow the Debtors to Continue their Investment Practices and Extend the Period to Comply with the Requirements of Section 345

17.    Section 345(a) of the Bankruptcy Code governs the Debtors' cash deposits during the Chapter 11 Cases and authorizes such deposits or investments of money "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  Section 345(b) of the Bankruptcy Code provides:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested –
>
> (1)    a bond –
>     (A)    in favor of the United States;
>     (B)    secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>     (C)    conditioned on –
>         (i)    a proper accounting of all money so deposited or invested and for any return on such money;
>         (ii)    prompt repayment of such money and return; and
>         (iii)    faithful performance of duties as a depository; or
> (2)    the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

The Debtors believe the requirements of section 345(b) of the Bankruptcy Code are satisfied for each Bank Account because either the Bank where such Bank Accounts are maintained has executed a Uniform Depository Agreement ("UDA") with the U.S. Trustee that brings the Bank Accounts into compliance or the Debtors maintain deposit balances within the limits of insurance by the FDIC.  By this Motion, the Debtors are requesting a forty-five (45) day extension[6] of the time to comply with section 345(b) of the Bankruptcy Code with respect to the Bank Accounts,

---

[6]    The Debtors reserve the right to seek further extensions of the section 345 requirements.

to the extent applicable.  During the extension period, the Debtors propose to engage the U.S. Trustee in discussions to determine what modifications to their deposit practices, if any, would be appropriate under the circumstances.  The Debtors believe that the benefits of the requested extension far outweigh any harm to their estates.  *See In re Serv. Merch. Co.*, 240 B.R. 894, 896-97 (Bankr. M. D. Tenn. 1999) (finding cause to extend the time to comply with section 345(b) where failure to do so would "needlessly handcuff" the debtor's reorganization efforts).

18.    In determining whether "cause" exists under section 345(b) of the Bankruptcy Code, the Court should consider the "totality of the circumstances," using the following factors outlined in the *Service Merchandise* case, which are met in this instance:  (i) the sophistication of the debtor's business; (ii) the size of the debtor's business operations; (iii) the amount of the investments involved; (iv) the bank ratings (Moody's and Standard and Poor's) of the financial institutions where debtor-in-possession funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business of insuring the safety of the funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case. *Id.* at 896.

19.    In addition, the Debtors believe that funds held in the Bank Accounts are secure and that obtaining bonds to secure those funds, as required by section 345(b) of the Bankruptcy Code, is unnecessary and detrimental to the Debtors' estates and creditors.  The Debtors submit that "cause" exists pursuant to section 345(b) of the Bankruptcy Code to extend the time to comply with this section's requirements (if necessary) because, among other considerations: (i) the Banks are federally chartered banks subject to supervision by federal banking regulators;

(ii) the Debtors retain the right to remove funds held at the Banks and establish new bank accounts as needed; (iii) the cost associated with satisfying the requirements of section 345 is burdensome; and (iv) any additional processes required to satisfy those requirements would lead to needless inefficiencies in the management of the Debtors' affairs.   A bond secured by the undertaking of a corporate surety would be prohibitively expensive, especially in light of the amounts the Debtors maintain in the Bank Accounts, if such a bond is available at all.

### IV.     The Banks Should Be Authorized and Directed to Continue to Maintain, Service, and Administer the Debtors' Bank Accounts

20.     The Debtors respectfully request that the Banks be authorized and directed to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors, as debtors in possession, without interruption and in the ordinary course.   The Debtors further request that the Banks be authorized and directed to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers shall be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated prior to or subsequent to the Petition Date.   The Debtors also request that, in the event any Bank honors a pre-petition check or other item drawn on any account that is the subject of this Motion (i) at the direction of the Debtors, (ii) in a good faith belief that the Court has authorized such pre-petition check or intends it to be honored, or (iii) as a result of an innocent mistake made despite implementation of reasonable item handling procedures, the Bank should not be deemed liable to the Debtors or to their estates on account of such pre-petition check or other item being honored post-petition.   The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to verify independently or audit whether a particular item may be paid in accordance with the Court's orders or otherwise.

21.     In the ordinary course, the Banks charge, and the Debtors pay, honor, or allow as a deduction from the appropriate account, certain service and other fees, costs, charges, and expenses (collectively, the "Bank Fees").  The Debtors respectfully request that the Banks be given the authority to (i) continue to charge the Debtors the Bank Fees and (ii) charge back returned items, whether such items are dated prior to, on, or subsequent to the Petition Date, to the Bank Accounts in the ordinary course.

22.     For the reasons set forth herein, and consistent with the relief granted in the cases cited above, the Debtors submit that it is in the best interests of their estates and creditors to obtain the relief requested.

## V.     The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Status to Post-petition Intercompany Claims Among the Debtors

23.     Intercompany Transactions that give rise to Intercompany Claims are made between and among Debtor affiliates in the ordinary course as part of the Cash Management System.[7]  The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described.  The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls could be disrupted to the Debtors' and their estates' detriment.  Since these transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors respectfully request the

---

[7]    Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises like that of the Debtors, the Debtors submit that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a post-petition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to maintain their businesses as debtors in possession.

authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order.

24.     To ensure each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request, pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, that all post-petition payments between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status.  This relief will ensure that each Debtor receiving cash from another Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

### The Motion Satisfies Bankruptcy Rule 6003

25.     Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may grant certain forms of relief during the twenty-one (21) days immediately following the filing date.  Fed. R. Bankr. P. 6003.

26.     As described above and in the First Day Declaration, the Debtors believe that allowing for a "seamless" transition into bankruptcy will preserve the value of the Debtors' assets so that the Debtors will be able to maximize the value of those assets for the benefit of all stakeholders.  One aspect of the Debtors' efforts to minimize disruption during the Chapter 11 Cases is the Debtors' ability to maintain their existing Cash Management System in order to avoid, among other things, delays or disruption in satisfaction of their obligations.  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors, as described herein, and that Bankruptcy Rule 6003 has been satisfied.

## Waiver of Bankruptcy Rule 6004(h)

27.     The Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth above, for the Debtors to continue operating as a going concern, thereby preserving and protecting the value of their assets and operations for the benefit of all stakeholders, it is vital that they be permitted to maintain their existing Bank Accounts and to continue using their current Cash Management System.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## Notice

28.     Notice of this Motion shall be provided to:  (i) the United States Trustee; (ii) counsel to Waterton Global Value, L.P., in its capacity as the senior pre-petition lender; (iii) counsel to Sandstorm Gold (Barbados) Ltd., in its capacity as the second lien pre-petition lender; (iv) counsel to Waterton Global Value, L.P., by its investment manager, Altitude Management Limited, in its capacity as the debtor-in-possession lender; (v) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions; and (vi) the Banks.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Proposed Order granting the relief requested herein and (ii) grant such other and further relief as may be just and proper.

Dated: August 26, 2015
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Kenneth J. Enos*
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
1000 N. King Street
Rodney Square
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Proposed Counsel to the Debtors and Debtors in Possession*

01:17466597.10

**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x
                                          :
In re                                     :    **Chapter 11**
                                          :
**SANTA FE GOLD CORPORATION**, *et al.*,  :    **Case No. 15-11761 (____)**
                                          :
         **Debtors.**[1]                  :    **Jointly Administered**
                                          :
                                          :    **Ref. Docket No. ___**
-------------------------------------------------------------x

**ORDER (I) AUTHORIZING THE**
**DEBTORS TO (A) CONTINUE THEIR EXISTING**
**CASH MANAGEMENT SYSTEM AND (B) MAINTAIN EXISTING**
**BANK ACCOUNTS AND CHECK STOCK, (II) GRANTING AN EXTENSION**
**OF TIME TO COMPLY WITH SECTION 345(b)OF THE BANKRUPTCY CODE,**
**AND (III) AUTHORIZING THE DEBTORS TO CONTINUE INTERCOMPANY**
**TRANSACTIONS AND GRANTING ADMINISTRATIVE EXPENSE**
**STATUS TO INTERCOMPANY CLAIMS**

Upon consideration of the motion (the "Motion")[2] of the Debtors for entry of an order

(the "Order"), pursuant to sections 105(a), 345(b), 363(c), 364(b), and 503(b) of the Bankruptcy

Code, Bankruptcy Rules 6003 and 6004(h), and Local Rule 2015-2: (i) authorizing the Debtors

to (a) continue to use their existing Cash Management System and (b) maintain existing Bank

Accounts and check stock, (ii) granting an extension of time to comply with requirements of

section 345(b) of the Bankruptcy Code, and (iii) authorizing the Debtors to continue

intercompany transactions and granting claims arising from such transactions administrative

expense status, as more fully set forth in the Motion; and the Court having jurisdiction to

consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of*

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A).  The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

*Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and venue of the Chapter 11 Cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and proper and adequate notice of the Motion, the hearing thereon, and opportunity for objection having been given; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having heard evidence and statements of counsel regarding the Motion and having determined that the legal and factual bases set forth in the Motion and attested to in the First Day Declaration establish just cause for the relief granted herein; and the Court having determined that immediate relief is necessary to avoid irreparable harm; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a), 345(b), and 363(c)(1), of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management System used prior to the commencement of these Chapter 11 Cases, and to collect and disburse cash in accordance with that Cash Management System, subject to the limitations in this Order.

3.      The Debtors shall provide notice to the DIP Lender, as is reasonable and practicable, prior to making any changes to the Cash Management System; provided, however, that no Bank responding to any request for such change shall be obligated to confirm or verify that such notice has been provided, no Bank shall be liable to the DIP Lender in the event that the Debtors fail to provide such notice, and all Banks merely rely upon instructions from the Debtors with respect to any such change.

4.      Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each debtor, regardless of which entity pays those disbursements.

5.      The Debtors are authorized, subject to the DIP Budget and the order approving the DIP Facility, to (i) designate, maintain, and continue to use any or all of the existing Bank Accounts, including but not limited to those bank accounts listed in **Exhibit B** to the Motion that have not be deactivated, in the names and with the account numbers existing immediately prior to the commencement of the Chapter 11 Cases; (ii) deposit funds into and withdraw funds from such accounts by all usual means, including, without limitation, checks, wire transfers, automated transfers, and other debits; and (iii) treat the Bank Accounts opened prior to the Petition Date for all purposes as debtor-in-possession accounts.

6.      The Debtors are authorized, subject to the DIP Budget and the order approving the DIP Facility, to continue to engage in Intercompany Transactions following the Petition Date, and all Intercompany Claims arising from and after the Petition Date shall be afforded administrative expense status pursuant to sections 364(b) and 503(b) of the Bankruptcy Code.

7.      The Debtors shall continue to maintain detailed records in the ordinary course of business reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all such transfers to be readily ascertained.

8.      All Banks with which the Debtors maintain Bank Accounts are authorized and directed to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, or other transfers by the

01:17466597.10

holders or makers thereof, as the case may be, except to the extent expressly modified by the terms of this Order or the order approving the DIP Facility.

9.     Each Bank shall implement reasonable handling procedures designed to effectuate the terms of this Order, and any Bank that implements such handling procedures and then honors a pre-petition check or other item drawn on any Bank Account that is the subject of this Order either (i) at the direction of the Debtors to honor such pre-petition check or item, (ii) in good faith belief that the Court has authorized, or intends to authorize, such pre-petition check or item to be honored, or (iii) as a result of an innocent mistake made despite implementation of such handling procedures, shall not be deemed in violation of this Order or have liability for a pre-petition or other item drawn on either Bank Account that is subject to this Order.

10.     The Banks are authorized to charge back against the Bank Accounts (i) any returned items drawn or presented against the Bank Accounts, regardless of whether such returned items originated pre-petition or post-petition, and (ii) any overadvances, credit balances, or other customary fees or expenses on Bank Accounts that arise in the ordinary course of business, either pre-petition or post-petition, in connection with the use and management of such Bank Accounts; provided, however, that none of the Banks shall be required to make transfers from or honor any draws against either of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts.

11.     The Banks are authorized to continue to charge the Debtors for certain services and other fees, costs, charges, and expenses and the Debtors are authorized to pay such fees.

12.     The Debtors are authorized to open any new Bank Accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their discretion with the consent of the DIP Lender; provided, however, that the Debtors give notice within fifteen (15) days

01:17466597.10

thereafter to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in these Chapter 11 Cases; provided, further, that the Debtors shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

13.     The Debtors are authorized to use their existing check stock and are not required to (i) immediately obtain new check stock reflecting their status as debtors in possession, including listing the chapter 11 case numbers, or (ii) print "Debtor in Possession" on any of their existing check stock.  Any check stock ordered after the Petition Date shall bear the legend "Debtor in Possession" and the case number for the lead case.  To the extent the Debtors print their own checks from blank check stock, they shall commence printing on such checks the legend "Debtor in Possession" and the case number for the lead case within fifteen (15) days from the Petition Date.

14.     The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of forty-five (45) days from the date of this Order (the "Extension Period"); provided, however, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or the waiver of the requirements of section 345(b) in the Chapter 11 Cases.

15.     For Banks at which the Debtors hold accounts that are party to a UDA with the U.S. Trustee's office, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each Bank, (b) provide each of the Debtors' employer identification numbers, and (c) identify each of their accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

01:17466597.10

16.     For Banks at which the Debtors hold accounts that are not party to a UDA with the U.S. Trustee's office, the Debtors shall request that such Bank to execute an UDA in a form proscribed by the U.S. Trustee's office within forty-five (45) days of the date of this Order.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a UDA in a form proscribed by the U.S. Trustee's office are fully reserved.

17.     Following the entry of this Order, the Debtors shall contact each of the Banks and direct such Banks to code each of the Bank Accounts as being held by a debtor in possession.

18.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

19.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

21.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: August ___, 2015
         Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**
**List of Debtors' Bank Accounts**

| Debtor | Bank Name | Last 4 Digits of Bank Account No. | Description of Account |
|---|---|---|---|
| Santa Fe Gold Corporation | Wells Fargo | 6756 | Operating Account |
| The Lordsburg Mining Company | Wells Fargo | 3207 | Petrohawk Escrow Account |
| The Lordsburg Mining Company | Wells Fargo | 3199 | Merrill Lynch Abandonment Account |
| The Lordsburg Mining Company | Western Bank | 9013 | Operating Account |