# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SANTA FE GOLD CORPORATION, et al.,[1] | Case No. 15-11761 (MFW) |
| Debtors. | Joint Administration Requested |
| | Ref. Docket No. 9 |

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING LIENS, INCLUDING PRIMING LIENS, AND SUPERPRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

Upon consideration of the motion (the "DIP Motion"), dated August 26, 2015 (the "Petition Date"), of the debtors and debtors in possession (collectively, the "Debtors"), in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an interim order (this "Interim Order") pursuant to sections 105, 361, 362, 363, 364, 506, 507, and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), that, among other things:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A). The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

i.      authorizes Santa Fe Gold Corporation (the "Borrower") to obtain, and each of the other Debtors (collectively, the "Guarantors", and the Borrower and Guarantors being referred to herein collectively as the "Obligors") to unconditionally guaranty, jointly and severally, the Borrower's obligations in respect of, senior secured priming and superpriority post-petition financing, which if approved on a final basis would consist of post-petition financing in a total amount of $1,610,148, plus the Roll UP Loans and the Structuring Fee (the "DIP Facility"), provided pursuant to the terms of (x) this Interim Order and, on a final basis, the Final Order, (y) that certain Debtor-In-Possession Credit Agreement, dated as of August __, 2015 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "DIP Credit Agreement"), a true and correct copy of which is attached hereto as Exhibit B,[2] by and among the Borrower, the Guarantors and Waterton Global Value, L.P., by its investment manager, Altitude Management Limited, as lender under the DIP Credit Agreement (in such capacity, the "DIP Lender"), and (z) any and all other Credit Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "DIP Loan Documents");

ii.     authorizes the use of the proceeds of the DIP Facility to, among other things, make payments, as permitted by the Approved Budget, for operating expenses, general and ordinary purposes of the Debtors, and for other administrative expenses, including budgeted professional fees, all subject to the conditions set forth in the final DIP Loan Documents and in this Interim Order;

iii.    approves borrowings between the entry of this Interim Order and the entry of the Final Order (as defined below) in an aggregate principal amount not more than $391,547, plus the Initial Roll Up Amount and the Structuring Fee (the "Interim Amount"), and authorizes the Guarantors to unconditionally guaranty such obligations jointly and severally;

iv.     approves the conversion of all outstanding obligations arising under or in connection with the Supplemental Advance, including, without limitation, outstanding principal and accrued interest and fees thereon (the "Initial Roll Up Amount") into Roll Up Loans;

v.      approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Loan Documents and authorizes and directs the Debtors to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Interim Order;

---

[2] Unless otherwise specified in this Interim Order, all capitalized terms used but not defined herein shall have the meanings given to such terms in the DIP Credit Agreement.

vi.     grants to the DIP Lender, (x) the DIP Liens (as defined below) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(1), 364(c)(2) and 364(d)(1) of the Bankruptcy Code, which DIP Liens are senior to and prime all other liens and (y) pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all pre-petition and post-petition property of the Debtors' estates, now owned or hereafter acquired and the proceeds of each of the foregoing, including,[3] upon entry of this Interim Order, any Debtor's rights under section 549 of the Bankruptcy Code and the proceeds thereof, and upon entry of the Final Order, the proceeds of Avoidance Actions (as defined below);

vii.    authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash Collateral in which the DIP Lender and the Senior Pre-Petition Lender (as defined below) have a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise;

viii.   vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

ix.     grants the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender (as defined below), as of the Petition Date and in accordance with the relative priorities set forth herein, the Adequate Protection Liens and the Adequate Protection Priority Claims (each as defined below);

x.      schedules a final hearing on the DIP Motion (the "Final Hearing") to be held no later than thirty-five (35) calendar days after the entry of this Interim Order to consider entry of a final order that grants all of the relief requested in the DIP Motion on a final basis and which final order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or this Court) acceptable to the DIP Lender (the "Final Order");

xi.     waives, upon entry of the Final Order, certain rights of the Debtors to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code; and

xii.    provides for the immediate effectiveness of this Interim Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

---

[3] As used herein, the words "including" or "include" and variations thereof shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

Having considered the DIP Motion, the DIP Credit Agreement, the other DIP Loan Documents, the *Declaration of Jakes Jordaan in Support of Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), and the evidence submitted or proffered at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), and 4001(d), 6004(c) and 9014 and all applicable Local Rules, due and sufficient notice of the DIP Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); the Interim Hearing having been held and concluded on August 27, 2015; this Court having considered all the pleadings, motions and other papers filed in connection therewith; this Court having overruled all unresolved objections to the interim relief requested in the Motion; this Court having considered the record made by the Debtors at the Interim Hearing; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and the other DIP Loan Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.        **Petition Date**.  On the Petition Date, each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

01:17605041.4

Court for the District of Delaware (this "Court"). The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No statutory committee of unsecured creditors (to the extent such committee is appointed, the "Committee"), trustee, or examiner has been appointed in these Chapter 11 Cases.

B.    **Jurisdiction and Venue**. This Court has core jurisdiction over these Chapter 11 Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and other predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

C.    **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) those entities or individuals included on the Debtors' List of Creditors Holding Twenty Largest Unsecured Claims on a Consolidated Basis, (iii) counsel to the Senior Pre-Petition Lender, (iv) counsel to the Second Lien Pre-Petition Lender, (v) counsel to the DIP Lender, and (vi) all other known lienholders. Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules 4001(b), (c) and (d), and the Local Rules, and

5

no other notice need be provided for entry of this Interim Order.

      D.      **Debtors' Stipulations Regarding the Senior Pre-Petition Indebtedness**.

Subject only to the rights of parties in interest that are specifically set forth in Paragraph 7 below,

the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and

agree (collectively, the "Debtors' Stipulations") as follows:

      (i)      *Senior Pre-Petition Indebtedness*. As of the Petition Date, each of the Debtors were truly and justly indebted to the Senior Pre-Petition Lender (I) in the aggregate principal amount of $7,955,685, *plus* accrued and unpaid interest and any additional fees, costs and expenses pursuant to the Pre-Petition Credit Agreement, and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Credit Documents" as defined in the Pre-Petition Credit Agreement (each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Pre-Petition Credit Agreement Documents"), and (II) in the aggregate principal amount of $5,629,563 pursuant to the Pre-Petition Gold Supply Agreement, and collectively with any other agreements and documents executed or delivered in connection therewith (each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Pre-Petition Gold Supply Agreement Documents" and, collectively with the Pre-Petition Credit Agreement Documents, the "Senior Pre-Petition Credit Documents"),[5] in each case without defense, counterclaim, reduction or offset of any kind.

      (ii)      The first priority liens and security interests granted to the Senior Pre-Petition Lender in all of the Debtors' assets (the "Waterton Pre-Petition Collateral" and the liens securing the Waterton Pre-Petition Collateral, the "Waterton Pre-Petition Liens") (a) are legal, valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Senior Pre-Petition Lender for fair consideration and reasonably equivalent value, and (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

      (iii)      The obligations under the Senior Pre-Petition Indebtedness constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the Senior Pre-Petition Credit Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Pre-Petition Indebtedness exist, (y) no portion

---

[5] All obligations of the Debtors arising under the Senior Pre-Petition Credit Documents are referred to herein as the "Senior Pre-Petition Indebtedness." Waterton Global Value, L.P., in its capacity as provider of the Senior Pre-Petition Indebtedness is referred to herein as the "Senior Pre-Petition Lender."

of the Senior Pre-Petition Indebtedness or any payments made to the Senior Pre-Petition Lender are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) each of the guarantees provided in the Senior Pre-Petition Credit Documents shall continue in full force and effect to unconditionally guaranty the Senior Pre-Petition Indebtedness notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Lender to the Debtors pursuant to the terms of this Interim Order or the DIP Loan Documents.

(iv)    *Subordination of Sandstorm Pre-Petition Liens to Waterton Pre-Petition Liens*. The Sandstorm Pre-Petition Liens (defined below) are inferior, junior and subordinate to the Waterton Pre-Petition Liens pursuant to the Intercreditor Agreement.

E.    Cash Collateral. All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Senior Pre-Petition Lender.

F.    **Findings Regarding the DIP Facility**.

(i)    Need for Post-petition Financing. The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of their businesses, to make payroll, to satisfy other working capital and operational needs, to complete the Debtors' marketing and sale process and to otherwise preserve the value of the Debtors' estates. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful sale and/or to otherwise preserve the value of the Debtors' estates. If immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Interim Order and the DIP Loan Documents, the Debtors and their estates will incur immediate and irreparable harm.

(ii)    No Credit Available on More Favorable Terms. The Debtors have

7

been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Loan Documents and this Interim Order.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured credit allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Lender the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (as defined below), (b) allowing the DIP Lender to provide the loans and other financial accommodations under the DIP Facility (including the conversion of the Initial Roll Up Amount into Roll Up Loans) on the terms set forth herein and in the DIP Loan Documents, and (c) granting to the Senior Pre-Petition Lender the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the Senior Adequate Protection Liens and the Senior Adequate Protection Priority Claims (all of the foregoing described in clauses (a), (b), and (c) above, collectively, the "DIP Protections").

G.      **Interim Financing**.  During the Interim Period (as defined below), the DIP Lender and the Senior Pre-Petition Lender are willing to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors, subject to (i) the entry of this Interim Order, and (ii) the terms and conditions of the DIP Loan Documents; provided, however, that the consent of the Senior Pre-Petition Lender is limited to the present DIP Facility and shall not be applicable to any other debtor in possession loan facility even if such debtor in possession loan facility contains economic terms which are substantially similar to the economic terms of the DIP Facility.

H.      **Adequate Protection**.   The Senior Pre-Petition Lender has agreed to permit the Debtors' use of the Waterton Pre-Petition Collateral, including the Cash Collateral, during the Interim Period, subject to the terms and conditions set forth herein.  In addition, the DIP Facility contemplated hereby provides for a priming of the Waterton Pre-Petition Liens and Sandstorm Pre-Petition Liens (defined below) pursuant to section 364(d) of the Bankruptcy Code.  The Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender (defined below) are entitled to the adequate protection as set forth herein pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to this Court at the Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the DIP Facility contemplated hereby are fair and reasonable, consistent with the Bankruptcy Code, including section 506(b) thereof, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and are reasonable to protect the interests of the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender.  If the Second Lien Pre-Petition Lender has not expressly consented to the entry of this Interim Order, the Sandstorm Pre-Petition Liens and security interests of the Second Lien Pre-Petition Lender are adequately protected pursuant to the terms of this Interim Order.

I.      **Section 552**.  In light of the subordination of its liens and claims to the DIP Liens, and the imposition of the Carve-Out, the Senior Pre-Petition Lender is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply.

J.      **Initial Approved Budget**.  Attached hereto as Exhibit A is an initial Approved Budget (the "Initial Approved Budget").  The Initial Approved Budget conforms to

9

the form attached to the DIP Credit Agreement as Exhibit D.  The Initial Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Lender and the Senior Pre-Petition Lender in consenting to this Interim Order, to provide the DIP Facility and to permit the use of the Cash Collateral.

K.      **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)      The terms and conditions of the DIP Facility (including the conversion of the Initial Roll Up Amount into Roll Up Loans) as set forth in the DIP Loan Documents and this Interim Order, and the fees, expenses and other charges paid and to be paid thereunder or in connection therewith, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

(ii)      The DIP Facility was negotiated in good faith and at arms' length among the Debtors, the DIP Lender and the Senior Pre-Petition Lender.

(iii)      Use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender and the Senior Pre-Petition Lender are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.  The DIP Liens, DIP Superpriority Claims and other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

L.      **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates, their businesses and properties and their ability to successfully sell their assets or otherwise preserve the value of their estates will be immediately and irreparably

10

harmed. The Court concludes that immediate entry of this Interim Order is therefore in the best interests of the Debtors' estates and creditors and will allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

**NOW, THEREFORE**, based on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Senior Pre-Petition Lender and the DIP Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor:

**IT IS ORDERED** that:

1.      **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.   Any objections to the DIP Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled. This Interim Order shall become effective immediately upon its entry.

2.      **DIP Loan Documents and DIP Protections**.

(a)     <u>Approval of DIP Loan Documents</u>.  The Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the DIP Loan Documents and this Interim Order, to incur the DIP Obligations[6] (including to immediately convert the Initial Roll Up Amount into Roll Up Loans and to draw the Interim Amount), in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents that may be required or necessary for the performance by the applicable Debtors

---

[6] For purposes of this Interim Order, the term "<u>DIP Obligations</u>" shall mean all amounts and other obligations and liabilities owing by the respective Debtors under the DIP Credit Agreement, the other DIP Loan Documents (including, without limitation, all "Obligations" as defined in the DIP Credit Agreement, and all Roll Up Loans) and to the DIP Lender or the Senior Pre-Petition Lender under this Interim Order.

under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for by, this Interim Order and the DIP Loan Documents. The Debtors are hereby authorized to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Interim Order, including, without limitation, all professional fees, the Fees under the DIP Credit Agreement, the Extension Fee, the Structuring Fee, the Termination Fee, and disbursements arising under the DIP Loan Documents and this Interim Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect. Upon their execution and delivery, the DIP Loan Documents shall represent the legal, valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms. No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim. Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)        Authorization to Incur DIP Obligations and Use Cash Collateral. To enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, or (ii) a Termination Event (as defined below), in each case unless extended by written agreement of the DIP Lender and the Senior Pre-Petition Lender (the period from the entry of this Interim Order through and including such earliest date,

12

the "Interim Period"), the Borrower is hereby authorized (x) to use Cash Collateral and (y) to borrow under the DIP Facility; provided that (i) during the Interim Period, the aggregate outstanding amount for all such borrowings shall not exceed the Interim Amount; and (ii) any proposed use of the proceeds of DIP Loans or use of Cash Collateral shall be consistent with the terms and conditions of this Interim Order and the DIP Loan Documents, including the Approved Budget. All DIP Obligations shall be unconditionally guaranteed, on a joint and several basis, by the Guarantors, as further provided in the DIP Loan Documents.

(c)     Roll Up Loans. The Initial Roll Up Amount shall immediately, automatically, and, subject to paragraph 7 of this Interim Order, irrevocably be deemed to have been converted into Roll Up Loans and shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under this Interim Order and the DIP Loan Documents.

(d)     Perfection in Cash. Subject to the Carve-Out and other provisions of this Interim Order, all financial institutions in which the Debtors' deposit accounts are located are authorized and, after notice and subject to the entry of a Final Order, directed to comply with any request of the DIP Lender to turn over to the DIP Lender all funds therein without offset or deduction of any kind, and the Debtors are authorized and directed to enter into such blocked account agreements with cash dominion with the DIP Lender and such financial institutions as the DIP Lender may require. Alternatively, the DIP Lender shall be entitled to enjoy the benefit of all control agreements to which the Senior Pre-Petition Lender is a party without the need to enter into new blocked account agreements.

(e)     Approved Budget; Cash Flow Reporting. The Borrower shall timely furnish the DIP Lender with each Weekly Actuals Report, Updated Budget, Approved Budget Variance

13

Report and each other calculation and report as required by, and in accordance with, Section 10.1(b) of the DIP Credit Agreement.

(f)     <u>Interest, Fees, Costs and Expenses</u>.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtors shall pay on demand all fees, costs, indemnities, expenses (including reasonable out-of-pocket legal and other professional fees and expenses of the DIP Lender) and other charges payable under the terms of the DIP Loan Documents.  All such fees, costs, indemnities, expenses and disbursements, whether incurred, paid or required to be paid pre-petition or post-petition and whether or not budgeted in the Approved Budget, are hereby affirmed, ratified, authorized and payable (and any funds held by the DIP Lender and/or its professionals as of the Petition Date for payment of such fees, costs, indemnities, expenses and disbursements may be applied for payment) as contemplated in this Interim Order and the DIP Loan Documents, and shall be non-refundable and not subject to challenge in any respect.  All such unpaid fees, costs, expenses, indemnities and disbursements that are payable under the terms of the DIP Loan Documents shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order.

(g)     <u>Use of DIP Facility and Proceeds of DIP Collateral</u>.  The Debtors shall only incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds solely in accordance with this Interim Order and the DIP Loan Documents, and for the specific purposes, and at the specific time periods, set forth in the Approved Budget, subject to variances permitted in the DIP Credit Agreement (and in the case of the costs and expenses of the DIP

14

Lender, in accordance with the DIP Loan Documents and this Interim Order without being limited by the Approved Budget). Without limiting the foregoing, the Debtors shall not be permitted to make any payments (from the DIP Collateral, the Loan or otherwise) on account of any pre-petition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except (a) with respect to the Senior Pre-Petition Indebtedness as set forth in this Interim Order and a Final Order; (b) as provided in the "first day orders" (as such term is used in the DIP Credit Agreement) and as expressly agreed to by the DIP Lender; or (c) as expressly provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Lender prior to such motion, order, or request for such relief being filed.

(h)    DIP Liens. As security for the DIP Obligations, effective as of the Petition Date, the following security interests and liens, which shall immediately and without any further action by any Person be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry of this Interim Order, are hereby granted by each Debtor to the DIP Lender (all such security interests and liens granted to the DIP Lender pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"), on all of its right, title and interest in, to and under all property and assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of such Debtor, whether owned or consigned by or to, or leased from or to, such Debtor, and regardless of where located, including, without limitation, all Collateral (as defined in Section 7.1 of the DIP Credit Agreement), all other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the

15

foregoing, in each case wherever located (all of the foregoing collateral collectively referred to as the "DIP Collateral"):

> (I)    pursuant to section 364(c)(2) of the Bankruptcy Code, a fully perfected, binding, continuing, enforceable, and non-avoidable first priority lien on all unencumbered DIP Collateral, including, subject to the entry of the Final Order, the proceeds of the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law (collectively, the "Avoidance Actions", which for avoidance of doubt, excludes Debtors' claims and causes of action under section 549 of the Bankruptcy Code or similar state or municipal law and the proceeds of each of the foregoing), whether received by judgment, settlement, or otherwise;

> (II)    pursuant to section 364(d)(1) of the Bankruptcy Code, a fully perfected, binding, continuing, enforceable and non-avoidable first priority, senior priming lien on all other DIP Collateral (including Cash Collateral), which DIP Lien (x) shall be senior to the Adequate Protection Liens and (y) shall be senior to and prime any and all valid, perfected, enforceable and non-avoidable pre-petition and post-petition liens, tax liens or other non-consensual liens in existence as of the Petition Date and properly perfected prior to the Petition Date (the liens referenced in clauses (x) and (y), collectively, the "Primed Liens") and shall be subject only to the Carve-Out.

(i)    Superpriority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the Carve-Out in accordance with this Interim Order, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Priority Claims (as defined below)), priority claims and other unsecured claims, and all other claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, and 1114 or any

16

other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, including, subject to the entry of the Final Order, Avoidance Actions and the proceeds thereof. Other than as expressly provided in the DIP Credit Agreement and/or this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Lender arising under the DIP Loan Documents and/or this Interim Order.

(j)    Priority of DIP Liens and DIP Superpriority Claims. The DIP Liens and the DIP Superpriority Claims: (A) subject to the entry of the Final Order, shall not be subject to sections 506, 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, and (C) shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case

17

under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of any of the Chapter 11 Cases.

3.    **Adequate Protection for the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender**.    In consideration for the use of the Waterton Pre-Petition Collateral (including Cash Collateral) and the Sandstorm Pre-Petition Collateral,[7] and solely to the extent that the Debtors have value in the DIP Collateral, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender shall receive, as applicable, the following adequate protection (collectively referred to as the "Pre-Petition Adequate Protection"):

(a)    Senior Adequate Protection Liens.    To the extent there is a diminution in value of the Senior Pre-Petition Lender's interests in the Waterton Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date, whether or not resulting from the use, sale, or lease by the Debtors of the applicable Waterton Pre-Petition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the imposition of the Carve-Out, or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code (a "Diminution in Waterton Pre-Petition Collateral Value"), the Senior Pre-Petition Lender is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement security interests in and liens and mortgages upon all of the DIP Collateral, including, subject to the entry of the Final Order,

---

[7] All obligations of the Debtors to the Second Lien Pre-Petition Lender (defined below) arising under the Sandstorm Gold Supply Agreement and the other agreements and documents executed or delivered in connection therewith (each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Sandstorm Documents") are referred to herein as the "Second Lien Pre-Petition Indebtedness."  Sandstorm Gold (Barbados) Ltd. ("Sandstorm Barbados"), in its capacity as provider of the Second Lien Pre-Petition Indebtedness is referred to herein as the "Second Lien Pre-Petition Lender."  Pursuant to the Sandstorm Documents, the Second Lien Pre-Petition Lender was granted a charge, as described in the Sandstorm Gold Supply Agreement, over all of the assets, property and undertaking of The Lordsburg Mining Company in respect of the Summit Mine (as defined in the First Day Declaration) to secure The Lordsburg Mining Company's guarantee obligations under the Sandstorm Gold Supply Agreement (the "Sandstorm Pre-Petition Collateral" and the liens securing the Sandstorm Pre-Petition Collateral, the "Sandstorm Pre-Petition Liens").

the proceeds of Avoidance Actions (such adequate protection replacement Liens, the "Senior Adequate Protection Liens"), which Senior Adequate Protection Liens on such DIP Collateral shall be junior and subordinate only to the DIP Liens and the Waterton Pre-Petition Liens and subject to the Carve-Out.

(b)    Second Lien Adequate Protection Liens.  To the extent there is a diminution in value of the Second Lien Pre-Petition Lender's interests in the Sandstorm Pre-Petition Collateral from and after the Petition Date, whether or not resulting from the use, sale, or lease by the Debtors of the applicable Sandstorm Pre-Petition Collateral, the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Sandstorm Pre-Petition Liens thereto, the imposition of the Carve-Out, or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code (a "Diminution in Sandstorm Pre-Petition Collateral Value"), the Second Lien Pre-Petition Lender is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement security interests in and liens and mortgages upon the portion of the DIP Collateral solely to the extent of and in a manner that is consistent with the nature, type and scope of the Sandstorm Pre-Petition Collateral (such adequate protection replacement Liens, the "Second Lien Adequate Protection Liens" and, together with the Senior Adequate Protection Liens, the "Adequate Protection Liens"), which Second Lien Adequate Protection Liens on such DIP Collateral shall be junior and subordinate to the DIP Liens, the Senior Adequate Protection Liens and the Waterton Pre-Petition Liens, and subject to the Carve-Out.

(c)    Senior Adequate Protection Priority Claims.  To the extent of Diminution in Waterton Pre-Petition Collateral Value, the Senior Pre-Petition Lender is hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the

"Senior Adequate Protection Priority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority over other unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order to the extent provided in Paragraph 9), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims and subject to the Carve-Out, and payable from and having recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof (including, subject to entry of the Final Order, all proceeds of Avoidance Actions); provided, however, that the Senior Pre-Petition Lender shall not receive or retain any payments, property, or other amounts in respect of the Senior Adequate Protection Priority Claims unless and until all DIP Obligations have been paid in full.  Subject to the relative priorities set forth above, the Senior Adequate Protection Priority Claims against each Debtor shall be allowed and enforceable against each Debtor and its estate on a joint and several basis.

(d)     Second Lien Adequate Protection Priority Claims.  To the extent of Diminution in Sandstorm Pre-Petition Collateral Value, the Second Lien Pre-Petition Lender is hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "Second Lien Adequate Protection Priority Claims" and, together with the Senior Adequate Protection Priority Claims, the "Adequate Protection Priority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority over other unsecured claims, in each case solely against Debtor The Lordsburg Mining Company or its estate, now existing or hereafter arising, of any kind or nature whatsoever,

20

including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order to the extent provided in Paragraph 9), 507(a), 507(b), 546(c), 546(d), 726 , 1113, 1114 or any other provision of the Bankruptcy Code or otherwise, junior only to the DIP Superpriority Claims and the Senior Adequate Protection Priority Claims and subject to the Carve-Out, and payable from and having recourse to the pre-petition and post-petition property of Debtor The Lordsburg Mining Company and proceeds thereof; provided, however, that the Second Lien Pre-Petition Lender shall not receive or retain any payments, property, or other amounts in respect of the Second Lien Adequate Protection Priority Claims unless and until all DIP Obligations and Senior Adequate Protection Priority Claims have been paid in full. Subject to the relative priorities set forth above, the Second Lien Adequate Protection Priority Claims against Debtor The Lordsburg Mining Company shall be allowed and enforceable only against Debtor The Lordsburg Mining Company.

(e)     Priority of Adequate Protection Liens and Adequate Protection Priority Claims. The Adequate Protection Liens and the Adequate Protection Priority Claims (A) subject to paragraph 7 below and the entry of the Final Order, shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, and (C) shall be valid, binding, perfected and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Cases or any Successor Cases, and/or upon the dismissal of any of

21

the Cases. The Adequate Protection Liens shall be junior to the DIP Liens and the Senior Pre-

Petition Lender's liens arising under any Senior Pre-Petition Credit Documents, and senior to

any other liens, including, without limitation, to any other adequate protection replacement liens.

Finally, for the avoidance of doubt the Second Lien Adequate Protection Liens and the Second

Lien Adequate Protection Priority Claims may only be asserted against Debtor The Lordsburg

Mining Company and shall be junior to the Senior Adequate Protection Liens and the Senior

Adequate Protection Priority Claims.

     (f)    <u>Interest and Professional Fees</u>. Without limiting any rights of the Senior Pre-

Petition Lender under section 506(b) of the Bankruptcy Code, which rights are hereby preserved,

and in consideration, and as a requirement, for obtaining the Senior Pre-Petition Lender's

consent to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as

provided herein and as addition adequate protection, (i) the Senior Pre-Petition Lender's fees,

costs, expenses, and charges (including the reasonable fees, costs, and expenses of counsel and

financial advisors for the Senior Pre-Petition Lender) to the extent, and at the times, payable

under the Senior Pre-Petition Credit Documents, including any unpaid fees, costs and expenses

accrued prior to the Petition Date, and (ii) all of the interest accruing under the Senior Pre-

Petition Credit Documents at the default rate(s) set forth therein, in the case of each of sub-

clauses (i) and (ii) above, whether or not budgeted in the Approved Budget, and without further

notice, motion, or application to, order of, or hearing before, this Court, shall accrue during these

Chapter 11 Cases, shall be deemed to be included in the Senior Pre-Petition Indebtedness and,

other than the Initial Roll Up Amount, subject to the entry of the Final Order, shall be converted

into Roll Up Loans in accordance with the DIP Credit Agreement; <u>provided</u>, <u>however</u>, that any

payment, accrual or conversion into Roll UP Loans of post-petition interest or reimbursement of

22

post-petition fees, costs and expenses under the Senior Pre-Petition Credit Documents shall be reapplied to reduce the principal amount of the Senior Pre-Petition Indebtedness to the extent this Court determines in a final, non-appealable order that the Senior Pre-Petition Lender is not entitled to such payment, accrual or reimbursement pursuant to section 506(b) of the Bankruptcy Code.

(g)    Right to Seek Additional Adequate Protection.    This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Senior Pre-Petition Lender to seek additional or alternative forms of adequate protection at any time; provided that any such additional or alternative adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lender granted under this Interim Order and the DIP Loan Documents.

4.    **Automatic Post-Petition Lien Perfection.**    This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable law) such liens, or to entitle the DIP Lender, the Senior Pre-Petition Lender or the Second Lien Pre-Petition Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security

23

agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date. The applicable Debtors shall execute and deliver to the DIP Lender all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the DIP Liens and the Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, the DIP Lender may, in its discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized and hereby is directed to file or record such copy of this Interim Order.

5.    **Automatic Stay**.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and/or modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Lender, under the DIP Loan Documents, the DIP Facility, and this Interim Order, (ii) authorize the DIP Lender and the Senior Pre-Petition Lender to retain and apply payments made in accordance with the DIP Loan Documents and the Senior Pre-Petition Credit Documents, (iii) to permit each of the DIP Lender and the Senior Pre-Petition Lender to perform any act authorized under this Interim Order and the DIP Loan Documents, and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order and the DIP Loan Documents.

6.    **Release of Claims**.  Subject only to the rights of parties in interest that are specifically set forth in Paragraph 7 below, the releases provided in Section 7.13 of the DIP

24

Credit Agreement are expressly incorporated herein by reference and are effective as of the date of entry of this Interim Order.

7.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.**  The Debtors' Stipulations shall be binding upon the Debtors and their estates in all circumstances upon entry of this Interim Order.  Nothing in this Interim Order or the DIP Loan Documents shall prejudice whatever rights any official committee(s) or any other party in interest (other than the Debtors), including any trustee subsequently appointed under chapter 7 or chapter 11 of the Bankruptcy Code, may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgages, security interests and liens of the Senior Pre-Petition Lender in and to the Waterton Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Senior Pre-Petition Indebtedness or the Roll Up Loans, or (b) to bring suit against the Senior Pre-Petition Lender in connection with or related to the Senior Pre-Petition Indebtedness, or the actions or inactions of the Senior Pre-Petition Lender arising out of or related to the Senior Pre-Petition Indebtedness, or otherwise; provided, however, that, unless any official committee(s) or any other party in interest obtains the requisite standing to commence, and commences, a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Senior Pre-Petition Lender in the nature of a setoff, counterclaim or defense to the Senior Pre-Petition Indebtedness (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Senior Pre-Petition Lender), by the later of (a) with respect to any Committee, sixty (60) calendar days following the appointment of any Committee, or (b) if no Committee is appointed, with respect to other parties in interest with requisite standing other than the Debtors

25

or any Committee, seventy-give (75) calendar days following entry of the Interim Order (collectively, (a) and (b) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "Challenge Period Termination Date"),[8] upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any official creditors' committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and all of the obligations under the Senior Pre-Petition Credit Documents shall be allowed secured claims within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is filed, the findings herein shall nonetheless remain binding and preclusive on the Committee, any other official committee and on any other person or entity, except to the extent that such assertions were expressly challenged in such objection or complaint.  In the event of a timely and successful challenge, this Court shall fashion the appropriate remedy with respect to the Senior Pre-Petition Lender after hearing from all parties.

8.     **Carve-Out**.  Subject to the terms and conditions contained in this paragraph, each of the DIP Liens, the DIP Superpriority Claims, the Waterton Pre-Petition Liens, the Sandstorm Pre-Petition Liens, the Adequate Protection Liens, and the Adequate Protection Claims shall be subject to payment of the Carve-Out in accordance with the terms of this Interim Order:

---

[8] If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed or elected.

(a)    Carve-Out.  For purposes of this Interim Order, "Carve-Out" means the sum of (i) the aggregate amount of any reasonable and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Date by the professionals retained by the Debtors or any professionals retained by the Committee (collectively, the "Professionals") to the extent allowed by an order of the Bankruptcy Court and in compliance with the Approved Budget, plus (ii) those reasonable fees, costs and expenses incurred by Professionals after the Carve-Out Date and subsequently allowed by order of the Bankruptcy Court and in compliance with the Approved Budget, plus (iii) the Success Fee of Canaccord Genuity Inc. as set forth (and defined) in its engagement letter arising from of a sale of substantially all the assets of the Debtors to the extent such Success Fee is allowed by the Bankruptcy Court at any time, whether by interim order, procedural order or otherwise, plus (iv) fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930; provided that (x) the amounts described in items (i) and (ii) of this paragraph shall not exceed $350,000 in the aggregate (the "Carve-Out Cap") and (y) following the Carve-Out Date any amounts paid to Professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis.

(b)    No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.  None of the DIP Lender or the Senior Pre-Petition Lender shall be responsible for the direct payment or reimbursement of any fees, costs, expenses or disbursements of any of the Professionals.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Professionals, any other official or unofficial committee in these Chapter 11 Cases or any Successor Cases or shall affect the right of the DIP Lender or the Senior Pre-Petition Lender to object to the allowance and payment of such fees.

27

(c)     Payment of Allowed Professional Fees and Expenses Prior to a Termination Event.  Prior to the occurrence of a Termination Event (defined below), the Debtors shall be permitted to pay allowed fees and expenses of the Professionals, or the members of the Committee (only to the extent such fees and expenses were incurred in accordance with the Approved Budget), subject to this Interim Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court.

9.     **Waiver of 506(c) Claims/Marshalling**.  Subject to the entry of the Final Order: (i) no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Waterton Pre-Petition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Lender or the Senior Pre-Petition Lender, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Senior Pre-Petition Lender; and (ii) in no event shall the DIP Lender or the Senior Pre-Petition Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Waterton Pre-Petition Collateral, as applicable.

10.     **After-Acquired Property**.   Except as otherwise expressly provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date (or a

28

valid, enforceable and unavoidable lien that is perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

11.     **Protection of DIP Lender's and the Senior Pre-Petition Lender's Rights**. Unless the DIP Lender and the Senior Pre-Petition Lender shall have provided their prior written consent, or all DIP Obligations and obligations under the Senior Pre-Petition Credit Documents have been paid in full, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Waterton Pre-Petition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superiority Claims, the Waterton Pre-Petition Liens, the Senior Adequate Protection Liens, the Senior Adequate Protection Priority Claims and/or the other DIP Protections; (ii) the use of Cash Collateral for any purpose other than to pay in full the DIP Obligations and the obligations under the Senior Pre-Petition Credit Documents, or as otherwise permitted in the DIP Loan Documents and this Interim Order, or (iii) any modification of either of the DIP Lender's or the Senior Pre-Petition Lender's rights under this Interim Order, the DIP Loan Documents or the Senior Pre-Petition Credit Documents.

12.     **Cash Collection and Borrower Account**. From and after the date of the entry of this Interim Order, the proceeds of the DIP Facility, and all collections and proceeds of any DIP Collateral, Waterton Pre-Petition Collateral, Sandstorm Pre-Petition Collateral or services

29

provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in (i) the Borrower Account or (ii) in (a) deposit accounts that are Controlled Accounts, (b) deposit accounts or lockbox accounts that are swept on a daily basis into a Controlled Account or (c) deposit accounts subject to a control agreement with the Senior Pre-Petition Lender, each in accordance with the DIP Credit Agreement. No funds shall be disbursed from the Borrower Account or any such other account other than in accordance with the DIP Credit Agreement and the Approved Budget. Upon an Event of Default, no amounts (other than the Carve-Out) shall be disbursed from the Borrower Account or such other accounts. All amounts in the Borrower Account and such other accounts shall remain as collateral for the DIP Facility, and shall not be subject to any liens, including in connection with any Adequate Protection Liens, but shall be subject to the Carve-Out. Upon the direction of the DIP Lender, at any time after the occurrence of a Termination Event and subject to the provisions of Paragraph 8, all proceeds in the Borrower Account or such other accounts shall be remitted to the DIP Lender for application to the DIP Obligations until payment in full, and then to the Senior Pre-Petition Lender for application to the Senior Pre-Petition Indebtedness until payment in full, and then to the Second Lien Pre-Petition Lender for application to the Second Lien Pre-Petition Indebtedness, and the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender shall be entitled to take all action that is necessary or appropriate to effectuate the foregoing. Unless otherwise agreed to in writing by the DIP Lender, the Debtors shall maintain no accounts except those identified in the *Order (I) Authorizing the Debtors to (A) Continue their Existing Cash Management System and (B) Maintain Existing Bank Accounts and Check Stock, (II) Granting an Extension of Time to Comply with Section 345(b) of the*

30

*Bankruptcy Code, and (III) Authorizing the Debtors to Continue Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims* (the "Cash Management Order"). The Debtors and the financial institutions where the bank accounts authorized in the Cash Management Order are maintained are authorized and directed to remit funds in such accounts upon receipt of any direction to that effect from the DIP Lender or, following payment in full of the DIP Obligations, the Senior Pre-Petition Lender or, following payment in full of the DIP Obligations and the Senior Pre-Petition Indebtedness, the Second Lien Pre-Petition Lender.

13.   **Disposition of DIP Collateral; Credit Bid**.

(a)   Unless the DIP Obligations and the obligations under the Senior Pre-Petition Indebtedness are paid in full upon the closing of a sale or other disposition of the DIP Collateral or the Waterton Pre-Petition Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or any portion of the Waterton Pre-Petition Collateral (or enter into any binding agreement to do so) without the prior written consent of the DIP Lender and the Senior Pre-Petition Lender (and no such consent shall be implied from any other action, inaction, or acquiescence by either of the DIP Lender or the Senior Pre-Petition Lender, or any order of this Court), except as permitted in the DIP Loan Documents and/or the Senior Pre-Petition Credit Documents, as applicable, and this Interim Order. Except to the extent otherwise expressly provided in the DIP Loan Documents, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral shall be remitted to the DIP Lender for application to repayment of the DIP Obligations, and then for application to repayment of any remaining Senior Pre-Petition Indebtedness, in each case, in accordance with the terms of this Interim Order, the DIP Loan Documents and/ or the Senior Pre-Petition Credit Documents, as the case may be.

31

(b)   The DIP Lender (or one or more of its designees, affiliates or assignees) shall have the unqualified right to credit bid up to the full amount of any DIP Obligations in any sale of the DIP Collateral (or any DIP Collateral subject to any Adequate Protection Liens) under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) section 725 of the Bankruptcy Code. The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the DIP Collateral (or any DIP Collateral subject to any Adequate Protection Liens) that does not include an unqualified right to credit bid up to the full amount of the DIP Obligations would mean that the DIP Lender will not receive the indubitable equivalent of its claims and interests.

(c)   The Senior Pre-Petition Lender (or one or more of its designees, affiliates or assignees) shall have the unqualified right to credit bid up to the full amount of any remaining obligations under the Senior Pre-Petition Indebtedness in any sale of the Waterton Pre-Petition Collateral (or any DIP Collateral subject to any Senior Adequate Protection Liens) under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) any plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) section 725 of the Bankruptcy Code. The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the Waterton Pre-Petition Collateral (or any DIP Collateral subject to any Senior Adequate Protection Liens) that does not include an unqualified right to credit bid up to the full amount of any remaining obligations under the Senior Pre-Petition Indebtedness would mean that the Senior Pre-Petition Lender will not receive the indubitable equivalent of its claims and interests.

14.   **Termination; Rights and Remedies Upon Termination Event**.

32

(a)    The DIP Facility shall terminate the earliest of (i) the Maturity Date; (ii) the acceleration of all or any portion of the Obligations; (iii) thirty-five days after the entry by the Bankruptcy Court of this Interim Order, unless the Final Order shall have been entered and become effective prior thereto; (iv) the conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Lender; (v) the dismissal of any of these Chapter 11 Cases unless otherwise consented to in writing by the DIP Lender; (vi) the effective date of any Debtor's plan of reorganization confirmed in these Chapter 11 Cases; (vii) the closing of a sale of substantially all the assets of the Debtors, (viii) the filing of a plan of reorganization in these Chapter 11 Cases by any party other than the Debtors without the consent of the DIP Lender; (ix) the Debtors seek or propose to sell all or substantially all the assets of the Debtors and such sale does not provide for payment in full of all the DIP Obligations without the consent of the DIP Lender, and (x) the exercise by Sandstorm Barbados of the "Assignment and Purchase Option" (as defined in the Intercreditor Agreement) (such of termination, the "Termination Date").  Furthermore, the occurrence of an "Event of Default" under the DIP Credit Agreement (one event of which is the occurrence of the Termination Date), as set forth therein, or any other material breach, default or other violation by any of the Debtors of the terms and provisions of this Interim Order shall constitute a termination event under this Interim Order and the DIP Loan Documents (each, a "Termination Event") unless waived in writing by the DIP Lender.  Upon the occurrence of a Termination Event, but subject to Article 11 of the DIP Credit Agreement, any automatic stay otherwise applicable to the DIP Lender is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Lender to exercise any and all rights and remedies available to it under the DIP Credit Agreement and applicable law.

33

(b)     Upon the effectiveness of any relief from the automatic stay with respect to the DIP Facility pursuant to Paragraphs 12 and 14(a) hereof, and on not less than three (3) business days' prior written notice to counsel for the Debtors, the U.S. Trustee, and the Committee, the Senior Pre-Petition Lender shall have relief from the automatic stay to the same extent as the DIP Lender, and without further notice, hearing, motion, order or other action of any kind, to foreclose on, or otherwise enforce and realize on its Waterton Pre-Petition Liens and the Senior Adequate Protection Liens or otherwise exercise remedies against the DIP Collateral or Waterton Pre-Petition Collateral permitted by this Interim Order, the Senior Pre-Petition Credit Documents and/or applicable non-bankruptcy law; provided, however, that any such foreclosure, enforcement or exercise of remedies by the Senior Pre-Petition Lender shall not interfere with or otherwise be inconsistent with any foreclosure or other enforcement by the DIP Lender of any DIP Liens or other DIP Protections or any other exercise of remedies by the DIP Lender.

(c)     Subject to the provisions of Paragraph 7 hereof, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Lender or the Senior Pre-Petition Lender shall be turned over first to the DIP Lender for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Interim Order until payment in full of all of the DIP Obligations and then to the Senior Pre-Petition Lender for application to the obligations under the Senior Pre-Petition Credit Documents.

15.     **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Waterton Pre-Petition Collateral, Sandstorm Pre-Petition Collateral or any portion of the Carve-Out may

34

be used by (a) any Debtor, Committee or trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Cases, or any other person, party, or entity (including any of the Professionals or the members of the Committee) to investigate or prosecute any challenge (including any litigation or other action) in connection with the value of the Waterton Pre-Petition Collateral, the Sandstorm Pre-Petition Collateral or the DIP Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) any Debtor, any Committee, or any trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Cases, or any other person, party, or entity (including any of the Professionals or the members of the Committee) to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lender, or to seek any modification to this Interim Order not approved by the DIP Lender and, to the extent such modification would affect the rights of the Senior Pre-Petition Lender or the Second Lien Pre-Petition Lender; (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Lender, the Senior Pre-Petition Lender, the Second Lien Pre-Petition Lender, their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof), including (A) any challenges raised during the Challenge Period and any Avoidance Actions or other actions

35

arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations, the obligations under the Senior Pre-Petition Credit Documents and/or the obligations under the Sandstorm Documents, or the validity, extent, and priority of the DIP Liens, the Waterton Pre-Petition Liens, the Sandstorm Pre-Petition Liens, or the Adequate Protection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Waterton Pre-Petition Liens, the Sandstorm Pre-Petition Liens, the Adequate Protection Liens, or the other Pre-Petition Adequate Protection; (D) any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Lender's, the Senior Pre-Petition Lender's or the Second Lien Pre-Petition Lender's assertion, enforcement, or realization on the Cash Collateral, the DIP Collateral, the Waterton Pre-Petition Collateral or the Sandstorm Pre-Petition Collateral in accordance with the DIP Loan Documents, the Senior Pre-Petition Credit Documents or the Sandstorm Documents, as applicable, or this Interim Order; and/or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Lender, the Senior Pre-Petition Lender or the Second Lien Pre-Petition Lender hereunder or under the DIP Loan Documents, the Senior Pre-Petition Credit Documents or the Sandstorm Documents, as applicable, or any payments made thereunder or in respect thereof; provided, however, up to $10,000 in the aggregate of the Carve-Out, any DIP Collateral, any Waterton Pre-Petition Collateral, any Sandstorm Pre-Petition Collateral, any Cash Collateral and proceeds of the DIP Facility may be used by the Committee (to the extent such Committee is appointed) to investigate (but not to prosecute) the claims and/or liens of the Senior Pre-Petition Lender or the Second Lien Pre-Petition Lender under the Senior Pre-Petition Credit Documents or the Sandstorm Documents (but, excluding the Roll Up Loans, not the

36

claims and/or Liens of the DIP Lender) so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, Waterton Pre-Petition Collateral or Sandstorm Pre-Petition Collateral, unless otherwise permitted hereby, without the prior written consent of the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender.

16.     **Proofs of Claim**.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender will not be required (but are authorized) to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.

17.     **Preservation of Rights Granted Under the Interim Order**.

(a)     <u>No Non-Consensual Modification or Extension of Interim Order</u>.  The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Interim Order (including through any chapter 11 plan of reorganization) without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender.  In the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash

37

authorized or made hereby or pursuant to the DIP Loan Documents, or lien, claim, priority or other DIP Protections authorized or created hereby or pursuant to the DIP Loan Documents. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or any DIP Protections (including the Pre-Petition Adequate Protection) incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur, or stay shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the original provisions of this Interim Order (and shall maintain their respective priorities as provided by this Interim Order), and the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender shall be entitled to all of the DIP Protections (including the Pre-Petition Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted pursuant to section 364(e) of the Bankruptcy Code, this Interim Order, or the DIP Loan Documents.

(b)    Survival of Interim Order. The provisions of this Interim Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections (including the Pre-Petition Adequate Protection), and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Lender, the Senior Pre-Petition Lender or the Second Lien Pre-Petition Lender, respectively, shall survive, and shall not

38

be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Chapter 11 Case or Successor Case, converting any Chapter 11 Case to a case under chapter 7, dismissing any of the Chapter 11 Cases, withdrawing of the reference of any of the Chapter 11 Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases or any Successor Case in this Court, or terminating the joint administration of these Chapter 11 Cases or any Successor Case or by any other act or omission. The terms and provisions of this Interim Order, including all of the DIP Protections (including the Pre-Petition Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender, respectively, shall continue in full force and effect and be binding on all parties in interest notwithstanding the entry of any such order, and such DIP Protections (including the Pre-Petition Adequate Protection), and such other rights, remedies, Liens priorities, privileges, protections and benefits, shall continue in full force and effect in these Chapter 11 Cases and in any Successor Cases and after dismissal of any thereof, and shall maintain their respective priorities as provided by this Interim Order. The DIP Obligations shall not be discharged by the entry of an order confirming any chapter 11 plan of reorganization, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

18. **Insurance Policies**. Upon entry of this Interim Order, the DIP Lender and the Senior Pre-Petition Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral, and the Debtors shall

take such actions as are reasonably requested by the DIP Lender or the Senior Pre-Petition Lender from time to time to evidence or effectuate the foregoing.

19.   **Other Rights and Obligations**.

(a)   Expenses.  As provided in the DIP Loan Documents (and without limiting the Debtors' respective obligations thereunder), the applicable Debtors will pay all reasonable expenses incurred by the DIP Lender (including the reasonable fees and disbursements of the DIP Lender's professionals, including professionals engaged by counsel to the DIP Lender) in connection with the preparation, execution, delivery, and administration of the DIP Loan Documents, this Interim Order, the Final Order, and any other agreements, instruments, pleadings, or other documents prepared or reviewed in connection with any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated.

(b)   Binding Effect.  The provisions of this Interim Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 Case or Successor Case, including the DIP Lender, the Senior Pre-Petition Lender, the Second Lien Pre-Petition Lender, any Committee, and the Debtors and their respective estates, successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors); provided, however, that the DIP Lender, the Senior Pre-Petition Lender and the Second Lien Pre-Petition Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any

40

chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Chapter 11 Case or Successor Case.

(c)    No Waiver.  The failure of the DIP Lender or the Senior Pre-Petition Lender to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Senior Pre-Petition Credit Documents, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the DIP Lender and the Senior Pre-Petition Lender under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of these Chapter 11 Cases or any Successor Cases to cases under chapter 7, dismissal of these Chapter 11 Cases or any Successor Cases, or the appointment of a trustee or examiner in these Chapter 11 Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Senior Pre-Petition Lender.

(d)    No Third Party Rights.  Except as explicitly provided for herein or in any DIP Loan Document, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or  direct, indirect, or incidental beneficiary.

(e)    Amendments.  The Debtors and the DIP Lender are authorized and empowered, without further notice and hearing or approval of this Court, to make any non-material

modifications to the DIP Loan Documents, in accordance with Section 12.1 of the DIP Credit Agreement.

(f)    Inconsistency.   In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(g)    Enforceability.   This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(h)    Reservation of Rights.   Nothing in this Interim Order shall be deemed to constitute the consent of the DIP Lender or the Senior Pre-Petition Lender, and each of the foregoing expressly reserve the right to object, to entry of any order of the Bankruptcy Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to pay in full the DIP Obligations, the Senior Pre-Petition Indebtedness and the Senior Adequate Protection Priority Claims and all of the foregoing are paid in full on the closing date of such sale.

(i)    Headings.   Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

42

20.    **Final Hearing**

(a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for September 24, 2015, at 11:30 A.M. (ET) at the United States Bankruptcy Court for the District of Delaware.  The proposed Final Order shall be substantially the same as the Interim Order except that (i) those provisions in the Interim Order that are subject to the entry of the Final Order shall be included in the Final Order without such qualification, and (ii) where appropriate, references to this Interim Order shall be changed to references to the Final Order.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)    Final Hearing Notice.  On or before August 31, 2015, the Debtors shall serve, by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing), (i) notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice") and (ii) a copy of this Interim Order on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court **by no later than** ~~August 24~~ Sept 17, **2015 at 4:00 p.m. (ET)**, which objections shall be served so that the same are **actually received on or before such date** by: the Debtors, counsel to the DIP Lender, counsel to the Senior Pre-Petition Lender and the U.S. Trustee.

21.   **Retention of Jurisdiction**.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated:  August 21, 2015
        Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge

44