## <u>EXHIBIT A</u>

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Santa Fe Gold Corp. *et al.*[1] | Case No. 15-11761 (MFW) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. __** |

**ORDER (I) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE PURCHASE AGREEMENT FOR THE SALE OF THE DEBTORS' PROPERTIES AND RELATED ASSETS; (II) APPROVING BIDDING PROCEDURES AND EXPENSE REIMBURSEMENT; (III) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OF ASSETS; (IV) APPROVING FORM AND MANNER OF NOTICE OF SALE; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***") of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), as supplemented by Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for the entry of orders approving, among other things, the sale (the "***Sale***") of the Debtors' properties and related assets, and related bidding procedures (the "***Bidding Procedures***")[2], which are attached hereto as Schedule 1, and certain protections for the Stalking Horse Bidder (as defined below) of such assets; and this Court having determined that the relief provided herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A). The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures.

circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

      A.      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when applicable. *See* Bankruptcy Rule 7052.

      B.      This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. The matters are core proceedings under 28 U.S.C. § 157(b)(2). Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Venue in this district and before this Court was proper as of the Petition Date and continues to be proper.

      C.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.

      D.      The notice procedures set forth herein are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the Sale of the Debtors' properties and related assets (as more fully described in the Stalking Horse Purchase Agreement, the "***Acquired Assets***") pursuant to the Stalking Horse Purchase Agreement (as defined below), (ii) the Bidding Procedures to be employed in connection with the Auction, (iii) the Auction, and (iv) the Sale Hearing.

      E.      Good and sufficient business reasons exist for this Court to authorize the Debtors to enter into that certain Asset Purchase Agreement (the "***Stalking Horse Purchase***

ACTIVE 209443107v.5

*Agreement*"), by and among each of the Debtors, as Sellers, and Waterton Global Value, L.P. (or one of its affiliates) or its designee, as Buyer (the "***Stalking Horse Bidder***"), substantially in the form appended to the Motion as Exhibit B.

      F.      Good and sufficient business reasons exist for this Court to approve (i) the Bidding Procedures substantially in the form attached hereto as <u>Schedule 1</u>, (ii) the payment to the Stalking Horse Bidder of the Expense Reimbursement (as defined in the Stalking Horse Purchase Agreement), in accordance with the terms of the Stalking Horse Purchase Agreement and this Order; (iii) the scheduling of the Bid Deadline, the Auction, and the Sale Hearing with respect to the proposed Sale; and (iv) the establishment of procedures to fix cure amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment, and/or transfer of the Assigned Contracts and Assigned Leases (as defined below) to the Successful Bidder.

      G.      The terms of the Stalking Horse Purchase Agreement, including those provisions relating to the Expense Reimbursement and the circumstances requiring payment thereof, and the Bidding Procedures were negotiated in good faith and at arm's length.

      H.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

      I.      The Debtors have demonstrated that the Expense Reimbursement is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Stalking Horse Bidder.

ACTIVE 209443107v.5

J.      The Notice of Auction and Sale Hearing (as defined below) is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction, if any; (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the Sale Objection Deadline (as defined below) and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets; (v) instructions for promptly obtaining a copy of the Stalking Horse Purchase Agreement; (vi) representations describing the Sale as being free and clear of any and all liens, claims, interests, and other encumbrances other than the Assumed Liabilities, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (viii) notice of the proposed assumption and assignment of certain contracts and leases to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder at the conclusion of the Auction, if any), the proposed Cure Amounts (as defined below) relating thereto, and the procedures and deadlines for objecting thereto, and no further notice of the Sale shall be required.

K.      The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or to the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

4

3.      The Debtors' entry into the Stalking Horse Purchase Agreement is hereby approved.

4.      The Stalking Horse Bidder shall constitute a Qualified Bidder and the Stalking Horse Purchase Agreement shall constitute a Qualified Bid for all purposes and in all respects under the Bidding Procedures.

5.      The Bidding Procedures, substantially in the form attached hereto as <u>Schedule 1</u>, are incorporated herein, are approved and shall apply with respect to the Sale of the Acquired Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

6.      ***Bid Deadline***.  As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "***Bid Deadline***") is December 10, 2015 at 5:00 p.m. (prevailing Eastern Time).  No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures.

7.      ***Auction***.  The Debtors may sell the Acquired Assets by conducting the Auction in accordance with the Bidding Procedures.  If the Debtors timely receive one or more Qualified Bids (other than the bid of the Stalking Horse Bidder) in accordance with the Bidding Procedures, then the Auction shall take place on December 15, 2015, at 10:00 a.m. (prevailing Eastern Time) at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other location as the Debtors may hereafter designate (with notice of such alternate location given to all Qualified Bidders under the Bidding Procedures).  Each Qualified Bidder participating at the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

5

8.       If no other Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), then the Auction shall not be held, and the Debtors shall promptly seek this Court's approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Purchase Agreement.

9.       On the same date that the Debtors determine the Successful Bid, the Debtors shall file on this Court's docket in these Chapter 11 Cases a notice disclosing the identity of the Successful Bidder, and, if the Debtors deem there to be one, the identity of the Back Up Bidder (the "***Successful Bidder Notice***").

10.      ***Sale Hearing***.  The Sale Hearing shall be held on December 18, 2015, at 11:30 a.m. (prevailing Eastern Time) before the Honorable Mary F. Walrath, United States Bankruptcy Judge for the District of Delaware, at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801.  At the Sale Hearing, the Debtors shall seek the entry of an order of this Court approving and authorizing the Sale to the Successful Bidder.  Any obligations of the Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Purchase Agreement are authorized as set forth herein and shall be fully enforceable as of the date of entry of this Order.  The Sale Hearing (or any portion thereof) may be adjourned by this Court or by the Debtors (after consultation with the Stalking Horse Bidder) from time to time without further notice other than by announcement in open court or through the filing of a notice on this Court's docket.

11.      ***Sale Objection Deadline***.  The deadline to object to the remaining relief requested in the Motion, including the entry of the proposed Sale Order, is December 11, 2015, at 4:00 p.m. (prevailing Eastern Time) (the "***Sale Objection Deadline***").  Objections, if any, *must*: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local

ACTIVE 209443107v.5

Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so as to be *actually received* no later than the Sale Objection Deadline by the following parties (collectively, the "***Notice Parties***"): (a) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Kenneth J. Enos, Esq.); (b) co-counsel to the Stalking Horse Bidder, (i) Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603 (Attn: Jessica C.K. Boelter, Esq.) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq.); and (c) co-counsel to the Committee, (i) Squire Patton Boggs (US) LLC, 30 Rockefeller Plaza, 23rd Floor, New York, New York 10112 (Attn: Norman N. Kinel, Esq.) and (ii) Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn: Christopher A. Ward, Esq.).

12.     No later than three (3) business days after entry of this Order, the Debtors shall cause a notice substantially in the form attached hereto as Schedule 2 (the "***Notice of Auction and Sale Hearing***") and a copy of this Order to be sent by first-class mail postage prepaid, to the following persons or entities: (a) all entities that assert any lien, claim or interest in the Acquired Assets; (b) all parties to the Executory Contracts and Unexpired Leases (as defined below); (c) all governmental taxing authorities that have or as a result of the Sale of the Acquired Assets may have claims, contingent or otherwise, against the Debtors; (d) all state and local taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (e) all state and local governmental agencies and environmental agencies in any jurisdiction where the Debtors own or have owned or used real property; (f) the Environmental Protection Agency; (g) all parties that filed requests for notices under Bankruptcy Rule 9010(b)

or were entitled to notice under Bankruptcy Rule 2002; (h) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (i) all interested governmental, pension, environmental and other regulatory entities; (j) the Office of the Attorney General of New Mexico; (k) the Office of the Attorney General of Delaware; (l) the Office of the Attorney General of Arizona; (m) any other applicable state attorneys general; (n) the Office of the United States Trustee for the District of Delaware; (o) the United States Department of Justice; (p) all entities that, within the eighteen months prior to the Petition Date, expressed to the Debtors an interest in purchasing all or a substantial portion of the Acquired Assets; (q) counsel to the Stalking Horse Bidder and all other notice parties requested by the Stalking Horse Bidder.  In addition to the foregoing, (i) electronic notification of the Motion, this Order, and the Notice of Auction and Sale Hearing will also be posted on (A) this Court's website, http://www.deb.uscourts.gov and (B) the case website maintained by the Debtors' claims and noticing agent, American Legal Claim Services, LLC ; and (ii) no later than three (3) business days after entry of this Order, the Debtors will, subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing in *The Wall Street Journal (National Edition)*, and *The Mining Journal*.  **Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto**.

13.     No later than three (3) business days after entry of this Order (the "***Cure Notice Deadline***"), the Debtors shall serve by first-class mail postage prepaid, a notice of potential assumption, assignment, and/or transfer of the executory contracts and unexpired leases to which any Debtor is a party (collectively, the "***Executory Contracts and Unexpired Leases***"),

substantially in the form attached hereto as Schedule 3 (the "***Notice of Potential Assumption and Assignment***"), on all non-Debtor parties to the Executory Contracts and Unexpired Leases.  The Notice of Potential Assumption and Assignment shall include the cure amounts (the "***Cure Amounts***") that the Debtors believe must be paid to cure all defaults outstanding under the Executory Contracts and Unexpired Leases as of such date.

14.    Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection to (a) its Cure Amount and/or (b) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights or benefits thereunder) to the Stalking Horse Bidder or to any other Successful Bidder, as applicable (each such objection, a "***Cure Amount/Assignment Objection***"), by November 23, 2015, at 4:00 p.m. (prevailing Eastern Time) or, to the extent that the Stalking Horse Bidder is not the Successful Bidder, but solely with respect to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights or benefits thereunder) to the Successful Bidder, by the Sale Hearing (the ***Cure Amount/Assignment Objection Deadline***")  and serves a copy of the Cure Amount/Assignment Objection so as to be *actually received* by the Notice Parties by no later than the Cure Amount/Assignment Objection Deadline, such non-Debtor party shall (x) be forever barred from objecting to the Cure Amount and from asserting against the Debtors or the Stalking Horse Bidder (or any other Successful Bidder) any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease in the event that such Executory Contract or Unexpired Lease is ultimately assumed and/or assigned by the Debtors, and the Debtors and the Stalking Horse Bidder (or any other Successful Bidder) shall be entitled to rely solely upon the Cure Amount, and (y) be deemed to have consented to the assumption, assignment and/or transfer of such Executory

9

Contract or Unexpired Lease (including the transfer of any rights and benefits thereunder) to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied under such Executory Contract or Unexpired Lease, or that any right or benefit under such Executory Contract or Unexpired Lease cannot or will not be available to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease.  All Cure Amount/Assignment Objections with respect to the Notice of Potential Assumption and Assignment served on or before the Cure Notice Deadline shall be heard at the Sale Hearing unless the Debtors, in consultation with the Stalking Horse Bidder or any other Successful Bidder, agree otherwise or this Court orders otherwise.  With respect to any party that has timely filed a Cure Amount/Assignment Objection in accordance with this Order, nothing in this Order and/or the Notice of Potential Assumption and Assignment shall (i) operate to waive or impair any rights, claims, or defenses of any non-Debtor party to any Executory Contract or Unexpired Lease or (ii) be deemed to be a determination, finding, or adjudication that any Executory Contract or Unexpired Lease, or any rights or benefits thereunder, are or may be assumed, assigned, transferred, delegated, or otherwise made available for the benefit of any entity, pursuant to section 365 of the Bankruptcy Code or otherwise, without the consent of the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

ACTIVE 209443107v.5

15.    Within one (1) business day after the conclusion of the Auction, if any, the Debtors shall serve the Successful Bidder Notice on all parties that received service of the Notice of Potential Assumption and Assignment, which notice shall be faxed, emailed or (if neither available) sent by overnight mail to all parties to Executory Contracts or Unexpired Leases.

16.    No later than five (5) calendar days prior to the Closing (as defined in the Stalking Horse Purchase Agreement) (the "*Assignment Notice Deadline*"), the Debtors shall serve a notice, substantially in the form attached hereto as Schedule 4 (the "*Assignment Notice*"), identifying the Executory Contracts and Unexpired Leases that will be assumed and assigned to the Successful Bidder as of the Closing (collectively, the "*Assigned Contracts and Assigned Leases*").

17.    The Successful Bidder may determine to exclude any Executory Contract or Unexpired Lease (each an "*Excluded Contract*") from the list of Acquired Assets in accordance with the applicable asset purchase agreement.  The Debtors shall notify the non-Debtor party or parties to any Excluded Contract of such exclusion by written notice as soon as practicable after such determination, which may be after the Sale Hearing.

18.    The Notice of the Auction and Sale Hearing, the Notice of Potential Assumption and Assignment, and the Assignment Notice, substantially in the forms attached hereto as Schedule 2, Schedule 3, and Schedule 4, respectively, are hereby approved.

19.    The Sale Hearing may be adjourned, from time to time, in accordance with the Bidding Procedures and without further notice to creditors or other parties in interest other than by announcement in open court or through the filing of a notice on this Court's docket.

20.    Pursuant to section 363(k) of the Bankruptcy Code, the Stalking Horse Bidder has the right (but not the obligation) to credit bid any and all amounts due and owing to it under the

11

DIP Facility[3] plus any unpaid amounts of the Senior Prepetition Indebtedness[4] due and owing to the Stalking Horse Bidder (or its affiliates) as of the Bid Deadline, *provided, however,* that such right shall be subject to a successful challenge brought pursuant to Paragraph [8] of the Final Order (i) Authorizing Debtors to Obtain Post-Petition Financing, (ii) Authorizing the Use of Cash Collateral, (iii) Granting Liens, Including Priming Liens, and Superpriority Claims, (iv) Granting Adequate Protection, and (v) Granting Related Relief (the "***Final DIP Order***") that results in a final, non-appealable order restricting the Stalking Horse Bidder's right to credit bid the Senior Pre-Petition Indebtedness. In addition, the Stalking Horse Bidder shall be entitled to a dollar-for-dollar credit for the Expense Reimbursement for any Subsequent Bid submitted by the Stalking Horse Purchaser. To the extent that a successful challenge brought subject to Paragraph [8] of the Final DIP Order results in a final, non-appealable order restricting the Stalking Horse Bidder's right to credit bid the Senior Pre-Petition Indebtedness, the Stalking Horse Bidder shall have the right (but not the obligation) to credit bid any and all amounts due and owing to it under the DIP Facility plus any unpaid amounts of the Senior Pre-Petition Indebtedness due and owing

---

[3] The "***DIP Facility***" means the post-petition financing with Waterton Global Value, L.P., by its investment manager, Altitude Management Limited, as lender (the "***DIP Lender***") under (i) that certain *Debtor-In Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "***DIP Credit Agreement***"), by and among the DIP Lender, Santa Fe Gold Corporation (the "***Borrower***"), and each of the other Debtors (collectively, the "***Guarantors***"), and (ii) any and all other Credit Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "***DIP Loan Documents***").

[4] "***Senior Pre-Petition Indebtedness***" means all obligations arising under (i) that certain *Senior Secured Gold Stream Credit Agreement*, dated December 23, 2011 between the Debtors and Waterton Global Value, L.P. in its capacity as provider of the Senior Pre-Petition Indebtedness (as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "***Pre-Petition Credit Agreement***", and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Credit Documents" as defined in the Pre-Petition Credit Agreement, each as may be amended, restated, supplemented or otherwise modified from time to time, the "***Pre-Petition Credit Agreement Documents***")), and (ii) that certain *Gold and Silver Supply Agreement* entered into between certain of the Debtors and Waterton Global Value, L.P. in its capacity as provider of the Senior Pre-Petition Indebtedness (the "***Pre-Petition Gold Supply Agreement***" and collectively with any other agreements and documents executed or delivered in connection therewith (each as may be amended, restated, supplemented, or otherwise modified from time to time, the "***Pre-Petition Gold Supply Agreement Documents***" and, collectively with the Pre-Petition Credit Agreement Documents, the "***Senior Pre-Petition Credit Documents***").

to the Stalking Horse Bidder (or its affiliates) as of the Bid Deadline that are not subject to such an order.

21.     The Expense Reimbursement, as set forth in the Stalking Horse Purchase Agreement, is hereby approved, and the Debtors are authorized and directed to promptly pay, as they become due, any amounts owed to the Stalking Horse Bidder on account of such Expense Reimbursement in accordance with the Stalking Horse Purchase Agreement. The obligations of the Debtors to pay the Expense Reimbursement (i) shall constitute administrative expense claims against each of the Selling Debtors' estates, (ii) shall be entitled to administrative expense priority status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (iii) shall survive the termination of the Stalking Horse Purchase Agreement; and (iv) shall be paid by the Debtors to the Stalking Horse Bidder in cash upon certain terminations of the Stalking Horse Purchase Agreement as set forth in Section 6.9(a) thereof. No subsequent order of the Court may modify the requirement that such Expense Reimbursement be paid pursuant to the terms of this Order.

22.     Except as otherwise provided in the Stalking Horse Purchase Agreement, the Bidding Procedures, or this Order, the Debtors reserve their rights as they may reasonably determine to be in the best interests of their estates, subject to consultation with the Committee, to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best offer for the Acquired Assets and which Qualified Bid is the second-highest and best offer; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth in the Bidding Procedures with respect

13

to all Potential Bidders (after consultation with the Stalking Horse Bidder); (f) impose additional terms and conditions with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (g) extend the deadlines set forth in the Bidding Procedures (after consultation with the Stalking Horse Bidder); (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; *provided*, *however*, that notwithstanding the foregoing, without the consent of the Stalking Horse Bidder, the Debtors may not (1) withdraw the Motion, (2) adjourn or cancel the Sale Hearing, (3) waive any conditions to a bidder being a Qualified Bidder or a bid being a Qualified Bid as set forth in the Bidding Procedures; (4) remove any of the Acquired Assets from the Auction; (5) extend the time period within which the Debtors are required to file the Successful Bidder Notice; or (6) modify the Bidding Procedures' requirements (A) that any bid be a bulk bid to purchase all of the Acquired Assets, (B) to change the amount of the Deposit, (C) waive or modify any of the provisions in the Credit Bidding section of the Bidding Procedures, or (D) to impair or modify the Stalking Horse Bidder's rights and obligations under the Bidding Procedures or the Stalking Horse Purchase Agreement, including, without limitation, the Stalking Horse Bidder's rights with respect to the timing of the Auction and the Sale Hearing or the Stalking Horse Bidder's right to receive a "credit" in the amount of its Expense Reimbursement toward any Subsequent Bid at the Auction; provided, further, however, that all rights of all parties in interest to object to, or otherwise challenge the decisions of the Debtors with respect to the Bidding Process are hereby reserved.

14

23.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) and the requirements of Local Rule 6004-1(c)(2) are hereby waived, and this Order shall be effective immediately upon its entry.

24.     This Court shall retain jurisdiction over any matters related to or arising from the interpretation or implementation of this Order.


Dated: _____, 2015
        Wilmington, Delaware

                                          _____
                                          The Honorable Mary F. Walrath
                                          United States Bankruptcy Judge

ACTIVE 209443107v.5

## **SCHEDULE 1**

BIDDING PROCEDURES

## BIDDING PROCEDURES

On August 26, 2015 (the "***Petition Date***"), Santa Fe Gold Corp. and its affiliated debtors and debtors in possession (collectively, the "***Debtors***") each filed voluntary petitions for relief under title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***").  By a motion dated September 25, 2015 (the "***Motion***"), the Debtors sought, among other things, approval of the procedures related to the proposed sale of the Acquired Assets (as defined in the Stalking Horse Purchase Agreement (as defined below)).  On [    ], 2015, the Bankruptcy Court entered an order (the "***Bidding Procedures Order***") authorizing the Debtors to market the Debtors' properties and related assets (the "***Acquired Assets***") through, among other means, the bidding procedures described below (these "***Bidding Procedures***").   As part of the Bidding Procedures, the Bankruptcy Court has scheduled a hearing to consider approval of the sale of the Acquired Assets to the Successful Bidder (as defined below), to be conducted on December 18, 2015 at 11:30 a.m. (prevailing Eastern Time), at the Bankruptcy Court before the Honorable Mary F. Walrath (the "***Sale Hearing***").   Please note that all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Stalking Horse Purchase Agreement.

### I.    Stalking Horse Bid

The Debtors, as Sellers, have executed an Asset Purchase Agreement (collectively with all ancillary documents and agreements, the "***Stalking Horse Purchase Agreement***") with Waterton Global Value, L.P. (or one of its affiliates) or its designee, as Buyer (the "***Stalking Horse Bidder***"), dated as of [_____], 2015,  which provides for the sale of the Acquired Assets to the Stalking Horse Bidder in consideration for the Purchase Price (as defined in the Stalking Horse Purchase Agreement), and the assumption of the Assumed Liabilities, all in accordance with the terms of and subject to the conditions set forth in the Stalking Horse Purchase Agreement (collectively, the "***Sale Transaction***").

### II.    Important Dates for Potential Competing Bidders

These Bidding Procedures provide an opportunity for interested parties to qualify to participate in the Auction (as defined below) and to submit competing bids for the Acquired Assets.  The Debtors shall:

(a)    accept bids until 5:00 p.m. (prevailing Eastern Time) on December 10, 2015 (the "***Bid Deadline***"); and

(b)    assist Potential Bidders (as defined below) in conducting their respective due diligence investigations until the Bid Deadline and, on December 15, 2015, conduct an auction (the "***Auction***") among Qualified Bidders, provided that the Debtors receive more than one Qualified Bid (as defined below), to identify the Successful Bid (each as defined below).

III.    **Assets to Be Sold**

The Debtors seek to sell the "Acquired Assets" as set forth in Section 2.1 of the Stalking Horse Purchase Agreement, to the maximum extent permitted by section 363 of the Bankruptcy Code, including such Assigned Contracts and Assigned Leases (as such terms are defined in the Bidding Procedures Order), free and clear of any and all Claims (as defined below) but subject to certain conditions and except for Permitted Liens and Assumed Liabilities (as such terms are defined in the Stalking Horse Purchase Agreement).

IV.    **The Bidding Process**

The Debtors shall: (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations with respect to the Acquired Assets; (b) determine, upon consultation with the statutorily-appointed committee of unsecured creditors (the "***Committee***"), whether any person or entity is a Qualified Bidder; (c) receive and evaluate bids from Qualified Bidders; and (d) administer the Auction.  The foregoing activities are collectively referred to as the "***Bidding Process***."   Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or legal counsel or financial advisor to a Potential Bidder), and the Debtors and their representatives shall use good faith efforts to provide substantially similar access and information to all Potential Bidders.

Any person or entity that wishes to participate in the Bidding Process must meet the participation requirements for Potential Bidders set forth below and must timely submit a Qualified Bid in order to become a Qualified Bidder that can participate in the Auction.

V.    **Participation Requirements**

To participate in the Bidding Process, each interested person or entity must deliver the following documents (collectively, the "***Participation Materials***") to the parties set forth below at least five (5) calendar days before the Bid Deadline:

(a)    an executed confidentiality agreement in form and substance satisfactory to the Debtors;

(b)    a statement demonstrating to the Debtors' satisfaction a *bona fide* interest in purchasing the Acquired Assets from the Debtors;

(c)    current audited financial statements of (i) the Potential Bidder, or, (ii) if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, current audited financial statements of the equity holder(s) of the Potential Bidder, which equity holder(s) shall either guarantee the obligations of the Potential Bidder or provide such other form of credit-quality support enhancement reasonably acceptable to the Debtors;

(d)    written evidence of the Potential Bidder's commitment for debt or equity funding that is needed to close the contemplated transaction acceptable to the Debtors, which written evidence shall demonstrate that such Potential Bidder has the

ability to close the contemplated transaction; *provided*, *however*, that the Debtors shall determine in their discretion and in consultation with their advisors and the Committee whether the written evidence of such financial wherewithal is acceptable; and

(e)     information that can be publicly filed and/or disseminated representing that the Potential Bidder has the financial wherewithal to satisfy adequate assurance requirements of the Bankruptcy Code with respect to the Assigned Contracts and the Assigned Leases, which information may be required to be supplemented at the request of the Debtors or other parties in interest.

The Stalking Horse Bidder is deemed to be a Potential Bidder and Qualified Bidder and shall not be required to provide the Participation Materials, other than what has been previously been provided to the Debtors.

The Participation Materials must be transmitted to (a) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington Delaware 19801 (Attn: Kenneth J. Enos, Esq.); (b) financial advisors to the Debtors, Canaccord Genuity Inc., 350 Madison Ave., New York, NY 10017 (Attn: Geoffrey A. Richards); and (c) co-counsel to the Committee, (i) Squire Patton Boggs (US) LLC, 30 Rockefeller Plaza, 23rd Floor, New York, New York 10112 (Attn: Norman N. Kinel, Esq.) and (ii) Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn: Christopher A. Ward, Esq.).

Any party that timely delivers the Participation Materials to counsel to the Debtors and the financial advisors to the Debtors, and counsel to the Committee, shall be a "***Potential Bidder***," and by timely delivering the Participation Materials to such parties each Potential Bidder acknowledges that its identity shall be made public, including in the Debtors' filings with the Bankruptcy Court.  If the Debtors determine, upon consultation with the Committee, that a Potential Bidder has a *bona fide* interest in acquiring the Acquired Assets, then the Debtors shall, promptly after such determination, (a) deliver to the Potential Bidder an electronic copy of the Stalking Horse Purchase Agreement, (b) provide access information for a confidential electronic data room concerning the Acquired Assets (the "***Data Room***"), and (c) notify counsel to the Stalking Horse Bidder of the identity of such Potential Bidder.

No Potential Bidder shall consult with any other Potential Bidder following delivery of the Participation Materials and before the conclusion of the Auction, or submit at any time a "joint bid" with any other Potential Bidder, without the written consent of the Debtors.

## VI.    <u>Due Diligence</u>

Until the Bid Deadline, the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors determine in their discretion to be reasonable and appropriate under the circumstances. All due diligence requests shall be directed to the financial advisors to the Debtors, as indicated above.  The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  If the Debtors determine that due diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such

material has not previously been provided to any other Potential Bidder or to the Stalking Horse Bidder, then the Debtors shall post such materials in the Data Room and provide e-mail notice of such posting to all Potential Bidders and to the Stalking Horse Bidder.

Except as provided above with respect to the copy of the Stalking Horse Purchase Agreement provided by the Debtors to the Potential Bidders, and information in the Data Room, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets or to any party.

## VII.    <u>Bid Deadline</u>

A Potential Bidder that desires to submit a bid for the Acquired Assets shall deliver written and electronic copies of its bid to each of the following parties (collectively, the "***Notice Parties***") so as to be received not later than the Bid Deadline: (a) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington Delaware 19801 (Attn: Kenneth J. Enos, Esq.); (b) co-counsel to the Stalking Horse Bidder, (i) Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603 (Attn: Jessica C.K. Boelter, Esq.) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq.); (c) financial advisors to the Debtors, Canaccord Genuity Inc., 350 Madison Ave., New York, NY 10017 (Attn: Geoffrey A. Richards); and (d) co-counsel to the Committee, (i) Squire Patton Boggs (US) LLC, 30 Rockefeller Plaza, 23rd Floor, New York, New York 10112 (Attn: Norman N. Kinel, Esq.) and (ii) Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn: Christopher A. Ward, Esq.).

Any bids submitted by a Potential Bidder must comply with the requirements set forth below.

## VIII.    <u>Bid Requirements</u>

To participate in the Auction, if any, a bidder must deliver to the Notice Parties a written offer, which, to be deemed a "Qualified Bid," must, at a minimum, provide for or otherwise comply with the following requirements:

(a)    The bid must be a bulk bid to purchase all of the assets constituting the Acquired Assets from the Debtors at the purchase price and upon the terms and conditions set forth in an executed purchase agreement, a clean copy of which shall be submitted, together with a marked copy showing any proposed changes to the Stalking Horse Purchase Agreement.

(b)    The bid must not be subject to any due diligence or financing contingency, must not be conditioned on any break-up fee, termination fee, or similar type of payment or any expense reimbursement, must not be subject to any corporate (board, shareholder, or similar) consent or approval, or any regulatory contingencies (other than a condition that any applicable waiting period required for any regulatory approval shall have expired or have been terminated and required authorization of any other governmental entity whose approval is identified in the bid as required for the transaction as set forth in such Potential

4

Bidder's bid shall have been obtained, and any other regulatory contingencies set forth in the Stalking Horse Purchase Agreement have been satisfied.  Any required governmental approvals identified in the bid may impact the evaluation of whether the bid is a Qualified Bid and shall be taken into account in the Debtors' determination of the highest and best bid for the Acquired Assets.  By submitting a bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or the Bidding Process.

(c)    The purchase price in such bid must be a higher and better offer for the Acquired Assets as compared to the offer of the Stalking Horse Bidder.  Such offer shall not be considered a Qualified Bid unless such bid provides for (i) cash consideration equal to the Purchase Price in the Stalking Horse Purchase Agreement, , <u>plus</u> (ii) an amount of cash equal to the Expense Reimbursement; <u>plus</u> (iii) an amount of cash equal to $250,000.

Without limiting the foregoing, any Qualified Bid must include cash consideration payable on the Closing Date in an aggregate amount sufficient to provide for, and earmarked for the purposes, of Full Payment[5] of any and all amounts due and owing under the DIP Facility[6] plus any unpaid amounts of the Senior Pre-petition Indebtedness[7] due and owing to the Stalking Horse Bidder (or its affiliates) as of the Bid Deadline, subject to any rights contained in Paragraph 8 of the Final Order (i) Authorizing Debtors to Obtain Post-Petition Financing,

---

[5] For the purposes of these Bidding Procedures, the term "***Full Payment***" means, as to the obligations described in this paragraph, full and final payment of such indebtedness in cash, the cash collateralization of any contingent obligations as and to the extent required by the applicable loan documents, termination of any commitments to lend under any of the applicable loan documents, and, in the case of the DIP Facility, termination of the DIP Facility.

[6] The "***DIP Facility***" means the post-petition financing with Waterton Global Value, L.P., by its investment manager, Altitude Management Limited, as lender (the "***DIP Lender***") under (i) that certain *Debtor-In Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "***DIP Credit Agreement***"), by and among the DIP Lender, Santa Fe Gold Corporation (the "***Borrower***"), and each of the other Debtors (collectively, the "***Guarantors***"), and (ii) any and all other Credit Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "***DIP Loan Documents***").

[7] "***Senior Pre-Petition Indebtedness***" means all obligations arising under (i) that certain *Senior Secured Gold Stream Credit Agreement*, dated December 23, 2011 between the Debtors and Waterton Global Value, L.P. in its capacity as provider of the Senior Pre-Petition Indebtedness, (as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "***Pre-Petition Credit Agreement***", and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Credit Documents" as defined in the Pre-Petition Credit Agreement, each as may be amended, restated, supplemented or otherwise modified from time to time, the "***Pre-Petition Credit Agreement Documents***"), and (ii) that certain *Gold and Silver Supply Agreement* entered into between certain of the Debtors and Waterton Global Value, L.P. in its capacity as provider of the Senior Pre-Petition Indebtedness (the "***Pre-Petition Gold Supply Agreement***" and collectively with any other agreements and documents executed or delivered in connection therewith (each as may be amended, restated, supplemented, or otherwise modified from time to time, the "***Pre-Petition Gold Supply Agreement Documents***" and, collectively with the Pre-Petition Credit Agreement Documents, the "***Senior Pre-Petition Credit Documents***").

(ii) Authorizing the Use of Cash Collateral, (iii) Granting Liens, Including Priming Liens, and Superpriority Claims, (iv) Granting Adequate Protection, and (v) Granting Related Relief (the "**Final DIP Order**") and Paragraph 20 of the Bidding Procedures Order.

(d)     The Debtors must receive the bid by the Bid Deadline.

(e)     The bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the purchase price of the bid (the "**Deposit**").

(f)     The bid must include a comprehensive list of all executory contracts and unexpired leases that the Potential Bidder seeks to take assignment of.

A Potential Bidder shall accompany its bid with each of the following: (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder, or such other evidence of ability to consummate the sale of the Acquired Assets as the Debtors may request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any pertinent factual information regarding the Potential Bidder's operations that would assist the Debtors in their analysis of issues arising with respect to any applicable antitrust laws, governmental regulatory approvals, national security laws, foreign investment laws, or other aspects of the bid and with respect to any conditions contained in the bid.

The Debtors will only consider a bid received from a Potential Bidder if it meets the requirements set forth above (with such variations as the Debtors shall permit in accordance with the terms of the Bidding Procedures Order and these Bidding Procedures), and shall constitute a "Qualified Bid" only if the Debtors believe in their discretion, and upon consultation with the Committee, that such bid would be consummated if selected as the Successful Bid. Each Potential Bidder that the Debtors determine, upon consultation with the Committee, to have submitted a Qualified Bid will be considered a "**Qualified Bidder**." For purposes hereof, the Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Purchase Agreement executed by the Stalking Horse Bidder is a Qualified Bid. A Qualified Bid will be valued by the Debtors based upon factors such as: (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' bankruptcy estates from any assumption of liabilities of the Debtors; (b) the fair value to be provided to the Debtors under the Qualified Bid; (c) the length of time expected to close the proposed purchase of the Acquired Assets; (d) the ability of the Potential Bidder to obtain all necessary antitrust, governmental, national security, foreign investment, or other regulatory approvals for the proposed purchase of the Acquired Assets; and (e) any other factors the Debtors may deem relevant. Within one (1) calendar day after the Debtors determine that a bid is a Qualified Bid, the Debtors shall distribute a copy of such bid to counsel to the Stalking Horse Bidder by e-mail, hand delivery, or overnight courier. The Debtors may reject any bid if, among other things, the Debtors determine such bid is on terms that are in their totality materially more burdensome or conditional than the terms of the Stalking Horse Purchase Agreement.

Any bid rejected pursuant to this Section VIII shall not be deemed to be a Qualified Bid. Only Qualified Bidders that have submitted Qualified Bids will be invited to participate in the Auction.

## IX.    The Auction

In the event that there is timely delivered one or more Qualified Bids (other than the bid of the Stalking Horse Bidder), the Debtors will hold the Auction on December 15, 2015, commencing at 10:00 a.m. (prevailing Eastern Time) at the offices of Young Conaway Stargatt & Taylor, LLC, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other location as the Debtors may hereafter designate (with notice of such alternate location given to all Qualified Bidders under the Bidding Procedures), for consideration of the Qualified Bids, each as may be increased at such Auction. Bidding will start at the amount of the highest Qualified Bid and will continue with minimum bid increments subject to the right (but not the obligation) of the Stalking Horse Bidder to credit bid all amounts due and owing to it under the DIP Facility and the Senior Pre-Petition Indebtedness and credit the amount of the Expense Reimbursement to its bid at each round of bidding. The Auction shall be conducted in accordance with the following procedures:

(a)    Only the Debtors and their representatives, the Committee and its representatives, the Stalking Horse Bidder and its representatives, the United States Trustee and its representatives, any other Qualified Bidder that has timely submitted a Qualified Bid, and creditors providing written notice of their intention to attend the Auction to Debtors' counsel at kenos@ycst.com on or before the Bid Deadline shall be permitted to attend the Auction in person, and only the Stalking Horse Bidder and other Qualified Bidders shall be entitled to make any Subsequent Bids (as defined below) at the Auction.

(b)    Each Qualified Bidder shall be required to confirm that it has not engaged in any impermissible collusion, including as set forth in Section V above and Section IX(f) below, with respect to the bidding on or the sale by the Debtors of the Acquired Assets.

(c)    At least one (1) Business Day (as defined in the Stalking Horse Purchase Agreement) prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; *provided*, *however*, that if a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back Up Bidder (each as defined below). Prior to the commencement of the Auction, the Debtors shall provide notice to the Stalking Horse Bidder and each other Qualified Bidder of (i) the Qualified Bid that the Debtors believe, in their reasonable business judgment, is the highest and best offer for the Acquired Assets (the "***Starting Bid***") and (ii) the identities of each other Qualified Bidder that has informed the Debtors of its intent to participate in the Auction.

(d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; *provided*, *however*, that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction.    All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

(e)    After consultation with the Stalking Horse Bidder and the Committee, the Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided*, *however*, that such rules are (i) not inconsistent with the Bankruptcy Code or any order of the Bankruptcy Court or any other applicable court entered in connection herewith, (ii) reasonably acceptable to the Stalking Horse Bidder and (iii) disclosed to each Qualified Bidder at the Auction.

(f)    The Debtors reserve their right, in their reasonable business judgment, to make one or more adjournments of the Auction to, among other things: (i) facilitate discussions between the Debtors and the Qualified Bidders, (ii) allow individual Qualified Bidders to determine how they wish to proceed, (iii) consider and determine the current highest and best Subsequent Bid at any given time during the Auction, (iv) afford Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder (other than the Stalking Horse Bidder) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Subsequent Bid amount.

(g)    No Qualified Bidder shall consult with any other Qualified Bidder prior to the conclusion of the Auction, or submit at any time a "joint bid" with any other Qualified Bidder, without the express consent of the Debtors.

(h)    Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (each a "***Subsequent Bid***") and (ii) the Debtors determine is (a) for the first round, a higher and better offer than the Starting Bid, and (b) for subsequent rounds, a higher and better offer than the Leading Bid (as defined below).    Each Subsequent Bid at the Auction shall provide net value to the Debtors' estates of at least $100,000 over the Starting Bid or the Leading Bid (as defined below), as the case may be, with respect to the Acquired Assets.    After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest and best offer (each a "***Leading Bid***").    A round of bidding will conclude after each participating

8

Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any Subsequent Bid (including any Subsequent Bid by the Stalking Horse Bidder), the Debtors will, upon consultation with the Committee, at each round of bidding, give effect to the Expense Reimbursement, the Stalking Horse's credit bid of the DIP Facility and Pre-Petition Indebtedness that may be payable to the Stalking Horse Bidder under the Stalking Horse Purchase Agreement or Subsequent Bid by the Stalking Horse and take into account any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors by such Qualified Bid in the Debtors' discretion.  The Debtors reserve their right to place time restrictions on each round of bidding at the Auction, or, upon the length of time that any Bidder has to submit a bid at the Auction.

## X.    Credit Bidding

Pursuant to section 363(k) of the Bankruptcy Code, the Stalking Horse Bidder has the right (but not the obligation) to credit bid any and all amounts due and owing to it under the DIP Facility plus any unpaid amounts of the Senior Prepetition Indebtedness due and owing to the Stalking Horse Bidder (or its affiliates) as of the Bid Deadline, *provided, however,* that such right shall be subject to a successful challenge brought pursuant to Paragraph [8] of the Final DIP Order that results in a final, non-appealable order restricting the Stalking Horse Bidder's right to credit bid the Senior Pre-Petition Indebtedness.  In addition, the Stalking Horse Bidder shall be entitled to a dollar-for-dollar credit for the Expense Reimbursement for any Subsequent Bid submitted by the Stalking Horse Purchaser.  To the extent that a successful challenge brought subject to Paragraph [8] of the Final DIP Order results in a final, non-appealable order restricting the Stalking Horse Bidder's right to credit bid the Senior Pre-Petition Indebtedness, the Stalking Horse Bidder shall have the right (but not the obligation) to credit bid any and all amounts due and owing to it under the DIP Facility plus any unpaid amounts of the Senior Pre-Petition Indebtedness due and owing to the Stalking Horse Bidder (or its affiliates) as of the Bid Deadline that are not subject to such an order.

Any and all bids, other than those submitted by or on behalf of the Stalking Horse Bidder or another Qualified Bidder holding secured claims against the Debtors (but only to the extent of such allowed secured claims), shall be in cash unless otherwise provided in these Bidding Procedures.

## XI.    The Successful Bid

Immediately at the conclusion of the Auction, the Debtors, upon consultation with the Committee, shall (a) determine, consistent with the Bidding Procedures, which bid constitutes the highest and best bid (such bid, the "***Successful Bid***" and the bidder making such bid, the "***Successful Bidder***") and (b) communicate to the Stalking Horse Bidder and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid.  At such time, the Debtors shall also determine which bid constitutes the second-highest and best bid, and may, in their discretion, deem such second-highest and best bid a back-up bid (such bid, the "***Back Up Bid***" and the party submitting the Back Up Bid, the "***Back Up Bidder***") and communicate to the

Stalking Horse Bidder and other Qualified Bidders the identity of the Back Up Bidder and the details of the Back Up Bid. Within one (1) Business Day of determining the Successful Bid, the Debtors shall file on the Bankruptcy Court's public docket a notice disclosing the identity of the Successful Bidder and the identity of the Back Up Bidder, if any (the "***Successful Bidder Notice***"). The Stalking Horse Bidder shall only serve as the Back Up Bidder with the consent of the Stalking Horse Bidder in its sole and absolute discretion; *provided, however,* that if the Stalking Horse Bidder submits a Subsequent Bid for the Acquired Assets, the Debtors may deem such Subsequent Bid the Back Up Bid and the Stalking Horse Bidder the Back Up Bidder; *provided, further, however,* that the Stalking Horse Bidder reserves the right to structure any Subsequent Bid to contain such terms or conditions as the Stalking Horse Bidder deems appropriate, and the Debtors reserve the right to evaluate such bid in accordance with the terms of the Bidding Procedures.

If no Qualified Bids are received for the Acquired Assets other than the Qualified Bid that is the subject of the Stalking Horse Purchase Agreement, then the Stalking Horse Purchase Agreement shall be designated as the Successful Bid, there shall be no Auction, and the Debtors shall seek approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the Stalking Horse Purchase Agreement at the Sale Hearing.

The determination of the Successful Bid and the Back Up Bid by the Debtors, upon consultation with the Committee, at the conclusion of the Auction shall be final, subject to approval by the Bankruptcy Court. If the Successful Bid is terminated or fails to close within the time period specified in the Successful Bid, the Debtors shall be authorized, but are not required, to consummate the Sale Transaction with the Back Up Bidder without further order of this Bankruptcy Court. The Back Up Bid shall remain open until the earlier of (x) the first Business Day following the consummation of the Sale Transaction and (y) the sixtieth (60th) calendar day after entry of the Sale Order; *provided, however,* that if the Stalking Horse Bidder consents to serve as the Back Up Bidder with respect to the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement shall control the time period during which the Back Up Bid will remain open. The Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared to be the Successful Bid at the Auction; (ii) definitive documentation has been executed in respect thereof; and (iii) the Bankruptcy Court has entered an order approving such Successful Bid.

EACH QUALIFIED BID SUBMITTED (OTHER THAN THE QUALIFIED BID THAT IS THE SUBJECT OF THE STALKING HORSE PURCHASE AGREEMENT, WHICH MAY BE TERMINATED IN ACCORDANCE WITH ITS TERMS) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING UPON THE APPLICABLE QUALIFIED BIDDER FROM THE TIME THE BID IS SUBMITTED UNTIL THE ENTRY OF THE SALE ORDER. THE BACK-UP BID SHALL BE IRREVOCABLE AND BINDING UPON THE BACK-UP BIDDER UNTIL THE EARLIER OF ONE (1) BUSINESS DAY AFTER THE CLOSING OF THE SALE OF THE ACQUIRED ASSETS OR SIXTY (60) DAYS AFTER THE SALE ORDER IS ENTERED. ALL QUALIFIED BIDDERS AT THE AUCTION SHALL BE DEEMED TO HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT AND WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE AUCTION AND THE CONSTRUCTION AND ENFORCEMENT OF ANY SALE TRANSACTION DOCUMENTS.

XII.    **The Sale Hearing**

The Successful Bid for the Acquired Assets will be presented to the Bankruptcy Court for approval at the Sale Hearing.  If no other Qualified Bid is received by the Debtors and the Stalking Horse Bidder's original Stalking Horse Purchase Agreement is the Successful Bid, then the Debtors will seek entry of an order at the Sale Hearing authorizing and approving the Sale Transaction (the "*Sale Order*"), including the sale of the Acquired Assets to the Stalking Horse Bidder, pursuant to the terms and conditions of the Stalking Horse Purchase Agreement.  If a different bid is the Successful Bid, then the Debtors anticipate that they will seek the entry of an order, modified as necessary to reflect the terms of the Successful Bid, authorizing and approving the sale of the Acquired Assets to the Successful Bidder.  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale, and parties shall be prepared to present their evidence in support of or in opposition to the proposed sale at the Sale Hearing; *provided*, *however*, that issues relating to the assumption and assignment of executory contracts and unexpired leases may be addressed at one or more separate hearings before the Bankruptcy Court.

XIII.    **"As Is Where Is"**

The Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents, or their estates, except for representations and warranties expressly set forth in the purchase agreement corresponding to the Successful Bid (none of which shall survive the closing of the Sale).  Except as otherwise provided in the Successful Bid or such other bid which may ultimately be consummated, all of the Debtors' right, title and interest in and to the Acquired Assets shall be sold free and clear all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests, and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including, without limitation, all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Acquired Assets, all as more specifically set forth and defined in the Motion and the proposed order approving the Sale Transaction (collectively, the "*Claims*"), and as set forth in the Stalking Horse Purchase Agreement and the Sale Order, with such Claims to attach to the net proceeds of the sale with the same validity and priority as such Claims applied against the Acquired Assets.  The Stalking Horse Bidder and each Qualified Bidder shall be deemed to acknowledge and represent that it had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its Qualified Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties (or omissions thereof) whatsoever, whether express, implied, by operation of law or otherwise regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction except as expressly stated in these Bidding Procedures, and (a) as to the Stalking Horse Bidder, the terms of the sale of the Acquired Assets set forth in the Stalking Horse Purchase Agreement, or (b) as to any other Successful Bidder, the terms of the sale of the Acquired Assets set forth in the applicable purchase agreement.  Notwithstanding the

foregoing, the Debtors reserve the right to contest the validity, nature, extent, or priority of and/or seek to set aside or avoid any and all Claims under applicable law.

## XIV.   **Return of Deposits**

The Deposit submitted by the Back Up Bidder will be held by the Debtors until forty-eight (48) hours after the Back Up Bid has been terminated in accordance with the Bidding Procedures.  As to all other bidders (except for the Successful Bidder), Deposits will be returned promptly after conclusion of the Sale Hearing.  If the Successful Bidder or the Back Up Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of the Successful Bidder or the Back Up Bidder, the Debtors shall be entitled to retain the Deposit in partial satisfaction of any damages resulting from the breach or failure to perform by the Successful Bidder or the Back Up Bidder, without prejudice to any other rights the Debtors may have.  The Debtors may credit the Deposit of the Successful Bidder or the Back Up Bidder toward the purchase price on the closing of the sale of the Acquired Assets.

## XV.   **Reservation of Rights**

Except as otherwise provided in the Stalking Horse Purchase Agreement or the Bidding Procedures Order, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, upon consultation with the Committee, to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best offer for the Acquired Assets and which is the second-highest and best offer; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (f) impose additional terms and conditions with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (g) extend the deadlines set forth herein (after consultation with the Stalking Horse Bidder); (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; *provided*, *however*, that notwithstanding the foregoing, without the consent of the Stalking Horse Bidder, which consent shall not be unreasonably withheld, the Debtors may not (1) withdraw the Motion, (2) adjourn or cancel the Sale Hearing, (3) waive any conditions to a bidder being a Qualified Bidder or a bid being a Qualified Bid as set forth in these Bidding Procedures; (4) remove any of the Acquired Assets from the Auction; (5) extend the time period within which the Debtors are required to file the Successful Bidder Notice; or (6) modify the Bidding Procedures' requirements (A) that any bid be a bulk bid to purchase all of the Acquired Assets, (B) to change the amount of the Deposit, (C) to waive or modify any of the provisions in the Credit Bidding section of the Bidding Procedures, or (D) to impair or modify the Stalking Horse Bidder's rights and obligations under the Bidding Procedures or the Stalking Horse Purchase Agreement, including, without limitation, the Stalking Horse Bidder's rights with respect to the timing of the Auction and the Sale Hearing or the Stalking Horse Bidder's right to credit bid any remaining amounts owing under the Senior Pre-Petition Indebtedness and receive a "credit" in the amount of its Expense Reimbursement toward any Subsequent Bid at the Auction.

## **SCHEDULE 2**

NOTICE OF AUCTION AND SALE HEARING

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Santa Fe Gold Corp. *et al.*[1] | Case No. 15-11761 (MFW) |
| Debtors. | Jointly Administered |
|  | **Sale Hearing Date: December 18, 2015, at 11:30 a.m. (ET)** |
|  | **Sale Obj. Deadline: December 11, 2015, at 4:00 p.m. (ET)** |

## NOTICE OF PUBLIC AUCTION AND SALE HEARING

### (**"*Sale Notice*"**)

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), as Sellers, have entered into an asset purchase agreement, dated [____], 2015 (the "***Stalking Horse Purchase Agreement***"), with Waterton Global Value, L.P. (or one of its affiliates) or its designee, as Buyer (the "***Stalking Horse Bidder***"), to sell the Debtors' properties and related assets (the "***Acquired Assets***") free and clear of all liens, claims, encumbrances and other interests to the Stalking Horse Bidder (the "***Sale***"), subject to the submission of higher or better offers in an auction process (the "***Auction***").

**PLEASE TAKE FURTHER NOTICE** that in connection with the proposed Sale, on September 25, 2015, the Debtors filed a motion [Docket No. ___] (the "***Motion***") seeking court orders for the approval and authorization of, among other things, (a) the Sale, (b) bidding procedures in connection with the Sale, (c) the payment to the Stalking Horse Bidder, if necessary, of an Expense Reimbursement, (d) the form and manner of notices relating to the Sale, and (e) procedures related to the assumption and assignment of executory contracts and unexpired leases in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that, on [____], 2015, the United States Bankruptcy Court for the District of Delaware (the "***Court***") entered an order [Docket No. __] (the "***Bidding Procedures Order***") approving the bidding procedures (the "***Bidding Procedures***"), which establish the key dates and times related to the Sale. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures. The summary of the Bidding Procedures contained in this Sale Notice is provided for convenience only. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description in this Sale Notice, the terms of the Bidding Procedures shall control. The deadline

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corp. (4315); Azo Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A);. The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

2

by which all Qualified Bids (as defined in the Bidding Procedures) must be *actually received* by the parties specified in the Bidding Procedures Order is December 10, 2015 at 5:00 p.m. (prevailing Eastern Time) (the "***Bid Deadline***").

PLEASE TAKE FURTHER NOTICE that copies of the Motion, Bidding Procedures and Bidding Procedures Order, as well as all related exhibits including the Stalking Horse Purchase Agreement, are available on the website of the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, American Legal Claim Services LLC, or can be requested by phone at (904) 517-1442.

PLEASE TAKE FURTHER NOTICE that if the Debtors receive one or more Qualified Bids (in addition to the Stalking Horse Purchase Agreement) that satisfy the requirements and timeframe specified by the Bidding Procedures, the Debtors will conduct the Auction to determine the highest and best bid for the purchased assets on December 15, 2015 at 10:00 a.m. (prevailing Eastern Time) at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other location as the Debtors may hereafter designate (with notice of such alternate location given to all qualified bidders under the Bidding Procedures).  If no other Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), then the Auction shall not be held, and the Debtors shall promptly seek the Court's approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Purchase Agreement.

PLEASE TAKE FURTHER NOTICE that only the Debtors, the Committee, the Stalking Horse Bidder, and any other Qualified Bidders that have timely submitted a Qualified Bid, and their respective representatives, the United States Trustee, and any party in interest that has provided the Debtors with written notice of their intention to attend the Auction on or before the Bid Deadline (such written notice must be sent to counsel for the Debtors via electronic mail, to Kenneth J. Enos, Esq., at kenos@ycst.com) shall be permitted to attend the Auction.

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the Sale before the Honorable Mary F. Walrath, United States Bankruptcy Judge for the District of Delaware, at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801, on December 18, 2015 at 11:30 a.m. (prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections to the Motion, if any, *must*: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so as to be *actually received* no later than December 11, 2015 at 4:00 p.m. (prevailing Eastern Time) by the following parties:

2

| **Counsel to Debtors** |
|---|
| Young Conaway Stargatt & Taylor, LLP Rodney Square<br>1000 North King Street<br>Wilmington Delaware 19801<br>Attn: Kenneth J. Enos, Esq. |
| **Co-Counsel to the Committee** |
| Squire Patton Boggs (US) LLP<br>30 Rockefeller Plaza, 23rd Floor<br>New York, New York 10112<br>Attn: Norman N. Kinel, Esq.<br>Attn: Nava Hazan, Esq.<br><br>-and-<br><br>Polsinelli PC<br>222 Delaware Ave., Ste. 1101<br>Wilmington, Delaware 19801<br>Attn: Christopher A. Ward, Esq. |
| **Co-Counsel to the Stalking Horse Bidder** |
| Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>Attn: Jessica C.K. Boelter, Esq.<br><br>- and -<br><br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Attn: Mark D. Collins, Esq. |

ACTIVE 209443107v.5

Dated: [        ], 2015                YOUNG CONAWAY STARGATT & TAYLOR, LLP
        Wilmington, Delaware

_____
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

COUNSEL TO THE DEBTORS

4

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AFFECTED THEREUNDER.**

---

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

The proposed Sale Order provides that the purchaser in the Sale (the "**Purchaser**") will have no responsibility for, and the assets will be sold free and clear of, any successor liability, including the following:

To the greatest extent allowable by applicable law, the Purchaser shall not be deemed, as a result of any action taken in connection with the Stalking Horse Purchase Agreement, the consummation of the Sale (as defined in the proposed Sale Order) contemplated by the Stalking Horse Purchase Agreement, or the transfer or operation of the Acquired Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Purchaser, with respect to any obligations as an assignee under the Assigned Contracts and Assigned Leases arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be an alter ego or mere continuation or substantial continuation of the Debtors, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101, et seq.), the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.  All rights of any party to set off any claims, debts or obligations owed by or to the Purchaser in connection with the Acquired Assets shall be extinguished on the Closing Date pursuant to the proposed Sale Order, with such rights attaching to the proceeds of the Sale.  Other than as expressly set forth in the Stalking Horse Purchase Agreement with respect to Assumed Liabilities, the Purchaser shall not have any responsibility for (a) any liability of other obligation of the Debtors or related to the Acquired Assets or (b) any claims (as such term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates.  To the greatest extent allowed by applicable law, the Purchaser shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing.

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS SALE NOTICE, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT 904-517-1442**

## **SCHEDULE 3**

NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Santa Fe Gold Corp. *et al.*[1] | Case No. 15-11761 (MFW) |
| Debtors. | Jointly Administered |
| | **Sale Hearing Date: December 18, 2015, at 11:30 a.m. (ET)**<br>**Sale Obj. Deadline: December 11, 2015, at 4:00 p.m. (ET)** |

### NOTICE OF (I) CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED AND (II) POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS <u>AND UNEXPIRED LEASES</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.        Pursuant to the *Order (I) Authorizing Debtors' Entry into the Stalking Horse Purchase Agreement for the Sale of the Debtors' Properties and Related Assets; (II) Approving Bidding Procedures and Expense Reimbursement; (III) Scheduling a Hearing to Consider Approval of the Sale of Assets; (IV) Approving Form and Manner of Notice of Sale; and (V) Granting Related Relief* [Docket No. __] (the "***Bidding Procedures Order***")[2] entered by the United States Bankruptcy Court for the District of Delaware (the "***Court***") on [____], 2015, the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") hereby provide notice (this "***Notice***") that they are a party to various executory contracts and unexpired leases set forth on <u>Exhibit 1</u> attached hereto (each an "***Executory Contract or Unexpired Lease***" and, collectively, the "***Executory Contracts and Unexpired Leases***") and that they intend to seek to

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corp. (4315); Azo Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A);.  The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures approved as part of the Bidding Procedures Order.

assume and assign some or all of such Executory Contracts and Unexpired Leases (each a "***Potentially Assigned Contract or Lease***" and, collectively, the "***Potentially Assigned Contracts and Leases***") to the Successful Bidder in connection with the proposed sale of the Acquired Assets.

2.      You have been identified as a party to a Potentially Assigned Contract or Lease. The Potentially Assigned Contract or Lease to which you have been identified as a non-Debtor counterparty is set forth on Exhibit 1 attached hereto.  If this Executory Contract or Unexpired Lease is *actually* to be assumed and assigned to the Successful Bidder, a separate notice of such assumption and assignment will be provided to you.

3.      Also set forth on Exhibit 1 is the amount that the Debtors' records reflect is owing to cure any and all defaults under the Potentially Assigned Contract or Lease to which you are a party (the "***Cure Amount***") so as to permit the assumption and assignment of such Potentially Assigned Contract or Lease (if ultimately designated for assumption and assignment by the Successful Bidder) pursuant to 11 U.S.C. § 365.  As of the date hereof, the Debtors' records reflect that all postpetition amounts owing under the Potentially Assigned Contract or Lease to which you are a party have been paid and will continue to be paid and that there are no other defaults under the Potentially Assigned Contract or Lease.  Amounts due and owing under the Potentially Assigned Contracts and Leases with respect to the period after the Petition Date are not included in the calculation of the Cure Amounts.

4.      Objections, if any, to the Proposed Cure Amount, or to the possible assumption, assignment and/or transfer of any Potentially Assigned Contract or Lease to the Successful Bidder, as applicable ("***Cure/Assignment Objections***"), must be filed with the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington

2

Delaware 19801, and served so as to be *actually* *received* on or before November 23, 2015 at

4:00 p.m. (Eastern Time) (the "***Cure/Assignment Objection Deadline***").   Service should be

made by mail to:

| Counsel to Debtors |
| :---: |
| Young Conaway Stargatt & Taylor, LLP Rodney Square<br>1000 North King Street<br>Wilmington Delaware 19801<br>Attn: Kenneth J. Enos, Esq. |
| Co-Counsel to the Stalking Horse Bidder |
| Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>Attn: Jessica C.K. Boelter, Esq.<br><br>- and -<br><br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Attn: Mark D. Collins, Esq. |

5.      Any Cure/Assignment Objection must (i) be in writing; (ii) conform to the

applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and

the Local Rules for the United States Bankruptcy Court for the District of Delaware; (iii) state

with particularity the legal and factual basis for the objection and the specific grounds therefor;

and (iv) if challenging a Cure Amount, set forth the prepetition cure amount being claimed by

the objecting party with appropriate documentation in support thereof.

6.      Cure/Assignment Objections that are timely filed and cannot be resolved by the

Debtors and the counterparty to the Potentially Assigned Contract or Lease will be heard at a

hearing to be held before the Honorable Mary F. Walrath, United States Bankruptcy Judge for

the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801, on

[_____] at [_____] (prevailing Eastern Time) unless the Debtors and the Successful Bidder agree

otherwise or the Court orders otherwise.

7.      Unless a non-Debtor counterparty to any Potentially Assigned Contract or Lease

files a Cure/Assignment Objection by the Cure/Assignment Objection Deadline, such

counterparty shall be (i) forever barred from objecting to the Cure Amount and from asserting

against the Debtors or the Stalking Horse Bidder (or any other Successful Bidder) any additional

cure or other amounts with respect to such Executory Contract or Unexpired Lease in the event

that such Executory Contract or Unexpired Lease is ultimately assumed and/or assigned by the

Debtors, and the Debtors and the Stalking Horse Bidder (or any other Successful Bidder) shall be

entitled to rely solely upon the Cure Amount, and (ii) deemed to have consented to the

assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease

(including the transfer of any rights and benefits thereunder) to the Stalking Horse Bidder, any

other Successful Bidder or any other assignee of the relevant Executory Contract or Unexpired

Lease, and shall be forever barred and estopped from asserting or claiming against the Debtors,

the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant

Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or

conditions to assumption, assignment and/or transfer must be satisfied under such Executory

Contract or Unexpired Lease, or that any right or benefit under such Executory Contract or

Unexpired Lease cannot or will not be available to the Stalking Horse Bidder, any other

Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease.

8.      At the Sale Hearing, the Debtors shall present evidence necessary to demonstrate

adequate assurance of future performance by the Successful Bidder.

ACTIVE 209443107v.5

9.      The presence of a contract, lease or other agreement on <u>Exhibit 1</u> attached hereto does not constitute an admission that such contract, lease or other agreement is an Executory Contract or Unexpired Lease or that such contract, lease or other agreement will be assumed by the Debtors and assigned to any Successful Bidder.  The Debtors reserve all of their rights, claims and causes of action with respect to the contracts, leases and other agreements listed on <u>Exhibit 1</u>.

10.      All documents filed with the Bankruptcy Court in connection with these chapter 11 cases, including orders of the Bankruptcy Court, are available for free on the website of the Court-appointed claims and noticing agent in these cases, American Legal Claim Services LLC, or can be requested by phone at (904) 517-1442.


Dated: [        ], 2015                              YOUNG CONAWAY STARGATT & TAYLOR, LLP
            Wilmington, Delaware

                                                          _____
                                                          Robert S. Brady (No. 2847)
                                                          Edmon L. Morton (No. 3856)
                                                          Kenneth J. Enos (No. 4544)
                                                          Ian J. Bambrick (No. 5455)
                                                          Rodney Square
                                                          1000 North King Street
                                                          Wilmington, Delaware 19801
                                                          Telephone:  (302) 571-6600
                                                          Facsimile:  (302) 571-1253

                                                          COUNSEL TO THE DEBTORS

## __Exhibit 1__

Potentially Assigned Contracts and Leases

# **SCHEDULE 4**

ASSIGNMENT NOTICE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Santa Fe Gold Corp. *et al.*[1] | ) | Case No. 15-11761 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | |

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On [_____], 2015, the United States Bankruptcy Court for the District of Delaware (the "***Court***") entered the *Order (I) Authorizing Debtors' Entry into the Stalking Horse Purchase Agreement for the Sale of the Debtors' Properties and Related Assets; (II) Approving Bidding Procedures and Expense Reimbursement; (III) Scheduling a Hearing to Consider Approval of the Sale of Assets; (IV) Approving Form and Manner of Notice of Sale; and (V) Granting Related Relief* [Docket No. __] (the "***Bidding Procedures Order***").[2]

2.      On [_____], 2015, the Court entered the *Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. __] (the "***Sale Order***").

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A). The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures approved as part of the Bidding Procedures Order.

3.      Pursuant to the Sale Order, the Debtors have accepted the bid of [____] (the "**Successful Bidder**") for the purchase (the "**Sale**") of the Debtors' properties and related assets (the "**Acquired Assets**").   The terms of the successful bid are set forth in that certain asset purchase agreement, dated as of [____], 2015, among the Debtors and the Successful Bidder.

4.      The Bidding Procedures Order, among other things, authorized procedures for the Debtors to assume and assign certain executory contracts and unexpired leases (each an "**Assigned Contract or Assigned Lease**" and, collectively, the "**Assigned Contracts and Assigned Leases**") to the Successful Bidder.   Attached hereto as <u>Exhibit 1</u> is a list of the Assigned Contracts and Assigned Leases that the Debtors will assign to the Successful Bidder in connection with the closing of the Sale and the cure amount, if any, with respect to each Assigned Contract or Assigned Lease.

5.      All documents filed with the Bankruptcy Court in connection with these chapter 11 cases, including orders of the Bankruptcy Court, are available for free on the website of the Court-appointed claims and noticing agent in these cases, American Legal Claim Services LLC, or can be requested by phone at (904) 517-1442.


Dated: [        ], 2015
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

COUNSEL TO THE DEBTORS

ACTIVE 209443107v.5

## **Exhibit 1**

Assigned Contracts and Assigned Leases