## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Santa Fe Gold Corp. *et al.*[1] | Case No. 15-11761 (MFW) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 75** |

### ORDER (I) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE PURCHASE AGREEMENT FOR THE SALE OF THE DEBTORS' PROPERTIES AND RELATED ASSETS; (II) APPROVING BIDDING PROCEDURES AND EXPENSE REIMBURSEMENT; (III) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OF ASSETS; (IV) APPROVING FORM AND MANNER OF NOTICE OF SALE; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***") of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), as supplemented by Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), for the entry of orders approving, among other things, the sale (the "***Sale***") of the Debtors' properties and related assets, and related bidding procedures (the "***Bidding Procedures***"),[2] which are attached hereto as <u>Schedule 1</u>, and certain protections for the Stalking Horse Bidder (as defined below) of such assets; and this Court having determined that the relief provided herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A). The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures.

circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when applicable. *See* Bankruptcy Rule 7052.

B.      This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.   The matters are core proceedings under 28 U.S.C. § 157(b)(2).  Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in this district and before this Court was proper as of the Petition Date and continues to be proper.

C.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and the Sale Hearing.

D.      The notice procedures set forth herein are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the Sale of the Debtors' properties and related assets (as more fully described in the Stalking Horse Purchase Agreement, the "*Acquired Assets*") pursuant to the Stalking Horse Purchase Agreement (as defined  below), (ii) the Bidding Procedures to be employed in connection with the Auction, (iii) the Auction, and (iv) the Sale Hearing.

E.      Good and sufficient business reasons exist for this Court to authorize the Debtors to enter into that certain Asset Purchase Agreement (the "*Stalking Horse Purchase*

01:17860327.2

*Agreement*"), by and among each of the Debtors, as Sellers, and Waterton Global Value, L.P. (or one of its affiliates) or its designee, as Buyer (the "***Stalking Horse Bidder***"), substantially in the form appended to the Motion as Exhibit B.

F.      Good and sufficient business reasons exist for this Court to approve (i) the Bidding Procedures substantially in the form attached hereto as <u>Schedule 1</u>, (ii) the payment to the Stalking Horse Bidder of the Expense Reimbursement (as defined in the Stalking Horse Purchase Agreement), in accordance with the terms of the Stalking Horse Purchase Agreement and this Order; (iii) the scheduling of the Bid Deadline, the Auction, and the Sale Hearing with respect to the proposed Sale; and (iv) the establishment of procedures to fix cure amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment, and/or transfer of the Assigned Contracts and Assigned Leases (as defined below) to the Successful Bidder.

G.      The terms of the Stalking Horse Purchase Agreement, including those provisions relating to the Expense Reimbursement and the circumstances requiring payment thereof, and the Bidding Procedures were negotiated in good faith and at arm's length.

H.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

I.      The Debtors have demonstrated that the Expense Reimbursement is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Stalking Horse Bidder.

01:17860327.2

J.      The Notice of Auction and Sale Hearing (as defined below) is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction, if any; (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the Sale Objection Deadline (as defined below) and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets; (v) instructions for promptly obtaining a copy of the Stalking Horse Purchase Agreement; (vi) representations describing the Sale as being free and clear of any and all liens, claims, interests, and other encumbrances other than the Assumed Liabilities, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (viii) notice of the proposed assumption and assignment of certain contracts and leases to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder at the conclusion of the Auction, if any), the proposed Cure Amounts (as defined below) relating thereto, and the procedures and deadlines for objecting thereto, and no further notice of the Sale shall be required.

K.      The entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the Motion or to the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

01:17860327.2

3.    The Debtors' entry into the Stalking Horse Purchase Agreement is hereby approved.

4.    The Stalking Horse Bidder shall constitute a Qualified Bidder and the Stalking Horse Purchase Agreement shall constitute a Qualified Bid for all purposes and in all respects under the Bidding Procedures.

5.    The Bidding Procedures, substantially in the form attached hereto as <u>Schedule 1</u>, are incorporated herein, are approved and shall apply with respect to the Sale of the Acquired Assets.  The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

6.    *Bid Deadline*.  As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "*Bid Deadline*") is January 11, 2016 at 5:00 p.m. (prevailing Eastern Time).  No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures.

7.    *Notice of Stalking Horse Purchase Price*.  No later than five (5) business days after the entry of this Order, the Stalking Horse Bidder shall file a notice on the docket in these Chapter 11 Cases which sets forth the amount of cash consideration that would be equal to the credit bid portion of the Consideration in the Stalking Horse Purchase Agreement.

8.    *Auction*.  The Debtors may sell the Acquired Assets by conducting the Auction in accordance with the Bidding Procedures.  If the Debtors timely receive one or more Qualified Bids (other than the bid of the Stalking Horse Bidder) in accordance with the Bidding Procedures, then the Auction shall take place on January 13, 2016, at 10:00 a.m. (prevailing Eastern Time) at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or at such other location as the Debtors may

5

hereafter designate (with notice of such alternate location given to all Qualified Bidders under the Bidding Procedures). Each Qualified Bidder participating at the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

9.      If no other Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), then the Auction shall not be held, and the Debtors shall promptly seek this Court's approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Purchase Agreement.

10.      On the same date that the Debtors determine the Successful Bid, the Debtors shall file on this Court's docket in these Chapter 11 Cases a notice disclosing the identity of the Successful Bidder, and, if the Debtors deem there to be one, the identity of the Back Up Bidder (the "*Successful Bidder Notice*").

11.      *Sale Hearing*.  The Sale Hearing shall be held on Jan 14, 2016, at 11:30 a.m. (prevailing Eastern Time) before the Honorable Mary F. Walrath, United States Bankruptcy Judge for the District of Delaware, at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801. At the Sale Hearing, the Debtors shall seek the entry of an order of this Court approving and authorizing the Sale to the Successful Bidder. Any obligations of the Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Purchase Agreement are authorized as set forth herein and shall be fully enforceable as of the date of entry of this Order. The Sale Hearing (or any portion thereof) may be adjourned by this Court or by the Debtors (after consultation with the Stalking Horse Bidder) from time to time without further notice other than by announcement in open court or through the filing of a notice on this Court's docket.

01:17860327.2

12. ***Sale Objection Deadline***. The deadline to object to the remaining relief requested in the Motion, including the entry of the proposed Sale Order, is January 11, 2016, at 4:00 p.m. (prevailing Eastern Time) (the "***Sale Objection Deadline***"). Objections, if any, *must*: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so as to be *actually received* no later than the Sale Objection Deadline by the following parties (collectively, the "***Notice Parties***"): (a) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Kenneth J. Enos, Esq.); (b) co-counsel to the Stalking Horse Bidder, (i) Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603 (Attn: Jessica C.K. Boelter, Esq.) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq.); and (c) co-counsel to the Committee, (i) Squire Patton Boggs (US) LLC, 30 Rockefeller Plaza, 23rd Floor, New York, New York 10112 (Attn: Norman N. Kinel, Esq.) and (ii) Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn: Christopher A. Ward, Esq.).

13. No later than three (3) business days after entry of this Order, the Debtors shall cause a notice substantially in the form attached hereto as Schedule 2 (the "***Notice of Auction and Sale Hearing***") and a copy of this Order to be sent by first-class mail postage prepaid, to the following persons or entities: (a) all entities that assert any lien, claim or interest in the Acquired Assets; (b) all parties to the Executory Contracts and Unexpired Leases (as defined below); (c) all governmental taxing authorities that have or as a result of the Sale of the Acquired Assets may have claims, contingent or otherwise, against the Debtors; (d) all state and local taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue

7

Service; (e) all state and local governmental agencies and environmental agencies in any jurisdiction where the Debtors own or have owned or used real property; (f) the Environmental Protection Agency; (g) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (h) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (i) all interested governmental, pension, environmental and other regulatory entities; (j) the Office of the Attorney General of New Mexico; (k) the Office of the Attorney General of Delaware; (l) the Office of the Attorney General of Arizona; (m) any other applicable state attorneys general; (n) the Office of the United States Trustee for the District of Delaware; (o) the United States Department of Justice; (p) all entities that, within the eighteen months prior to the Petition Date, expressed to the Debtors an interest in purchasing all or a substantial portion of the Acquired Assets; (q) counsel to the Stalking Horse Bidder and all other notice parties requested by the Stalking Horse Bidder.  In addition to the foregoing, (i) electronic notification of the Motion, this Order, and the Notice of Auction and Sale Hearing will also be posted on (A) this Court's website, http://www.deb.uscourts.gov and (B) the case website maintained by the Debtors' claims and noticing agent, American Legal Claim Services, LLC ; and (ii) no later than three (3) business days after entry of this Order, the Debtors will, subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing in *The Wall Street Journal (National Edition)* and *The Mining Journal*.  **Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

01:17860327.2

14.     No later than three (3) business days after entry of this Order (the "*Cure Notice Deadline*"), the Debtors shall serve by first-class mail postage prepaid, a notice of potential assumption, assignment, and/or transfer of the executory contracts and unexpired leases to which any Debtor is a party (collectively, the "*Executory Contracts and Unexpired Leases*"), substantially in the form attached hereto as <u>Schedule 3</u> (the "*Notice of Potential Assumption and Assignment*"), on all non-Debtor parties to the Executory Contracts and Unexpired Leases. The Notice of Potential Assumption and Assignment shall include the cure amounts (the "*Cure Amounts*") that the Debtors believe must be paid to cure all defaults outstanding under the Executory Contracts and Unexpired Leases as of such date.

15.     Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection to (a) its Cure Amount and/or (b) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights or benefits thereunder) to the Stalking Horse Bidder or to any other Successful Bidder, as applicable (each such objection, a "*Cure Amount/Assignment Objection*"), by November 23, 2015, at 4:00 p.m. (prevailing Eastern Time) or, to the extent that the Stalking Horse Bidder is not the Successful Bidder, but solely with respect to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights or benefits thereunder) to the Successful Bidder, by the Sale Hearing (the *Cure Amount/Assignment Objection Deadline*")  and serves a copy of the Cure Amount/Assignment Objection so as to be *actually* *received* by the Notice Parties by no later than the Cure Amount/Assignment Objection Deadline, such non-Debtor party shall (x) be forever barred from objecting to the Cure Amount and from asserting against the Debtors or the Stalking Horse Bidder (or any other Successful Bidder) any additional cure or other amounts with respect to such Executory Contract or

Unexpired Lease in the event that such Executory Contract or Unexpired Lease is ultimately assumed and/or assigned by the Debtors, and the Debtors and the Stalking Horse Bidder (or any other Successful Bidder) shall be entitled to rely solely upon the Cure Amount, and (y) be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights and benefits thereunder) to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied under such Executory Contract or Unexpired Lease, or that any right or benefit under such Executory Contract or Unexpired Lease cannot or will not be available to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease.  All Cure Amount/Assignment Objections with respect to the Notice of Potential Assumption and Assignment served on or before the Cure Notice Deadline shall be heard at the Sale Hearing unless the Debtors, in consultation with the Stalking Horse Bidder or any other Successful Bidder, agree otherwise or this Court orders otherwise.  With respect to any party that has timely filed a Cure Amount/Assignment Objection in accordance with this Order, nothing in this Order and/or the Notice of Potential Assumption and Assignment shall (i) operate to waive or impair any rights, claims, or defenses of any non-Debtor party to any Executory Contract or Unexpired Lease or (ii) be deemed to be a determination, finding, or adjudication that any Executory Contract or Unexpired Lease, or any rights or benefits thereunder, are or may be assumed, assigned, transferred, delegated, or otherwise made available

10

for the benefit of any entity, pursuant to section 365 of the Bankruptcy Code or otherwise, without the consent of the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

16.    Within one (1) business day after the conclusion of the Auction, if any, the Debtors shall serve the Successful Bidder Notice on all parties that received service of the Notice of Potential Assumption and Assignment, which notice shall be faxed, emailed or (if neither available) sent by overnight mail to all parties to Executory Contracts or Unexpired Leases.

17.    No later than five (5) calendar days prior to the Closing (as defined in the Stalking Horse Purchase Agreement) (the "*Assignment Notice Deadline*"), the Debtors shall serve a notice, substantially in the form attached hereto as <u>Schedule 4</u> (the "*Assignment Notice*"), identifying the Executory Contracts and Unexpired Leases that will be assumed and assigned to the Successful Bidder as of the Closing (collectively, the "*Assigned Contracts and Assigned Leases*").

18.    The Successful Bidder may determine to exclude any Executory Contract or Unexpired Lease (each an "*Excluded Contract*") from the list of Acquired Assets in accordance with the applicable asset purchase agreement. The Debtors shall notify the non-Debtor party or parties to any Excluded Contract of such exclusion by written notice as soon as practicable after such determination, which may be after the Sale Hearing.

19.    The Notice of the Auction and Sale Hearing, the Notice of Potential Assumption and Assignment, and the Assignment Notice, substantially in the forms attached hereto as <u>Schedule 2</u>, <u>Schedule 3</u>, and <u>Schedule 4</u>, respectively, are hereby approved.

01:17860327.2

20.     The Sale Hearing may be adjourned, from time to time, in accordance with the Bidding Procedures and without further notice to creditors or other parties in interest other than by announcement in open court or through the filing of a notice on this Court's docket.

21.     Pursuant to section 363(k) of the Bankruptcy Code, the Stalking Horse Bidder has the right (but not the obligation) to credit bid any and all amounts due and owing to it under the DIP Facility[3] plus any unpaid amounts of the Senior Pre-Petition Indebtedness[4] due and owing to the Stalking Horse Bidder (or its affiliates) as of the Bid Deadline, *provided, however,* that such right shall be subject to a successful challenge brought pursuant to Paragraph 8 of the *Final Order (i) Authorizing Debtors to Obtain Post-Petition Financing, (ii) Authorizing the Use of Cash Collateral, (iii) Granting Liens, Including Priming Liens, and Superpriority Claims, (iv) Granting Adequate Protection, and (v) Granting Related Relief* (the "**Final DIP Order**") that results in a final, non-appealable order restricting the Stalking Horse Bidder's right to credit bid the Senior Pre-Petition Indebtedness.  In addition, the Stalking Horse Bidder shall be entitled to a dollar-for-dollar credit for the Expense Reimbursement for any Subsequent Bid submitted by the

---

[3] The "*DIP Facility*" means the post-petition financing with Waterton Global Value, L.P., by its investment manager, Altitude Management Limited, as lender (the "*DIP Lender*") under (i) that certain *Debtor-In Possession Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "*DIP Credit Agreement*"), by and among the DIP Lender, Santa Fe Gold Corporation (the "*Borrower*"), and each of the other Debtors (collectively, the "*Guarantors*"), and (ii) any and all other Credit Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "*DIP Loan Documents*").

[4] "*Senior Pre-Petition Indebtedness*" means all obligations arising under (i) that certain *Senior Secured Gold Stream Credit Agreement*, dated December 23, 2011 between the Debtors and Waterton Global Value, L.P. in its capacity as provider of the Senior Pre-Petition Indebtedness (as amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "*Pre-Petition Credit Agreement*", and collectively with any other agreements and documents executed or delivered in connection therewith, including the "Credit Documents" as defined in the Pre-Petition Credit Agreement, each as may be amended, restated, supplemented or otherwise modified from time to time, the "*Pre-Petition Credit Agreement Documents*"), and (ii) that certain *Gold and Silver Supply Agreement* entered into between certain of the Debtors and Waterton Global Value, L.P. in its capacity as provider of the Senior Pre-Petition Indebtedness (the "*Pre-Petition Gold Supply Agreement*" and collectively with any other agreements and documents executed or delivered in connection therewith (each as may be amended, restated, supplemented, or otherwise modified from time to time), the "*Pre-Petition Gold Supply Agreement Documents*" and, collectively with the Pre-Petition Credit Agreement Documents, the "*Senior Pre-Petition Credit Documents*").

Stalking Horse Purchaser.  To the extent that a successful challenge brought subject to Paragraph 8 of the Final DIP Order results in a final, non-appealable order restricting the Stalking Horse Bidder's right to credit bid the Senior Pre-Petition Indebtedness, the Stalking Horse Bidder shall have the right (but not the obligation) to credit bid any and all amounts due and owing to it under the DIP Facility plus any unpaid amounts of the Senior Pre-Petition Indebtedness due and owing to the Stalking Horse Bidder (or its affiliates) as of the Bid Deadline that are not subject to such an order.

22.     The Expense Reimbursement, as set forth in the Stalking Horse Purchase Agreement, is hereby approved, and the Debtors are authorized and directed to promptly pay, as they become due, any amounts owed to the Stalking Horse Bidder on account of such Expense Reimbursement in accordance with the Stalking Horse Purchase Agreement; *provided, however,* that if the obligation to pay the Expense Reimbursement is triggered, the Debtors will provide the U.S. Trustee within ten (10) calendar days' notice prior to making any payment with respect to the Expense Reimbursement.  The obligations of the Debtors to pay the Expense Reimbursement (i) shall constitute administrative expense claims against each of the Selling Debtors' estates, (ii) shall be entitled to administrative expense priority status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (iii) shall survive the termination of the Stalking Horse Purchase Agreement; and (iv) shall be paid by the Debtors to the Stalking Horse Bidder in cash upon certain terminations of the Stalking Horse Purchase Agreement as set forth in Section 6.9(a) thereof.

23.     Except as otherwise provided in the Stalking Horse Purchase Agreement, the Bidding Procedures, or this Order, the Debtors reserve their rights as they may reasonably determine to be in the best interests of their estates, subject to consultation with the Committee,

13

to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best offer for the Acquired Assets and which Qualified Bid is the second-highest and best offer; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth in the Bidding Procedures with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (f) impose additional terms and conditions with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (g) extend the deadlines set forth in the Bidding Procedures (after consultation with the Stalking Horse Bidder); (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; *provided, however*, that notwithstanding the foregoing, without the consent of the Stalking Horse Bidder (unless otherwise ordered by the Court), the Debtors may not (1) withdraw the Motion, (2) adjourn or cancel the Sale Hearing, (3) waive any conditions to a bidder being a Qualified Bidder or a bid being a Qualified Bid as set forth in the Bidding Procedures; (4) remove any of the Acquired Assets from the Auction; (5) extend the time period within which the Debtors are required to file the Successful Bidder Notice; or (6) modify the Bidding Procedures' requirements (A) set forth in Section VIII(a) therein, (B) to change the amount of the Deposit, (C) waive or modify any of the provisions in the Credit Bidding section of the Bidding Procedures, or (D) to impair or modify the Stalking Horse Bidder's rights and obligations under the Bidding Procedures or the Stalking Horse Purchase Agreement, including, without limitation, the Stalking Horse Bidder's rights with respect to the timing of the Auction and the Sale Hearing

or the Stalking Horse Bidder's right to receive a "credit" in the amount of its Expense Reimbursement toward any Subsequent Bid at the Auction; *provided, further, however*, that all rights of all parties in interest to object to, or otherwise challenge the decisions of the Debtors with respect to the Bidding Process are hereby reserved.

24.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) and the requirements of Local Rule 6004-1(c)(2) are hereby waived, and this Order shall be effective immediately upon its entry.

25.     This Court shall retain jurisdiction over any matters related to or arising from the interpretation or implementation of this Order.

Dated:   October 20, 2015
         Wilmington, Delaware

                                        _____
                                        The Honorable Mary F. Walrath
                                        United States Bankruptcy Judge

15