IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                                       :  Chapter 11
In re                                                  :
                                                       :  Case No. 15-11761 (MFW)
SANTA FE GOLD CORPORATION, et al.,                     :
                                                       :  Jointly Administered
        Debtors.¹                                      :
                                                       :  Settlement Obj. Deadline: February 3, 2016, at 11:30 a.m. (ET)
                                                       :  Hearing Date: February 5, 2016, at 2:00 p.m. (ET)
                                                       :
-------------------------------------------------------x
```

**SUPPLEMENT TO THE DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) APPROVING THE SALE OF THE
DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT
OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "***Debtors***") previously filed a motion [Docket No. 75] (the "***Sale Motion***")² that requested, among other things, the entry an order (i) authorizing the sale of the properties and related assets of the Debtors (the "***Sale***") free and clear of all liens, claims, interests, and encumbrances, except for the Permitted Liens (as defined in the Stalking Horse Purchase Agreement) and Assumed Liabilities (as defined in the Stalking Horse Purchase Agreement); (ii) authorizing the assumption and assignment of certain related executory contracts and unexpired leases; and (iii) granting related relief. In order to resolve, among other things, (a) the Committee's informal objections to the (x) Sale and (y) Debtors' motion to extend their exclusive periods to file and solicit a plan of reorganization or liquidation [Docket No. 243], and (b) any objection or

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A). The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

² Capitalized terms used, but not otherwise defined herein, have the meaning given to them in the Sale Motion.

challenge the Committee could have made as to the findings made in the *Final Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens, Including Priming Liens, and Superpriority Claims, (IV) Granting Adequate Protection, and (V) Granting Related Relief* [Doc. No. 139] (the "**Final DIP Order**"), the Senior Pre-Petition Indebtedness, or the actions or inactions of the Senior Pre-Petition Lender in connection with or related to the Senior Pre-Petition Indebtedness, the Debtors, Waterton Global Value, L.P. (the "**Buyer**" or "**Waterton**"), and the Committee (with the Debtors and the Buyer, the "**Parties**") have entered into a settlement on the terms summarized below (the "**Settlement**") and set forth in greater detail in the Term Sheet attached hereto as Exhibit A. The Settlement will be incorporated into a revised, proposed order approving the Sale (the "**Sale Order**"), which shall be filed prior to the Sale Hearing. The Debtors and the Committee intend to seek approval of the Settlement at the Sale Hearing, which is currently scheduled for February 5, 2016, at 2:00 p.m. (ET), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). In support of the Settlement, the Debtors and the Committee respectfully represent:

## SUMMARY OF THE SETTLEMENT[3]

1. The Parties have engaged in good faith and arms' length negotiations, and as a result of such negotiations, have agreed to resolve the Committee's objections and potential claims on the following terms:

| **Settlement Funding:** | On the earlier of (such date, the "***Settlement Payment Date***") (1) the business day after the Dismissal Process Order (as defined |

---

[3] Capitalized terms used, but not otherwise defined in this section, have the meaning given to them in the Final DIP Order.

01:18202454.7

below) becomes a final order and (2) the later of (x) the closing of a sale of substantially all assets of the Debtors to Waterton or its affiliates and (y) 5 (five) business days after the entry of an order approving the settlement embodied in this term sheet (the "*Approval Order*"): (a) Waterton shall deposit the following cash amounts in a trust account specifically designated by the Committee: (i) $500,000 (the "*GUC Recovery Trust Fund Contribution*"), (ii) $325,000 (the "*GUC Professional Fees Contribution*"), and (iii) $100,000 (the "*GUC Trust Funding*", and together with the GUC Recovery Trust Fund Contribution and the GUC Professional Fees Contribution, the "*Committee Settlement Funding Obligations*") and (b) Waterton shall deposit $75,000 in an account specifically designated by the Debtors (the "*Debtors Professional Fees Contribution*").

*The GUC Recovery Trust Fund Contribution* shall be used for the pro-rata distribution to holders of allowed general unsecured claims (collectively, the "*GUCs*"), provided, however, that any deficiency claims of Waterton shall be excluded from the GUCs.

*The GUC Professional Fees Contribution* shall be used for the exclusive payment on a pro rata basis of any unpaid fees and costs approved by the Court and owed, or that will be owed, to the Committee's retained professionals ("*Committee Professional Fees*"). For the avoidance of doubt, the GUC Professional Fees Contribution shall be *in addition to* the $325,000 allocated for the fees and costs of the Committee's Professionals already authorized, approved and paid, or to be paid, in accordance with the DIP Budget. Waterton shall have no obligation to fund Committee Professional Fees in excess of the GUC Professional Fees Contribution, plus the amounts already authorized and approved in the DIP Budget and the Committee shall waive its right to assert a claim against Waterton pursuant to Section 506(c) of the Bankruptcy Code or otherwise.

*The GUC Trust Funding* shall be used for the benefit of a trust (the "*GUC Trust*") to be established for the sole and exclusive benefit of the holders of GUCs, provided, however, that any deficiency claims of Waterton shall be excluded from the GUCs.

*The Debtors Professional Fees Contribution* shall be used for the exclusive payment of any fees and costs approved by the Court and owed, or that will be owed, to Young Conaway Stargatt & Taylor, LLP ("*YCST*"), the Debtors' bankruptcy counsel ("*YCST Fees*"). For the avoidance of doubt, the Debtors Professional Fees Contribution shall be *in addition to* the $300,000 allocated for the fees and costs of YCST already authorized, approved and paid, or

| | |
|---|---|
| | to be paid, in accordance with the DIP Budget. Waterton shall have no obligation to fund YCST Fees in excess of the Debtors Professional Fees Contribution, plus the amounts already authorized and approved in the DIP Budget, including YCST's share of the Wind-Down Cash to the extent available, and the Debtors shall waive their right to assert a claim against Waterton pursuant to Section 506(c) of the Bankruptcy Code or otherwise. |
| **Wind-Down Cash:** | All cash (the "*Wind-Down Cash*") remaining in the Debtors' bank accounts following (a) their full draw-down of all amounts authorized in the DIP Budget, and (b) the Sale shall be used to fund the wind-down of the Chapter 11 Cases. The Wind-Down Cash shall be used, <u>first</u>, to fund any unpaid allowed administrative expenses in the Chapter 11 Cases, <u>second</u>, to fund up to an additional $75,000 in YCST Fees, and <u>third,</u> as additional funding for the GUC Trust. To the extent that there is insufficient Wind-Down Cash to pay up to $75,000 in YCST Fees (a "*YCST Deficiency*"), the GUC Trust Funding shall be reduced up to a maximum of $25,000 and the Committee shall transfer an amount equal to the YCST Deficiency (up to a maximum of $25,000) to YCST as soon as practicable after a YCST Deficiency has been determined to exist. |
| **GUC Trust:** | The Dismissal Process Order (as defined below) shall provide for, *inter alia*, the establishment of the GUC Trust, which will, *inter alia*, (a) distribute, on a *pro rata* basis, the GUC Recovery Trust Fund Contribution to the holders of GUCs; (b) hold the beneficial interest in the GUC NPI (as defined below) on behalf of, and to distribute, on a *pro rata basis*, any Net Profit Interest ("*NPI*") to the holders of GUCs, and (c) except as otherwise set forth herein, investigate, commence and prosecute any claims or causes of action on behalf of the Debtors' estates. A trustee for the GUC Trust (the "*GUC Trustee*") shall be selected exclusively by the Committee. The GUC Trust shall initially be funded by the GUC Trust Funding and any remaining Wind-Down Cash, provided that when such funding has been exhausted, the GUC Trust shall be funded from the amount of any NPI received by the GUC Trust. |
| **GUC NPI:** | Upon the closing of the Sale, Waterton shall irrevocably convey and transfer to the GUC Trust a NPI in the Debtors' underground silver-gold mine located in Grant County, New Mexico (the "*Summit Mine*") in the amount of 7% per year for a period of five (5) years from the commencement of the re-start of the Summit Mine (the "*GUC NPI*"), with the terms and conditions of such interest to be agreed upon in an NPI agreement to be entered into between Waterton and the GUC Trustee (the "*NPI Agreement*") in form and substance reasonably satisfactory to the Committee and |

4

| | |
|---|---|
| | Waterton.  In the event of a sale, transfer or conveyance of the Summit Mine, the purchaser or transferee shall be bound by the terms of the NPI Agreement. |
| **Administrative Claims** | Waterton shall continue to advance to the Debtors, on a current and as needed basis, any undrawn amounts committed under the DIP Facility to ensure current payment of all allowed administrative expenses incurred in the Chapter 11 Cases in accordance with the DIP Budget, but in any event, within ten (10) business days following entry of the Dismissal Process Order, at the latest. Notwithstanding the foregoing, Waterton shall have no obligation to fund payments of allowed administrative expenses incurred by the professionals retained by: (a) the Committee (the "***Committee's Professionals***") in excess of the (i) GUC Professional Fees Contribution, and (ii) $325,0000 already authorized and approved in the DIP Budget for the Committee's Professionals (the "***Aggregate Committee's Professional Fees***"); and (b) the Debtors (the "***Debtors' Professionals***") in excess of the (i) Debtors Professional Fees Contribution, and (ii) $917,500 already authorized and approved in the DIP Budget for the Debtors' Professionals (comprised of $300,000 for YCST, $525,000 for Canaccord Genuity and $92,500 for the claims agent).  Waterton shall also consent to the use of up to $75,000 of the Wind-Down Cash to satisfy YCST Fees (the use of such cash together with subpart (b) in the immediately preceding sentence, the "***Aggregate Debtors' Professional Fees***").  Waterton and the Debtors agree that they will not raise or assert, or cause any other party to raise or assert any objection to an award by the Court of amounts sought by the Committee's Professionals for fees and expenses and payment to the Committee's Professionals of the Aggregate Committee's Professional Fees.  Waterton and the Committee agree that they will not raise or assert, or cause any other party to raise or assert any objection to an award by the Court of amounts sought by the Debtors' Professionals for fees and expenses and payment to the Debtors' Professionals of the Aggregate Debtors' Professional Fees.<br><br>In addition, after funding (a) the Committee Settlement Funding Obligations, (b) the Debtors Professional Fee Contribution, (c) any amounts required to be paid pursuant to the order approving the Sale (the "***Sale Order***"), and (d) the amounts set forth in the DIP Budget, Waterton and its affiliates shall have no further funding obligations in connection with the Debtors, their estates, the Chapter 11 Cases or any other proceeding involving the Debtors. |
| **Assignment of Claims and Causes of Action** | Upon entry of the Approval Order, the Debtors shall irrevocably transfer, convey and assign to the GUC Trust any and all claims and |

| | |
|---|---|
| **and Exculpation** | causes of action they have against any third party, including the Debtors' former and present officers, directors and employees, other than any claims or causes of action against Waterton, as further described below; <u>provided</u>, <u>however</u>, that (a) the Debtors (including their current officers, directors, employees, and attorneys), (b) the Committee (including its members in their capacity as such, its attorneys and financial advisor), and (c) Waterton (including its current officers, directors, employees, attorneys and other advisors) shall neither have, nor incur, any liability to any Entity (as defined in section 101(15) of the Bankruptcy Code, including any holder of a claim or interest or any other Entity) for any act taken or omitted to be taken, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the administration of the Debtors' property, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Chapter 11 Cases, through and including entry of the Dismissal Process Order; <u>provided</u> <u>further</u>, <u>however</u>, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a final order to have constituted fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of duty of loyalty. |
| **Structured Dismissal** | The Committee, the Debtors and Waterton shall agree to seek from the Court an order (the "***Dismissal Process Order***") authorizing a "structured dismissal" of the Chapter 11 Cases, with a motion seeking such relief to be filed as soon as practicable following entry into this term sheet and prior to Court approval of the Sale. |
| **Other Conditions; Agreements:** | • On the Settlement Payment Date, and provided that Waterton has made all required payments on such date, the Committee shall be bound by the Debtors' stipulations in favor of Waterton and its affiliates in the Final DIP Order.<br><br>• The Challenge Deadline as it applies to the Committee shall be extended through the Settlement Payment Date and provided that Waterton has made all required payments on such date, shall then be deemed to have expired.<br><br>• On the Settlement Payment Date, and provided that Waterton has made all required payments on such date, the Committee shall be deemed to have waived and relinquished any and all right to challenge in any manner the Senior Prepetition Indebtedness and the DIP Obligations or the liens securing such indebtedness and obligations and the Senior Prepetition Indebtedness and the DIP Obligations |

6

|  | shall be deemed to be allowed secured claims in the Chapter 11 Cases with the priority set forth in the Final DIP Order, <u>provided</u>, <u>however</u>, that any deficiency claims of Waterton shall be deemed excluded from the GUCs and Waterton shall not be entitled to any payment from the GUC Trust on account of any such claims.<br><br>• On the Settlement Payment Date, and provided that Waterton has made all required payments on such date, (a) the Committee and the Debtors shall be deemed to waive their rights to assert or prosecute any claims of any nature against Waterton, (b) Waterton shall be deemed to have released the Committee and its members (in their capacity as such) from any and all claims and causes of action arising in or relating to the Chapter 11 Cases; and (c) Waterton shall be deemed to waive its right to assert or prosecute any claims of any nature against the Debtors or their estates; provided that the waivers and releases in (a) – (b) shall not be deemed to apply to any party's obligations in this settlement term sheet, the APA, the Sale Order, the Approval Order, or the Dismissal Process Order.<br><br>• On the Settlement Payment Date, Waterton shall waive its rights to assert any deficiency claims with respect to any pre- or post-petition obligations of the Debtors or the Debtors' estates to Waterton.<br><br>• Upon the occurrence of the Settlement Payment Date and Waterton having made all required payments on such date, the Committee's right to, or raise any challenge to the rejection of the Pre-Petition Gold Supply Agreement or the Sale and the Sale Order (provided that the Sale Order is consistent with the provisions of this term sheet and otherwise in form reasonably satisfactory to the Committee), including, for the avoidance of doubt, Waterton's right to credit bid, shall then be deemed to have expired.<br><br>• The Committee, Waterton and the Debtors shall seek approval of this term sheet (or a more formal agreement to be negotiated by the parties that embodies the terms herein) in conjunction with the Sale, or in any other manner that the parties may mutually agree. The parties acknowledge and agree that time is of the essence and they shall seek a Bankruptcy Court order approving this settlement to be entered within 10 days of the parties' agreement to the terms hereof. |

7

|  | <ul><li>The Approval Order shall provide that its terms and conditions shall survive conversion of the Chapter 11 Cases to chapter 7 and shall be binding on any chapter 11 or 7 trustee that may be appointed or elected.</li><li>Following the Sale closing, Waterton shall cooperate to the extent reasonably requested by the Debtors in connection with any objections to claims to be filed by the Debtors (the "*Claims Objections*") and generally in the wind-down of the Chapter 11 Cases, and shall use commercially reasonable efforts to request former officers, directors, employees, agents or representatives of the Debtors employed by Waterton or otherwise, to cooperate to the extent that the Debtors reasonably request Waterton to make such request to any of the foregoing and deems such persons necessary to provide any information or affidavits, or appear at any hearing relating to the Claims Objections or the wind-down of the Chapter 11 Cases; <u>provided</u>, <u>however</u>, that Waterton shall have no financial obligation or continuing funding obligation with respect to the Debtors and in the event such cooperation requires Waterton, its employees or any other party to incur costs or expenses in connection therewith such costs and expenses shall be borne by the Debtors.</li><li>The Debtors shall use their best efforts, in consultation with the Committee, to file, prosecute and resolve certain Claims Objections as soon as practicable and prior to dismissal of the Chapter 11 Cases.</li></ul> |
|--|--|

## BASIS FOR APPROVAL OF THE SETTLEMENT

2. Bankruptcy Rule 9019(a) provides the Bankruptcy Court with the authority to approve a compromise or settlement[4] and, especially in the bankruptcy context, the settlement of time-consuming and burdensome litigation is encouraged.[5] In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the

---

[4] Fed. R. Bankr. P 9019(a).

[5] *See In re Penn Cent. Trans. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims[.]'") (quoting *In re Protective Comm. for Indep Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

Third Circuit (the "**Third Circuit**") has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]."[6] Further, the Third Circuit has enumerated the following four-factor test to be used in deciding whether a settlement should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[7]

3. Approval of a proposed settlement is within the "sound discretion" of the bankruptcy court[8] and a bankruptcy court should not substitute its judgment for that of the debtor.[9] The court "is not to decide the numerous questions of law or fact raised by [litigation], but rather [should] canvas the issues to see whether the settlement 'falls below the lowest point in the range of reasonableness.'"[10]

4. The Debtors and the Committee believe that a consensual resolution, as provided by the Settlement, is reasonable and in the best interest of the Debtors, their estates, their creditors, and other parties in interest. Moreover, a review of the above-referenced factors demonstrates that the terms of the Settlement are reasonable under the circumstances. Litigation

---

[6] *See In re Penn Cent. Trans. Co.*, 596 F.2d at 1153; *see also In re Marvel Enter. Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del 1997)) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

[7] *In re RFE Indus., Inc.*, 283 F.3d 159, 165 (3d Cir. 2002) (citation omitted).

[8] See *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Meyers), 91 F.3d 389, 393 (3d Cir. 1996).

[9] See *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803.

[10] *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2 Cir. 1972).

with the Committee would be a time-consuming and costly endeavor, dissipating the Debtors' limited resources, derailing the Sale, and virtually guaranteeing that the Chapter 11 Cases are converted, leaving no funds available for creditor distributions.  On the other hand, the resolution embodied in the Settlement will allow the Sale to proceed, which is the only viable means of creating value and moving these cases to their conclusion.  In addition, pursuant to its terms, the Settlement provides for a meaningful recovery to holders of GUCs, which they would otherwise likely not be entitled to.  Finally, the Settlement provides for a consensual resolution of the Chapter 11 Cases through an orderly structured dismissal process upon notice to all of the Debtors' creditors and stakeholders.  Accordingly, the Settlement is to the benefit of the Debtors' estates, creditors, and all interested parties.

5. The Settlement was negotiated at arm's length and contains no negative or adverse consequences to the Debtors' estates, and the Debtors and the Committee submit that the terms are fair and reasonable and in the best interests of the Debtors and their estates.  For these reasons, the Debtors and the Committee respectfully request that the Court approve the Settlement pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code as part of the Sale.

## **NOTICE**

6. Notice of this Supplement shall be provided to:  (i) the United States Trustee for the District of Delaware; (ii) counsel to Waterton Global Value, L.P., in its capacity as the Senior Pre-Petition Lender; (iii) Sandstorm Gold (Barbados) Ltd., in its capacity as the second lien pre-petition lender; (iv) counsel to Waterton Global Value, L.P., by its investment manager, Altitude Management Limited, in its capacity as the debtor-in-possession lender; (v) counsel to the Committee; and (vi) all parties that, as of the filing of this Supplement, have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the

nature of the relief requested, the Debtors and the Committee respectfully submit that no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors and the Committee respectfully request that this Court approve the Settlement, and grant such other and further relief as it deems just, proper, and equitable.

Dated: January 29, 2016
       Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Ian J. Bambrick*
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Kenneth J. Enos (No. 4544)
Ian J. Bambrick (No. 5455)
1000 N. King Street
Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

**POLSINELLI PC**

*/s/ Shanti M. Katona*
Christopher A. Ward (No. 3877)
Shanti M. Katona (No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921

-and-

**SQUIRE PATTON BOGGS (US) LLP**
Norman N. Kinel, Esq.
Nava Hazan, Esq.
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

-and-

Stephen Lerner, Esq.
221 E. Fourth St., Ste. 2900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201

*Counsel to the Official Committee of Unsecured Creditors*

01:18202454.7