# Exhibit II

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Santa Fe Gold Corp. *et al.*[1] | ) | Case No. 15-11761 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Re: Docket ~~No~~Nos. ~~—~~75, 141, 147, 148, 156, 159, 208, 253, 254 and 284** |

## ORDER (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, ~~AND~~ (C) APPROVING SETTLEMENT BETWEEN AND AMONG THE DEBTORS, WATERTON AND THE COMMITTEE, AND (D) GRANTING RELATED RELIEF

Upon the motion, dated September 25, 2015 [Docket No. ~~—~~75] (the "***Motion***")[2], of Santa

Fe Gold Corp. and its affiliated debtors and debtors in possession (collectively, the "***Debtors***") in

the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), for entry of an order, pursuant

to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy***

***Code***"), Rules 2002, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "***Bankruptcy Rules***") and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the

United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), seeking,

among other things, approval of the sale (the "***Sale***") of all of the right, title and interest in the

Debtors' properties and related assets (the "***Acquired Assets***"), free and clear of all liens, claims

(including, without limitation, as defined in section 101(5) of the Bankruptcy Code), rights or

claims based on any successor or transferee liability, interests, encumbrances, rights, remedies,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Santa Fe Gold Corporation (4315); Azco Mica, Inc. (8577); The Lordsburg Mining Company (4474); and Santa Fe Gold (Barbados) Corporation (N/A). The Debtors' mailing address is 1219 Banner Mine Road, Lordsburg, New Mexico 88045.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, or, if not defined in the Motion, shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined herein).

restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whenever arising, whether at law or in equity, and granting certain related relief; and the Bidding Procedures Hearing having been held on October ~~19,~~20, 2015; and this Court having entered the Bidding Procedures Order [Docket No. ~~—~~141] on ~~[_____],~~October 20, 2015, which, among other things, approved the Bidding Procedures; and ~~the Auction having been held on December 15, 2015~~this Court having entered an amendment to the Bidding Procedures Order [Docket No. 156] on October 27, 2015; and the Debtors, through their investment banker, Canaccord Genuity Inc. ("*CGI*"), having marketed the Acquired Assets in accordance with the Bidding Procedures Order~~; and at the conclusion of the Auction, [_____]~~ and the Bidding Procedures; and the Stalking Horse Bidder having been chosen as the Successful Bidder (the "*Successful Bidder*" or the "*Purchaser*"); and the Debtors having agreed to enter into and consummate the Asset Purchase Agreement attached hereto as Exhibit ~~A~~B with the Purchaser (such Asset Purchase Agreement, the "*Asset Purchase Agreement*"); and a status conference having been held on January 25, 2016; and a supplement to the Motion having been filed on January 29, 2016 [Docket No. 284] (the "*Supplement*"), which set forth the terms of a settlement (the "*Settlement*") among the Debtors, the Purchaser and the Committee (as defined below); and the Sale Hearing having been held on ~~December 18, 2015 in accordance with the Bidding Procedures Order~~February 5, 2016; and upon the record of the Bidding Procedures Hearing and the Sale Hearing, and all of the proceedings before this Court; and this Court having reviewed the Motion and the Supplement and any objections thereto and having found and determined that the relief sought in the Motion and the Supplement, and entry of this Order, is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon and sufficient cause appearing ~~therefore~~therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:[3]**

A. **Jurisdiction, Venue and Core Proceeding:**  This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  The matters are core proceedings under 28 U.S.C. § 157(b)(2).  Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in this district and before this Court was proper as of the Petition Date and continues to be proper.

B. **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion and the Supplement are 105, 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9008, 9014, and 9019 of the Bankruptcy Rules and Rules 2002-1 and 6004-1 of the Local Rules.  The consummation of the transactions contemplated by the Motion, the Supplement, the Asset Purchase Agreement and this Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

C. **Appointment of Committee.**  On September 11, 2015, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Committee") in these Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

D. **DIP Order.**  On October 20, 2015, this Court entered the *Final Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash*

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be constructed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

*Collateral, (III) Granting Liens, Including Priming Liens, and Superpriority Claims, (IV)*
*Granting Adequate Protection, and (V) Granting Related Relief* [Doc. No. 139] (the "DIP
Order"). Amendments to the DIP Order were entered on December 10, 2015 [Docket No. 221],
and January 25, 2016 [Docket No. 279].

     E. ~~C.~~ **Notice.** As evidenced by the affidavits of service and publication filed with

the Court, proper, timely, adequate, and sufficient notice of the Motion, the Supplement, the

Bidding Procedures, the Bidding Procedures Hearing, the Bidding Procedures Order, the Sale

Hearing, the procedures for assumption and assignment of Assumed Contracts (as defined in

paragraph ~~W~~X below), the Proposed Cure Payments, the Sale and all transactions contemplated

therein or in connection therewith, and all deadlines related thereto, was given and no further

notice need be provided. A reasonable opportunity to object or be heard regarding the relief

granted by this Order has been afforded to those parties entitled to notice pursuant to the

Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

     F. ~~D.~~ Actual written notice of the Motion, the Bidding Procedures, the Bidding

Procedures Hearing, the Auction, the Sale Hearing, the procedures for assumption and

assignment of contracts and leases, the Proposed Cure Payments, the Sale and all transactions

contemplated therein or in connection therewith, and all deadlines related thereto has been given

to all interested persons and entities, including, without limitation: (i) all entities that assert any

Lien, Claim or Interest (each as defined below) in the Acquired Assets; (ii) all parties to the

Executory Contracts and Unexpired Leases; (iii) all parties to the Assumed Contracts assumed

and sold and assigned pursuant to this Order; (iv) all governmental taxing authorities that have or

as a result of the Sale may have Claims, contingent or otherwise, against the Debtors; (v) all state

and local taxing authorities having jurisdiction over any of the Acquired Assets, including the

Internal Revenue Service; (vi) all state and local governmental agencies and environmental agencies in any jurisdiction where the Debtors own or have owned or used real property; (vii) the Environmental Protection Agency; (viii) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (ix) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (x) all interested governmental, pension, environmental and other regulatory entities; (xi) the Office of the Attorney General of New Mexico; (xii) the Office of the Attorney General of Delaware; (xiii) the office of the Attorney General of Arizona; (xiv) any other applicable state attorneys general; (xv) the Office of the United States Trustee for the District of Delaware; (xvi) the United States Department of Justice; (xvii) all entities that in the 18 months prior to the Petition Date expressed to the Debtors an interest in purchasing all or a substantial portion of the Acquired Assets; (xviii) counsel to the Stalking Horse Bidder and all other notice parties reasonably requested by the Stalking Horse Bidder; and (xix) all parties required to be provided notice pursuant to the Bidding Procedures Order.  Other parties interested in bidding on the Acquired Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Acquired Assets.  Actual written notice of the Supplement was provided to all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002.  The foregoing constitutes proper, timely, adequate, and sufficient notice under the particular circumstances of these Chapter 11 Cases, and no further notice need be provided.

G.    E.  The Publication Notice was published in *The Wall Street Journal* (National Edition) and *The Mining Journal*.  See Docket Nos. [___].177-178.  Such publication notice was

compliant with the Bidding Procedures Order, as amended, and was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

      H.   F. **Extensive Efforts by Debtors.**  Prior to and since the Petition Date, the Debtors worked with their counsel and ~~financial advisors~~CGI to implement a viable transaction that would allow them to maximize the value of the Acquired Assets.  The Sale is the result of the Debtors' efforts in seeking to maximize recoveries to the Debtors' estates, for the benefit of the Debtors' stakeholders.

      I.   G. **Business Justification.**  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale. In light of the circumstances of these Chapter 11 Cases, time is of the essence in (i) consummating the Sale and all related transactions, (ii) preserving the value of the Debtors' assets, and (iii) minimizing the widespread and adverse economic consequences to the Debtors, their estates, and their creditors.

      J.   H. **Bidding Procedures Order.**  On ~~[_____]~~October 20, 2015, this Court entered the Bidding Procedures Order approving the Bidding Procedures.  On October 20, 2015, this Court entered an amendment to the Bidding Procedures Order.  The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

      K.   I. **Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, (a) the Debtors have adequately marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order; (b) a reasonable opportunity has been

given to any interested party to make the highest and best offer for the Acquired Assets; (c) the consideration provided by the Purchaser in the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets; (d) the consideration provides fair and reasonable consideration for the Acquired Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Acquired Assets than would be provided by any other practically available alternative; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L. J. **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion, the Supplement, and all relief requested therein has been afforded to all interested parties.

M. K. **Acquired Assets are Property of the Estate.**  The Acquired Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

N. L. **Sale in Best Interests.**  The actions represented to be taken by the Debtors and the Purchaser are appropriate under the circumstances of these Chapter 11 Cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest.  Approval of the Asset Purchase Agreement and of the Sale and all related transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

O. ~~M.~~ **No *Sub Rosa* Plan.**  The consummation of the Sale outside of a chapter 11 plan pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Sale and the transactions contemplated therein do not constitute a *sub rosa* plan.

P. ~~N.~~ **Arm's-Length Sale.**  The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith were negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors, their insiders and affiliates, nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under section 363(n) of the Bankruptcy Code.

Q. ~~O.~~ **Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

R. ~~P.~~ **Prompt Consummation.**  The Sale and the transactions related thereto must be approved and consummated as promptly as practicable in order to preserve the value of the Acquired Assets.

S. ~~Q.~~ **Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, (iii) has taken all corporate action

necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

**T.** ~~R.~~ **Free and Clear Findings Required by the Purchaser.** The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale if the Assets were not being sold to the Purchaser pursuant to section 363(f) of the Bankruptcy Code, free and clear, except for Permitted Liens and Assumed Liabilities, of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, charges, rights of first refusal, hypothecations, encumbrances, royalties, easements, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, subleases, leases or conditional sale arrangements (collectively, the "*Liens*"), (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action (whether in law or in equity), Proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "*Claims*"), and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and pension claims, in each case, whether known or unknown,

choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "*Interests*").  Except for Permitted Liens and Assumed Liabilities, the Sale shall be free and clear of, and the Purchaser shall not be responsible for, any Liens, Claims or Interests, including, without limitation, in respect of the following: (i) any rights or Claims based on any successor or transferee liability, (ii) any Liens, Claims or Interests that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or the Purchaser's interest in the Acquired Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust and security interests; (v) intercompany loans and receivables between the Debtors and any Debtor or non-Debtor affiliate; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act,

as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "***COBRA***"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (viii) the Federal Mine Safety and Health Act of 1977 or its associated regulations; (ix) penalties of any kind whatsoever assessed against the Debtors by the United States Department of Labor's Mine Safety and Health Administration; (x) any bulk sales or similar law; (xi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing; (xii) any Executory Contract or Unexpired Lease that is not an Assumed Contract that will be assumed and assigned pursuant to this Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement.  A sale of the Acquired Assets other than one free and clear of all Liens, Claims, and Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated.  Therefore, the Sale contemplated by the Asset Purchase Agreement free and clear of all Liens, Claims and Interests, except for Permitted Liens and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

U. ~~S.~~ **Binding and Valid Transfer.**  The transfer of the Acquired Assets to the Purchaser will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Permitted Liens and Assumed Liabilities, will vest the Purchaser with all right, title, and interest

of the Debtors to the Acquired Assets free and clear of all Liens, Claims, and Interests and any liabilities of the Debtors.

V. ~~T.~~ **Satisfaction of 363(f) Standards.**  The Debtors may sell the Acquired Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens, Claims and Interests, and non-Debtor parties to the Assumed Contracts who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  In all cases, each such person with Liens, Claims or Interests in the Acquired Assets is enjoined from taking any action against the Purchaser, the Purchaser's affiliates or any agent of the foregoing to recover any such Lien, Claim or Interest.

W. ~~U.~~ **Necessity of Order.**  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions without all of the relief provided for in this Order (including, but not limited to, that the transfer of the Acquired Assets to the Purchaser be free and clear of all Liens, Claims and Interests).  The consummation of the transactions pursuant to this Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

X. ~~V.~~ **Assumed Contracts.**  The Debtors have demonstrated that it is an exercise of their sound business judgment to sell, assume and assign the Executory Contracts and Unexpired Leases listed on Schedule ~~[___]~~2.1(f) of the Asset Purchase Agreement (collectively, the "***Assumed Contracts***", and individually, an "***Assumed Contract***") to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed

Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest.  The Assumed Contracts being assigned to the Purchaser are an integral part of the Acquired Assets being purchased by the Purchaser, and, accordingly, such assumption and assignment of the Assumed Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' bankruptcy estates.

Y.  W. **Cure and Adequate Assurance.**  The Debtors have cured or the Debtors have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the ClosingPurchaser shall be liable for any cure amount under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code.  The Proposed Cure Payments or any other cure amount reached by agreement after a Cure Payment Objection are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such Assumed Contracts.  The Purchaser's promise to perform the obligations under the Assumed Contracts arising after the Closing shall constitute adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  All counterparties to the Assumed Contracts who did not file a Cure Payment Objection or an objection to the assumption and assignment of the Assumed Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser.  The objections of all counterparties to the Assumed Contracts that did file an objection to the assumption and assignment of such parties' respective Assumed Contract or Proposed Cure Payment relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were considered by this Court, and are overruled on the merits with prejudice.  This Court finds that with respect to all

such Assumed Contracts the payment of the Proposed Cure Payments in accordance with the terms of the Asset Purchase Agreement and Bidding Procedures Order is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code. Accordingly, all of the requirements of section 365(b) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the Debtors to the Purchaser of each of the Assumed Contracts.  To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Acquired Assets.

Z. ~~X.~~**Unenforceability of Anti-Assignment Provisions.**  Anti-assignment provisions in any Assumed Contract shall not restrict, limit, or prohibit the assumption, assignment, and sale of the Assumed Contracts and should be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

AA.  **Santa Fe Gold (Barbados) Corporation.**  On October 2, 2015, Debtor Santa Fe Gold (Barbados) Corporation (the "*Barbados Seller*") filed its *Schedules of Assets and Liabilities* and *Declaration Concerning Debtors' Schedules* [Each at Docket No. 98].  As evidenced on *Schedule A – Real Property* thereto, the Barbados Seller does not own any real property and, accordingly, does not own any real property in the United States.

BB.  ~~Y.~~**Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

CC. Z. Entry of this Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

**ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1. **Motion is Granted.** The Motion, as supplemented by the Supplement, is granted and the relief requested therein with respect to the Sale and the Settlement is granted and approved in its entirety, as set forth herein.

2. **Objections are Overruled.** Any objections to the entry of this Order or to the relief granted herein or the relief requested in the Motion or the Supplement, including any objections to the Proposed Cure Payments or the assumption and assignment of any Assumed Contracts, that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

3. **Approval.** The Asset Purchase Agreement, and all the terms and conditions thereof, is approved. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the related transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this Order. The Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Asset Purchase Agreement, together with all additional instruments and documents that the Debtors or the Purchaser deem necessary or appropriate to implement the Asset Purchase Agreement and effectuate the transactions contemplated therein, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to

Purchaser's possession the Acquired Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement.

4.      **Binding Effect of Order.**  This Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Liens, Claims and Interests, all counterparties to the Assumed Contracts, all successors and assigns of the Purchaser, each of the Debtors and their ~~Affiliates~~affiliates and subsidiaries, the Acquired Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code and this Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Subject to the terms and conditions of the Asset Purchase Agreement, the terms of this Order shall apply in the event the Sale under the Asset Purchase Agreement is consummated by and under any chapter 11 plan, and may be incorporated into any confirmation order.  Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Order.

5.      **Injunction.**  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Purchaser in accordance with the Asset Purchase Agreement and this Order. Following the Closing, except for persons entitled to enforce Assumed Liabilities and Permitted Liens, all Persons (including, but not limited to, (i) the Debtors and/or their respective successors (including any trustee), (ii) creditors, (iii) investors, (iv) current and former employees and shareholders, (v) administrative agencies, (vi) governmental units, (vii) secretaries of state, (viii) federal, state, and local officials, including those maintaining any authority relating to any

environmental, health and safety laws, and (ix) the successors and assigns of each of the foregoing) holding Liens, Claims or Interests in the Acquired Assets or against the Debtors in respect of the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Liens, Claims or Interests of any kind or nature whatsoever against the Purchaser or any ~~Affiliate~~affiliate of the Purchaser or any of their respective property, successors and assigns, or the Acquired Assets, as an alleged successor or on any other grounds.  No Person shall assert, and the Purchaser and the Acquired Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Debtors, or any obligation of any other party, under or with respect to, any Acquired Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of the Debtors that is not an Assumed Liability.

6.    **General Assignment.**  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interests in the Acquired Assets and a bill of sale transferring good and marketable title in the Acquired Assets to the Purchaser free and clear of all Liens, Claims and Interests, except for the Permitted Liens and Assumed Liabilities.  Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.    **Transfer Free and Clear.**  Except for the Permitted Liens and Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Acquired Assets

shall be transferred to the Purchaser as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Liens, Claims, and Interests of any Person, including, without limitation, all such Liens, Claims, and Interests specifically enumerated in paragraph ~~R~~T of this Order, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the Petition Date, whether known or unknown, occurring or arising prior to such transfer, with all such Liens, Claims and Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien, Claim or Interest claims or may claim a Lien, Claim or Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto.

8.     **Valid Transfer.**  The transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities.

9.     ~~Exculpation and~~ **Release.**  Neither the Purchaser nor any of its affiliates, successors, and assigns, shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Asset Purchase Agreement and the entry into and consummation of the Sale, except as expressly provided in the Asset Purchase Agreement and this Order.

10.     **Direction to Release Interests.**  Upon the Closing, each of the Debtors' creditors and any other holder of a Lien, Claim or Interest is authorized and directed to execute such

Contract is an executory contract within the meaning of section 365 of the Bankruptcy Code. The Cure Payments amounts listed on Schedule [———]4.15(c) of the Asset Purchase Agreement, or any other cure amount reached by agreement after a Cure Payment Objection, reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts, and no other amounts are or shall be due to the non-Debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts.

20.    Except as provided in the Asset Purchase Agreement or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Contract, and all holders of such claims arising from and after Closing under any Assumed Contract are forever barred and estopped from asserting any claims under any Assumed Contract against the Debtors, their successors or assigns, and their estates.

21.    The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

22.    **No Successor Liability.**  Except for the Assumed Liabilities and Cure Amounts, to be paid solely to the extent provided for in the Asset Purchase Agreement and this Sale Order, neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Lien, Claim or Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Acquired Assets prior to the Closing.  The Purchaser is not and shall not be deemed a "successor" to the Debtors or their estates, have, de facto or otherwise, merged with or into the Debtors or be a mere continuation or

Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title

VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National

Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the

Americans with Disabilities Act of 1990, or (h) COBRA; (vi) environmental liabilities, debts,

Claims, or obligations arising from conditions first existing on or prior to the Closing (including,

without limitation, the presence of hazardous, toxic, polluting, or contamination substances or

wastes), which may be asserted on any basis, including, without limitation, under the

Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et

seq.; (vii) any liabilities, debts, or obligations of or required to be paid by the Debtors for any

taxes of any kind for any period; (viii) any liabilities, debts, commitments, or obligations for any

taxes relating to the operation of the Acquired Assets prior to the Closing; (ix) any bulk sale law;

and (x) any litigation.

24.    **Environmental Matters.**  Nothing in this Order or the Asset Purchase

Agreement releases, nullifies, precludes, or enjoins the enforcement of any environmental

liability to a governmental unit that any entity would be subject to as the owner or operator of the

Acquired Assets after the Closing Date (as defined in the Asset Purchase Agreement).  Nothing

in this Order or the Asset Purchase Agreement authorizes the transfer or assignment to the

Purchaser of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e)

approval, or the discontinuation of any obligation thereunder, without compliance with all

applicable legal requirements under non-bankruptcy law governing such transfers or

assignments.  Notwithstanding the foregoing sentence, nothing in this Order shall (i) be

interpreted to deem the Purchaser as the successor to the Debtors under any successor liability

doctrine with respect to any liabilities under environmental statutes or regulations for penalties

for days of violation prior to the Closing Date or for liabilities relating to off-site disposal of waste by the Debtors prior to the Closing Date; (ii) create for any governmental unit any substantive right that does not already exist under law; or (iii) be deemed or construed to be an admission of liability by the Debtors.

25. ~~24.~~ **Fair Consideration.** The consideration provided by the Purchaser for the Acquired Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sale may not be avoided under section 363(n) of the Bankruptcy Code. The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Debtors nor the Purchaser have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Purchaser. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

26. **Global Settlement Among the Debtors, the Purchaser and the Committee.** In order to resolve any objections to the Sale and this Order, and Waterton's[4] claims asserted in

---

[4] "*Waterton*" shall mean, collectively, the Senior Pre-Petition Lender, the DIP Lender (each as defined in the DIP Order), the Purchaser, and each of their affiliates.

these Chapter 11 Cases, raised by the Committee, the Purchaser, the Debtors, the Committee and Waterton hereby agree and this Court orders as follows:

(a) *Settlement Funding Obligations.* On the earlier of (such date, the "***Settlement Payment Date***") (I) the business day after the Proposed Dismissal Process Order (as defined below) becomes a final order and (II) the later of (x) the Closing and (y) five (5) business days of the entry of this Order: (a) the Purchaser shall deposit the following cash amounts in a trust account specifically designated by the Committee: (i) $500,000 (the "***GUC Recovery Trust Fund Contribution***"), (ii) $325,000 (the "***GUC Professional Fees Contribution***"), and (iii) $100,000 (the "***GUC Trust Funding***", and collectively with the GUC Recovery Trust Fund Contribution and the GUC Professional Fees Contribution, the "***Committee Settlement Funding Obligations***") and (b) the Purchaser shall deposit $75,000 in an account specifically designated by the Debtors (the "***Debtors Professional Fees Contribution***").

(b) *Use of Funds.* The GUC Recovery Trust Fund Contribution shall be used for the *pro rata* distribution to holders of allowed general unsecured claims (collectively, the "***GUCs***"), provided, however, that any deficiency claims of Waterton shall be excluded from the GUCs. The GUC Professional Fees Contribution shall be used for the exclusive payment on a *pro rata* basis of any unpaid fees and costs approved by this Court and owed, or that will be owed, to the Committee's retained professionals ("***Committee Professional Fees***"). For the avoidance of doubt, the GUC Professional Fees Contribution shall be in addition to the $325,000 allocated for the fees and costs of the Committee's Professionals already authorized, approved and paid, or to be paid, in accordance with the Approved Budget [See Docket 185, Ex. 1]. Waterton shall have no obligation to fund the Committee's Professional Fees in excess of the GUC Professional Fees Contribution, plus the amounts already authorized and approved in the Approved Budget, and the Committee shall waive its right to assert a claim against Waterton pursuant to Section 506(c) of the Bankruptcy Code, or otherwise. The GUC Trust Funding shall be used for the benefit of the GUC Trust to be established by the Committee for the sole and exclusive benefit of the holders of GUCs, provided, however, that any deficiency claims of Waterton shall be excluded from the GUCs. The Debtors Professional Fees Contribution shall be used for the exclusive payment of any fees and costs approved by this Court and owed, or that will be owed, to Young Conaway Stargatt & Taylor, LLP ("***YCST***"), the Debtors' bankruptcy counsel ("***YCST Fees***"). For the avoidance of doubt, the Debtors Professional Fees Contribution shall be in addition to the $300,000 allocated for the fees and costs of YCST already authorized, approved and paid, or to be paid, in accordance with the Approved Budget. Waterton shall have no obligation to fund YCST Fees in excess of the Debtors Professional Fees Contribution, plus the amounts already authorized and approved in the Approved Budget, including YCST's share of the Wind-Down Cash to the extent available, and the Debtors shall waive their right to assert a claim against the Senior Pre-Petition Lender or the DIP Lender pursuant to Section 506(c) of the Bankruptcy Code, or otherwise.

(c) *Wind-Down Cash*.  All cash (the "***Wind-Down Cash***") remaining in the Debtors' bank accounts or within the Debtors' possession and/or control following (a) their full draw-down of all amounts authorized in the Approved Budget, and (b) the Closing, shall be used to fund the wind-down of these Chapter 11 Cases.  The Wind-Down Cash shall be used, first to fund any unpaid allowed administrative expenses in these Chapter 11 Cases, second to fund up to an additional $75,000 in YCST Fees, and third as additional funding for the GUC Trust.  To the extent that there is insufficient Wind-Down Cash to pay up to $75,000 in YCST Fees (a "***YCST Deficiency***"), the GUC Trust Funding shall be reduced up to a maximum of $25,000 and the Committee shall transfer an amount equal to the YCST Deficiency (up to a maximum of $25,000) to YCST as soon as practicable after a YCST Deficiency has been determined to exist.

(d) *GUC NPI*.  Upon the Closing, the Purchaser shall irrevocably convey and transfer to the GUC Trust, upon its establishment, a Net Profit Interest ("***NPI***") in the Debtors' underground silver-gold mine located in Grant County, New Mexico (the "***Summit Mine***") in the amount of 7% per year for a period of five (5) years from the commencement of the re-start of the Summit Mine (the "***GUC NPI***"), with the terms and conditions of such interest to be agreed upon in an agreement (the "***NPI Agreement***") to be entered into between the Purchaser and the trustee for the GUC Trust (the "***GUC Trustee***") in form and substance reasonably satisfactory to the Committee and the Purchaser.  In the event of a sale, transfer or conveyance of the Summit Mine, the purchaser or transferee shall be bound by the terms of the NPI Agreement.  The Purchaser must give notice of any subsequent transfer of the Summit Mine, as well as the contact information of the subsequent owner or purchaser, to the GUC Trustee.

(e) *Administrative Claims*.  The DIP Lender shall continue to advance to the Debtors, on a current and as needed basis, any undrawn amounts committed under the DIP Facility (as defined in the DIP Order) to ensure current payment of all allowed administrative expenses incurred in these Chapter 11 Cases in accordance with the Approved Budget, but in any event, within ten (10) business days following entry of the Proposed Dismissal Process Order at the latest.  Notwithstanding the foregoing, Waterton shall have no obligation to fund payments of allowed administrative expenses incurred by the professionals retained by: (a) the Committee (the "***Committee's Professionals***") in excess of the (i) GUC Professional Fees Contribution, and (ii) $325,0000 already authorized and approved in the Approved Budget for the Committee's Professionals (the "***Aggregate Committee's Professional Fees***"); and (b) the Debtors (the "***Debtors' Professionals***") in excess of the (i) Debtors Professional Fees Contribution, and (ii) $917,500 already authorized and approved in the Approved Budget for the Debtors' Professionals (comprised of $300,000 for YCST, $525,000 for CGI and $92,500 for American Legal Claim Services, LLC).  Waterton shall also consent to the use of up to $75,000 of the Wind-Down Cash to satisfy YCST Fees (the use of such cash together with subpart (b) in the immediately preceding sentence, the "***Aggregate Debtors' Professional Fees***").  Waterton and the Debtors agree that they will not raise or assert, or cause any other party to raise or assert any objection to an award by this Court of amounts sought by the Committee's Professionals for fees and expenses and payment to the Committee's Professionals of the Aggregate Committee's Professional Fees.  Waterton and the

Committee agree that they will not raise or assert, or cause any other party to raise or assert any objection to an award to the Court of amounts sought by the Debtors' Professionals for fees and expenses and payment to the Debtors' Professionals of the Aggregate Debtors' Professional Fees.  In addition, after funding (a) the Committee Settlement Funding Obligations, (b) the Debtors Professional Fees Contribution, (c) any amounts required to be paid pursuant to this Order, and (d) the amounts set forth in the Approved Budget, the Purchaser and its affiliates shall have no further funding obligations in connection with the Debtors, their estates, these Chapter 11 Cases or any other proceeding involving the Debtors.

(f)    *Assignment of Claims and Causes of Action*.  The Debtors hereby irrevocably transfer, convey and assign to the GUC Trust any and all claims and causes of action they have against any third party, including the Debtors' former and present officers, directors and employees, other than any claims or causes of action against Waterton, as further described below; provided, however, that the Debtors (including their current officers, directors, employees, and attorneys) and the Committee (including its members in their capacity as such, its attorneys and financial advisor) shall neither have, nor incur, any liability to any Entity (as defined in section 101(15) of the Bankruptcy Code, including any holder of a claim or interest or any other Entity) for any act taken or omitted to be taken, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Date in connection with, relating to, or arising out of, these Chapter 11 Cases, the administration of the Debtors' property, or any contract, instrument, release, or other agreement or document created or entered into in connection with these Chapter 11 Cases, through and including entry of the Proposed Dismissal Process Order; provided further, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a final order to have constituted fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of duty of loyalty.

(g)    *Structured Dismissal Motion*.  The Debtors, Waterton and the Committee agree that on or prior to February 9, 2016, the Debtors shall file a motion (the "***Structured Dismissal Motion***"), which shall seek from this Court, *inter alia*, entry of an order (the "***Proposed Dismissal Process Order***") authorizing and implementing a process for the structured dismissal of these Chapter 11 Cases.  The Structured Dismissal Motion and the Proposed Dismissal Process Order shall be acceptable to the Committee and Waterton.  The Proposed Dismissal Order shall include the agreed-upon exculpation language set forth in paragraph 26(f) of this Order.

(h)    *GUC Trust*.  The Proposed Dismissal Process Order shall provide for, *inter alia*, the establishment of the GUC Trust, which will, *inter alia*, (a) distribute, on a *pro rata* basis, the GUC Recovery Trust Fund Contribution to the holders of GUCs; (b) hold the beneficial interest in the GUC NPI on behalf of, and to distribute, on a *pro rata basis*, any NPI to the holders of GUCs, and (c) except as otherwise set forth herein, investigate, commence and prosecute any claims or causes of action on behalf of the Debtors' estates.  The GUC Trustee shall be selected exclusively by the Committee.  The GUC Trust shall initially be funded by the GUC Trust Funding and any remaining Wind-Down Cash (as

defined below), provided that when such funding has been exhausted, the GUC Trust shall be funded from the amount of any NPI received by the GUC Trust.

(i) *Cooperation*.  Following the Closing, Waterton shall cooperate to the extent reasonably requested by the Debtors in connection with any objections to claims to be filed by the Debtors (the "***Claims Objections***") and generally in the wind-down of these Chapter 11 Cases, and shall use commercially reasonable efforts to request former officers, directors, employees, agents or representatives of the Debtors employed by Waterton or otherwise, to cooperate to the extent that the Debtors reasonably request Waterton to make such request to any of the foregoing and deems such persons necessary to provide any information or affidavits, or appear at any hearing relating to the Claims Objections or the wind-down of these Chapter 11 Cases; provided, however, that Waterton shall have no financial obligation or continuing funding obligation with respect to the Debtors and in the event such cooperation requires Waterton, its employees or any other party to incur costs or expenses in connection therewith such costs and expenses shall be borne by the Debtors.

(j) *Claims Objections*.  The Debtors shall use their best efforts, in consultation with the Committee, to file, prosecute and resolve certain Claims Objections as soon as practicable and prior to dismissal of these Chapter 11 Cases.

(k) *Committee Challenge Period*.  The Challenge Deadline (as defined in the DIP Order) as it applies to the Committee shall be extended through the Settlement Payment Date and provided that Waterton has made all required payments on such date, shall then be deemed to have expired.

27.    The Settlement is approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

28.    **Release Agreement.**  The Release Agreement set forth in the attached Exhibit A is hereby approved in its entirety, is self-executing and shall be in full force and effect at the times and on the terms and conditions set forth therein without further action by this Court or the parties thereto.  Exhibit A is expressly incorporated into this Order.

29.    25. **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Acquired Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this

Order; (iii) protect the Purchaser, any of the Purchaser's affiliates, or any agent of the foregoing, against any Liens, Claims or Interests against the Debtors or the Acquired Assets of any kind or nature whatsoever, except for the Permitted Liens and Assumed Liabilities, enforce the terms of the Settlement or to hear any dispute in connection therewith, and (iv) enter any order under sections 363 and 365 of the Bankruptcy Code.

30. 26. **Good Faith Purchaser.**  The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assumed Contracts).  The Purchaser is a purchaser in good faith of the Acquired Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

31. 27. **No Bulk Law Application.**  No bulk sales law or similar law, shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Order.

32. 28. **Subsequent Plan Provisions.**  Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Order.

33. 29. **Inconsistencies with Prior Orders, Pleadings or Agreements**.  To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in the Chapter 11 Cases, the terms of this Order shall govern and any prior orders shall be deemed

amended or otherwise modified to the extent required to permit consummation of the Sale.  To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

34. ~~30.~~ **Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

35. ~~31.~~ **Non-Material Modifications.**  The Asset Purchase Agreement and the Settlement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have any adverse effect on the Debtors' estates.

36. ~~32.~~ **No Stay or Order.**  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the transactions immediately upon entry of this Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the transactions as soon as practicable.  This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry of this Order.

37. ~~33.~~ **Appointment of Trustee.**  The provisions of the Asset Purchase Agreement and this Order may be specifically enforced in accordance with the Asset Purchase Agreement

notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing. For the avoidance of doubt, each of the agreements and obligations set forth in paragraphs 26 and 28 of this Order, and each of the provisions set forth in Exhibit A attached hereto, shall survive conversion of these Chapter 11 Cases to chapter 7 and shall be binding on any chapter 11 or 7 trustee that may be appointed or elected.

38.    34. **Headings:.** Headings utilized in this Order are for convenience of reference only, and do not constitute a part of this Order for any other purpose.

39.    35. **Time Periods.** All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.    36. **Nonseverability.** The provisions of this order are nonseverable and mutually dependent.

Dated: _____ February _____,
2015 2016
     Wilmington, Delaware

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**Release Agreement**

## RELEASE AGREEMENT

In and for good and valuable consideration, including the agreements, terms and conditions of the *Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) Approving Settlement Between and Among the Debtors, Waterton and the Committee, and (D) Granting Related Relief* (the "***Order***"), the receipt and sufficiency of which is mutually acknowledged, each of the Debtors, the Committee and Waterton covenant and agree (this "***Release Agreement***") as follows:

1.    Committee's Releases and Agreements.

(a)    In consideration of the mutual releases provided for in this Agreement and such other consideration and benefits referenced herein, effective as of the Settlement Payment Date, the Committee (including each of its members in their capacity as such, its attorneys and financial advisor) hereby completely, voluntarily, knowingly, and unconditionally releases, acquits, and forever discharges Waterton, each of its principals, subsidiaries, parents, holding companies, affiliates, divisions, predecessors, stockholders, present and former directors, officers, employees, agents, accountants, attorneys, and other representatives, and all of the successors and assigns of each of the foregoing, in each case solely in their capacity as such, from any and all contracts, agreements, fees and expenses, claims, actions, causes of action, suits, debts, accounts, covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over, reimbursement claims, indemnity claims, contribution claims, and demands whatsoever, whether arising out of federal, state, provincial or local laws or regulations, statutes, rules or common law, whether in law or in equity, whether known or unknown, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, which the Committee ever had, now has or hereinafter may have against Waterton for, or relating to, any matter, cause or thing that arises out of or relates in any way to the Chapter 11 Cases, any or all of the Debtors, the Senior Pre-Petition Indebtedness, the Senior Pre-Petition Credit Documents, the DIP Facility, the DIP Loan Documents, the DIP Obligations (each as defined in the DIP Order), the Asset Purchase Agreement and/or the Sale; provided, however, that the Committee does not release Waterton from any of its obligations in connection with the Asset Purchase Agreement and/or the Order. The Committee knowingly grants such release notwithstanding that the Committee may hereafter discover facts in addition to, or different from, those which the Committee now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and expressly waives any and all rights that any party may have under any statute or common law principle which would limit the effect of the foregoing release to those claims, actions, causes of action, suits, debts, covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over,

reimbursement claims, indemnity claims, contribution claims, and demands actually known or suspected to exist at the Settlement Payment Date.

(b)  Effective as of the Settlement Payment Date, and provided that Waterton has made all required payments on such date, the Committee is bound by the Debtors' Stipulations (as defined in the DIP Order).

(c)  Effective as of the Settlement Payment Date, and provided that Waterton has made all required payments on such date, the Committee waives and relinquishes any and all right to challenge in any manner the Senior Pre-Petition Indebtedness and the DIP Obligations (each as defined in the DIP Order) or the liens securing such indebtedness and obligations and the Senior Pre-Petition Indebtedness and the DIP Obligations shall be allowed secured claims in these Chapter 11 Cases with the priority set forth in the DIP Order.

(d)  Effective as of the Settlement Payment Date, and provided that Waterton has made all required payments on such date, the Committee waives and relinquishes any and all right to object to, or raise any challenge to the rejection of the Pre-Petition Gold Supply Agreement (as defined in the DIP Order), the Sale and/or this Order, including, for the avoidance of doubt, Waterton's right to credit bid.

2.   Debtors' Releases and Agreements.

In consideration of the mutual releases provided for in this Agreement and such other consideration and benefits referenced herein, effective as of the Settlement Payment Date, the Debtors (including their attorneys and investment banker) hereby completely, voluntarily, knowingly, and unconditionally release, acquit, and forever discharge Waterton, each of its principals, subsidiaries, parents, holding companies, affiliates, divisions, predecessors, stockholders, present and former directors, officers, employees, agents, accountants, attorneys, and other representatives, and all of the successors and assigns of each of the foregoing, in each case solely in their capacity as such, from any and all contracts, agreements, fees and expenses, claims, actions, causes of action, suits, debts, accounts, covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over, reimbursement claims, indemnity claims, contribution claims, and demands whatsoever, whether arising out of federal, state, provincial or local laws or regulations, statutes, rules or common law, whether in law or in equity, whether known or unknown, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, which the Debtors ever had, now have or hereinafter may have against Waterton for, or relating to, any matter, cause or thing that arises out of or relates in any way to the Chapter 11 Cases, any or all of the Debtors, the Senior Pre-Petition Indebtedness, the Senior Pre-Petition Credit Documents, the DIP Facility, the DIP Loan Documents, the DIP Obligations (each as defined in the DIP Order), the Asset Purchase Agreement and/or the

Sale; provided, however, that the Debtors do not release Waterton from any of its obligations in connection with the Asset Purchase Agreement and/or this Order. The Debtors knowingly grant such release notwithstanding that the Debtors may hereafter discover facts in addition to, or different from, those which the Debtors now know or believe to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and expressly waive any and all rights that any party may have under any statute or common law principle which would limit the effect of the foregoing release to those claims, actions, causes of action, suits, debts, covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over, reimbursement claims, indemnity claims, contribution claims, and demands actually known or suspected to exist at the Settlement Payment Date.

3.    Waterton's Releases and Agreements.

(a)    In consideration of the mutual releases provided for in this Agreement and such other consideration and benefits referenced herein, effective as of the Settlement Payment Date, Waterton (including its attorneys) hereby completely, voluntarily, knowingly, and unconditionally releases, acquits, and forever discharges the Debtors (including their attorneys and investment banker), each of their principals, subsidiaries, parents, holding companies, affiliates, divisions, predecessors, stockholders, present and former directors, officers, employees, agents, accountants, attorneys, and other representatives, and all of the successors and assigns of each of the foregoing, in each case solely in their capacity as such, from any and all contracts, agreements, fees and expenses, claims, actions, causes of action, suits, debts, accounts, covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over, reimbursement claims, indemnity claims, contribution claims, and demands whatsoever, whether arising out of federal, state, provincial or local laws or regulations, statutes, rules or common law, whether in law or in equity, whether known or unknown, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, which Waterton ever had, now has or hereinafter may have against the Debtors for, or relating to, any matter, cause or thing that arises out of or relates in any way to the Chapter 11 Cases, any or all of the Debtors, the Senior Pre-Petition Indebtedness, the Senior Pre-Petition Credit Documents, the DIP Facility, the DIP Loan Documents, the DIP Obligations (each as defined in the DIP Order), the Asset Purchase Agreement and/or the Sale; provided, however, that Waterton does not release the Debtors from any of their obligations in connection with the Asset Purchase Agreement and/or this Order.  Waterton knowingly grants such release notwithstanding that Waterton may hereafter discover facts in addition to, or different from, those which Waterton now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and expressly waives any and all rights that any party may have under any statute or common law principle which would limit the effect of the foregoing release to those claims, actions, causes of action, suits, debts,

covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over, reimbursement claims, indemnity claims, contribution claims, and demands actually known or suspected to exist at the Settlement Payment Date.

(b)     Effective as of the Settlement Payment Date, Waterton shall be deemed to have waived and relinquished any and all right to assert any deficiency claims or to receive a distribution from the GUC Trust with respect to the Senior Pre-Petition Indebtedness, the Senior Pre-Petition Credit Documents, the Pre-Petition Gold Supply Agreement, the DIP Facility, the DIP Loan Documents, the DIP Obligations (each as defined in the DIP Order), the Asset Purchase Agreement, the Sale or otherwise in connection with any pre- or post-petition obligations of the Debtors or the Debtors' estates to Waterton.

(c)     In consideration of the mutual releases provided for in this Agreement and such other consideration and benefits referenced herein, effective as of the Settlement Payment Date, Waterton (including its attorneys) hereby completely, voluntarily, knowingly, and unconditionally releases, acquits, and forever discharges the Committee (including each of its members in their capacity as such, its attorneys and financial advisor), each of their principals, subsidiaries, parents, holding companies, affiliates, divisions, predecessors, stockholders, present and former directors, officers, employees, agents, accountants, attorneys, and other representatives, and all of the successors and assigns of each of the foregoing, in each case solely in their capacity as such, from any and all contracts, agreements, fees and expenses, claims, actions, causes of action, suits, debts, accounts, covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over, reimbursement claims, indemnity claims, contribution claims, and demands whatsoever, whether arising out of federal, state, provincial or local laws or regulations, statutes, rules or common law, whether in law or in equity, whether known or unknown, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, which Waterton ever had, now has or hereinafter may have against the Committee for, or relating to, any matter, cause or thing that arises out of or relates in any way to the Chapter 11 Cases, any or all of the Debtors, the Asset Purchase Agreement and/or the Sale; provided, however, that Waterton does not release the Committee from any of its obligations in connection with the Order.  Waterton knowingly grants such release notwithstanding that Waterton may hereafter discover facts in addition to, or different from, those which Waterton now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and expressly waives any and all rights that any party may have under any statute or common law principle which would limit the effect of the foregoing release to those claims, actions, causes of action, suits, debts, covenants, controversies, remedies, liabilities, damages, setoffs, counterclaims, cross-claims, third-party claims, claims-over, reimbursement claims, indemnity

claims, contribution claims, and demands actually known or suspected to exist at the Settlement Payment Date.

4.      Agreement to Take Necessary or Desirable Actions.  The Debtors, the Committee and Waterton agree to execute and deliver such other documents, certificates, agreements, and other writings and to take such other actions as may be reasonably requested by any other of such parties to carry out the purposes and intent of this Agreement.

5.      Binding Release.  This Release Agreement shall be binding upon the Debtors, the Committee and Waterton and each of their respective officers, directors, shareholders, agents, affiliates, successors and assigns, and shall inure to their benefit.  This Release Agreement shall also be binding on any chapter 11 or chapter 7 trustee that may be appointed or elected in the Debtors' cases.

**EXHIBIT B**

**Asset Purchase Agreement**